EA7LFERS                    Sentence

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                         10 CR 863 (AKH)

JOE FERNANDEZ,

          Defendant.

------------------------------x

                       New York, N.Y.
                       October 7, 2014
                       11:15 a.m.

Before:

             HON. ALVIN K. HELLERSTEIN,

                      District Judge

                APPEARANCES

PREET BHARARA
    United States Attorney for the
    Southern District of New York
TODD BLANCHE
RUSSELL CAPONE
    Assistant United States Attorneys

FOX ROTHSCHILD LLP
    Attorneys for Defendant
BY:  ROBERT W. RAY

ALSO PRESENT:  JOHN BARRY, Criminal Investigator

1          (Case called)

2          THE COURT:  We'll hear the motion first made by

3    Mr. Ray, and depending on the outcome, we're going to decide

4    what comes next.  So, Mr. Ray, please.

5          MR. RAY:  Yes, your Honor.

6          To keep things relatively simple, Patrick Darge

7    testified at trial that he committed murder and in that regard

8    he implicated two people:  Luis Rivera as the driver of the

9    getaway vehicle, and my client as the second shooter.

10         After much effort since my appointment now almost a

11   year ago, I have come to learn and confirmed that Luis Rivera

12   told the government that he was not the driver of the getaway

13   vehicle, that he consistently maintained that to the

14   government.  I have reason to believe, although I don't know

15   for certain since I don't have access to the information, that

16   he told the government that prior to trial of this case.  And

17   that information was never disclosed to the defense.

18         My view is -- and I don't think I'm incorrect, but the

19   government can perhaps shed light on it -- that that

20   information, at least in my judgment, was Giglio material as to

21   the testimony of Patrick Darge, which makes it Brady material.

22         The government's position seems to be although for the

23   longest time --

24         THE COURT:  Can you embellish that point?  Why is it

25   Giglio material in regard to the testimony of Darge?

EA7LFERS                    Sentence

1           MR. RAY:  Because Darge makes very apparent, as I

2     indicated in my motion, that he did it and that, as he

3     testified, two people came readily to mind, Luis Rivera as the

4     getaway driver and my client as the second shooter.

5           THE COURT:  Supposing --

6           MR. RAY:  If I could just draw it out, your Honor.  If

7     he's lying about the one, which is that Luis Rivera --

8           THE COURT:  Let me focus the question.

9           MR. RAY:  Sure.

10          THE COURT:  Take it away from the protagonist here,

11    let's just say X.  X is a government witness, someone who had

12    been turned, let us say.  And he says B was the getaway driver.

13    B denies that.  In the testimony of X is B's denial Giglio

14    material?  Are there cases on that point?

15          MR. RAY:  It would seem to me clear that that's

16    information that tends to impeach the testimony of that

17    witness.

18          THE COURT:  I'm not sure.  It may; it may not.  I

19    wonder if there's any law on that particular point.

20          MR. RAY:  I think it's a separate question as to

21    whether or not you may be able to get that information into

22    evidence, but it seems to me it would be proper

23    cross-examination to confront in your example witness --

24          THE COURT:  That someone else you identified denies

25    it.

1          MR. RAY:  Yes.  You may have to take the answer, but I

2     think you're entitled to ask the question.

3          THE COURT:  That's a separate issue.  The question is

4     whether the government -- say the government has possession of

5     a denial by someone identified in that fashion, is that Brady

6     material that the government is required to turn over?  I don't

7     know the answer.  I'm asking you.

8          MR. RAY:  Well, the government --

9          THE COURT:  That's basic to your motion.

10          MR. RAY:  Well, I think, but it's a simple question,

11     is it impeachment material of the witness on the stand and the

12     answer is yes.  It tends to show that the witness may not be

13     telling the truth.

14          THE COURT:  Is every bit of potential impeachment

15     information Brady material?

16          MR. RAY:  Well, I think there's a fair and clear line

17     that the failure to turn over Giglio material is a Brady

18     violation.  It is a subset of Brady.

19          THE COURT:  Is it a requirement under Giglio?  I don't

20     know.  Are there any cases that you can cite to me?  That's how

21     a district court knows -- some case precedent says it's so.  I

22     could reason to say or you could reason.  I'm asking are there

23     any cases?

24          MR. RAY:  Well, I'm sure there are cases.  Bagley is

25     one of them, Brady itself.  The question is whether it tends to

EA7LFERS                    Sentence

1  exculpate the accused.

2          THE COURT:  I don't know that it does.  Someone else

3  denies it -- it must be very common in criminal law

4  prosecutions that someone identifies, says I didn't do it.

5          MR. RAY:  Well, I think that --

6          THE COURT:  I don't know that it says anything about

7  Darge's credibility or not.  Darge could say that Rivera was

8  the getaway driver and Rivera could say I wasn't.  That's a

9  common occurrence.

10          MR. RAY:  Yes, but it's material, your Honor.  I mean

11  the point is it's not just any inconsistent statement.  The

12  point is there's someone else who is directly supposedly

13  involved by Patrick Darge's testimony who is saying I wasn't

14  there.

15          THE COURT:  So the bottom line is you don't have any

16  cases.

17          MR. RAY:  No.  Well --

18          THE COURT:  You have cases in general what Giglio

19  requires and in general what Brady requires, but you don't have

20  a specific case having to do with whether or not the government

21  is obligated to turn over a denial by some third person.  Okay.

22  There may not be such case, Mr. Ray.  I'm not faulting you.

23          MR. RAY:  I think if that's the question, I think I

24  can find cases that are relevant to that point.

25          THE COURT:  Yeah, well, that's what you should have

EA7LFERS                     Sentence

1    done before you made the motion.

2            MR. RAY:  Part of my problem is I don't have an answer

3    from the government as to whether or not even the information

4    exists to begin with.  What I do know now which I didn't know

5    until recently is I have Luis Rivera through an investigator

6    who was hired by the family confirm his position that he was

7    not there and, further, that he told the government from the

8    outset that he was not there.

9            THE COURT:  And whether he did that and whether it's

10   true or not, nobody knows.  Mr. Rivera has every incentive to

11   say what you say he said.  He's a cousin, he's implicated, and

12   it's a very serious case.  I think I have your point.

13           MR. RAY:  So does Patrick Darge.  And the question is

14   if Patrick Darge is not telling the truth as to Luis Rivera,

15   how is he telling the truth as to Joe Fernandez.  That seems to

16   me to be material to the question as to the truthfulness of

17   Darge's testimony.

18           THE COURT:  I have your point.

19           MR. RAY:  The second issue with regard to the motion

20   was based upon information that was discovered that suggests

21   based upon the phone records that were presented as exhibits to

22   the memorandum of law in support of the motion that records

23   that we now have from the family relative to Mr. Fernandez's

24   cell phone in use at the time do not match the records that

25   were submitted admittedly by stipulation at trial from

EA7LFERS                    Sentence

1   Christian Guzman who testified briefly, although significantly,

2   that those were calls in anticipation of a meeting that he

3   observed occur although did not overhear between Alan Darge and

4   Mr. Fernandez.

5          THE COURT:  These telephone records are corroborative

6   information --

7          MR. RAY:  Yes.

8          THE COURT:  -- that what Darge said took place in

9   conversations between him and Fernandez at the home of

10  Christian Guzman.

11         MR. RAY:  Yes.

12         THE COURT:  And the point of the telephone records is

13  to show that there was an actual telephone call between Guzman

14  and Fernandez before the meeting.

15         MR. RAY:  On that date in question, yes.

16         THE COURT:  And the AT&T records seem to corroborate

17  that.  The Verizon records don't match.

18         MR. RAY:  Correct, and they should.

19         THE COURT:  And you're arguing to me that one wonders

20  why the same phone would be both a Verizon servicer and an AT&T

21  servicer.

22         MR. RAY:  No.  So it's clear, Mr. Fernandez's phone

23  was a Verizon Wireless cell phone.  The records that were

24  introduced were from AT&T and they were Mr. Guzman's phone.

25  And the records from Guzman's phone introduced at trial

1    purportedly showed calls to Mr. Fernandez's phone on that date.

2            THE COURT:  And so if the Verizon records don't

3    indicate it but the AT&T records do indicate it, what would

4    have been the point of the examination?

5            MR. RAY:  The point of the examination was to show

6    conclusively one way or another, which I think we can only

7    answer by subpoena relative to the respective records from

8    Verizon and AT&T, as to whether the records that were

9    introduced at trial are accurate or they're not accurate.

10           THE COURT:  Well, you've stipulated their accuracy.

11           MR. RAY:  Well, we stipulated based upon information

12   that seemed to be available at the time that they came by

13   virtue of a subpoena from the relevant phone which was

14   Christian Guzman.  Nobody had reason --

15           THE COURT:  This is Fernandez's own phone.

16           MR. RAY:  Correct.

17           THE COURT:  So there's no reason why that couldn't

18   have been done in preparation for the trial.

19           MR. RAY:  Well, I wasn't trial counsel, so I don't

20   know.

21           THE COURT:  It doesn't make any difference.  You had a

22   really good trial counsel.

23           MR. RAY:  All right.  But, you know, there wasn't any

24   reason at that time to believe that there was a discrepancy and

25   now there is reason to believe that there's a discrepancy

EA7LFERS                    Sentence

1    because the records don't match and they should.

2              THE COURT:  The evidence that's supposed to be newly

3    discovered was always available to you.  You meaning

4    Mr. Fernandez and his counsel.

5              MR. RAY:  Theoretically, what was available was the

6    ability to subpoena Verizon Wireless to find out what those

7    records demonstrated.

8              THE COURT:  Which you had.

9              MR. RAY:  Well, you always have the ability to

10   subpoena that.  What you didn't have was any reason to believe

11   that those records were anything but what they purported to be.

12             THE COURT:  Why would they be doubting now?  Nothing

13   you produced doubts it.  These are the AT&T records.

14             MR. RAY:  What I've produced is something that should

15   match and doesn't.

16             THE COURT:  Mr. Ray, in preparation for trial, you

17   know the government has got the burden.

18             MR. RAY:  Yes.

19             THE COURT:  And defense can do anything it wants to

20   counter that burden.  This is evidence that was available to

21   you and we have a stipulation.  What you want me to do now is

22   to relieve you of the stipulation.  Your motion really now

23   posttrial is to ask for leave to withdraw from that stipulation

24   during trial.

25             MR. RAY:  No.

1            THE COURT:  Had that motion been made at the time, it

2    may have been granted and the government would have been put to

3    its proof.  They could have called someone from AT&T and said

4    are you the custodian?  They would have said yes.  They would

5    have said are these records made in the regular course of

6    business contemporaneously with the telephone calls?  The

7    answer would be yes.  And those were the records.  Nobody is

8    charging that the government doctored those records.

9            MR. RAY:  I have no way of knowing.  I'm not accusing

10   anybody of anything.  All I'm saying is I have records that

11   should match and don't.  I'm asking for the issuance of a

12   subpoena to find out one way or another, and then we'll figure

13   out where we are.  Right now I think I have a reasonable good

14   faith basis to ask, as I directed the question initially to the

15   government if it would do so voluntarily and they refused.

16   Their answer was we have no reason to question the veracity or

17   integrity of our records.  All I'm saying is they should match

18   and why don't they?  I'm asking a reasonable question.  And the

19   only way to answer that question is to issue a subpoena for the

20   two respective cell phone carriers to find out whether the

21   records are what they purport to be or not.

22           THE COURT:  You attached the Verizon records.

23           MR. RAY:  I did.  I also attached as part of an

24   exhibit to the motion the relevant page from the AT&T records

25   that were admitted at trial by way of that stipulation.

1           THE COURT:  At trial by stipulation we have evidence

2   of a telephone call made on Guzman's phone to Fernandez's

3   phone.

4           MR. RAY:  I think there were four, but, yes, four

5   calls.

6           THE COURT:  Before the meeting.

7           MR. RAY:  Correct.

8           THE COURT:  Okay.  Anything else?

9           MR. RAY:  And just so the record is clear, the reason

10  that that's important, I understand they're just cell phone

11  records, but that was an important piece of corroboration.  I'm

12  just asking I think on a good faith basis the legitimate

13  question, with a good faith basis to do so, whether those

14  records are in fact really what they purport to be.  In the

15  ordinary case, that's never a question.

16          THE COURT:  You've made a Rule 33 motion --

17          MR. RAY:  Yes.

18          THE COURT:  -- which challenges the sufficiency of the

19  record.  The record in this respect is sufficient except by

20  your admission because on its face there's nothing wrong with

21  it.  You're saying that I should look into something outside

22  the record to impeach the record.

23          MR. RAY:  Well, presently outside the record, but yes.

24          THE COURT:  Isn't that something that comes up under

25  2254 and not under Rule 33?  Rule 33 doesn't require me to go

EA7LFERS                    Sentence

```
1    outside the record.  Trial has been had, it's been finished,

2    it's closed.  And Rule 33 is a challenge to the sufficiency of

3    the record.  That's what it is.

4              MR. RAY:  Rule 33(b) is with regard to --

5              THE COURT:  -- newly discovered evidence.

6              MR. RAY:  Your Honor is making the point, I think,

7    that that's not really newly discovered.  What is newly

8    discovered is the fact that there's a record that should match

9    what was introduced at trial that doesn't.

10             THE COURT:  I understand something is newly discovered

11   that was discoverable before the trial.  That's what you're

12   saying, and I'm not sure Rule 33(b) encompasses that.

13             Okay.  Let me hear from the government.

14             MR. BLANCHE:  Good morning, your Honor.

15             On the Rule 33 issue, just quickly, the case cited by

16   the government, United States v. Owen, applies, is directly

17   applicable to this case.

18             THE COURT:  Owen, right?

19             MR. BLANCHE:  Owen, O-W-E-N, 500 F.3d 83.

20             What the defense is saying is that, arguably, is that

21   Mr. Fernandez didn't call Christian Guzman back in 2011.  And

22   their evidence of that is even though there was testimony at

23   trial from AT&T admitted via stipulation, they now have records

24   that are not official business records -- it's a portion of a

25   telephone bill -- that doesn't show the phone calls.
```

EA7LFERS                         Sentence

1          THE COURT:  I'm going to assume it's an extract of

2     something that is an official business record because I have to

3     take what Mr. Ray gives me as the fact.  So you're saying that

4     this is not newly discovered because it was discoverable under

5     Owen.

6          MR. BLANCHE:  Absolutely.  Especially because in this

7     case --

8          THE COURT:  That's the whole point.

9          MR. BLANCHE:  That's the whole first part of the point

10     because if anybody would have known whether he called

11     Mr. Guzman that day, putting aside the records, it's

12     Mr. Fernandez.  And so the fact that supposedly he didn't call

13     him, which is really what the point of this motion is, he would

14     have known that and could have said and I'm sure would have

15     said to his counsel, I don't care what those AT&T records show,

16     I didn't call that guy, I wasn't there, let's fix it.  He

17     didn't say that.  It's not surprising that there was a

18     stipulation.  They were straightforward AT&T phone records.  So

19     that is the first point.

20          But the second and equally as significant point is

21     that this is directly against Owen in that it's not --

22          THE COURT:  What did Guzman testify?  Did he testify

23     he made the call?

24          MR. BLANCHE:  I believe he testified that he received

25     the calls from Mr. Fernandez and then he came over shortly

EA7LFERS                         Sentence

1    thereafter.

2              This evidence would not have resulted in acquittal,

3    and it really is just impeachment.  Even defense admits that.

4    And Owen says it's not enough to get a new trial if the newly

5    discovered evidence is simply impeachment.  Here, best case

6    scenario for defense counsel, he could have said to Christian

7    Guzman and Alan Darge, well, do you know that there's records

8    out there that don't show phone calls?  Their answer would have

9    been yes, no, whatever it would be; but it would just be to

10   impeach their testimony that indeed Mr. Fernandez was at that

11   apartment on that day.

12             THE COURT:  Guzman testifies Fernandez called him

13   before the meeting.  And what then?

14             MR. BLANCHE:  And then he says that Mr. Fernandez came

15   over and that Alan Darge was there and that he saw Alan Darge

16   and Mr. Fernandez talking off in the corner.  He doesn't know

17   what they were talking about.

18             THE COURT:  So you have Guzman's testimony that they

19   were there together.  You have the preexisting telephone calls

20   arranging for the meeting.

21             MR. BLANCHE:  And you have Alan Darge saying he was

22   there with him, right.

23             THE COURT:  And you have a record to back it up.

24             MR. BLANCHE:  A business record, absolutely.

25             THE COURT:  And now there's another record supposedly

1    that doesn't show it and would be expected to show it.  It

2    doesn't seem to me that it is of a material nature that is

3    required to change the course of the verdict, and I think

4    that's what Owen holds.

5              MR. BLANCHE:  That's exactly what Owen holds.

6              THE COURT:  Let's go with the first point.

7              MR. BLANCHE:  Yes, your Honor.  On the first point,

8    the government does not have Brady.  I am not sure because I

9    haven't seen any affidavit or report what Luis Rivera has told

10   an investigator.  I have no idea.

11             THE COURT:  That doesn't help me too much because if

12   there is such information and if it exists anywhere, if it

13   existed anywhere in the government, you had the obligation to

14   produce it.

15             MR. BLANCHE:  Of course.

16             THE COURT:  Brady requires it.  So the fact that you

17   don't know personally is of no moment.

18             MR. BLANCHE:  Judge, that's not what I was saying.

19   Mr. Ray just said that the family hired a private investigator

20   who has talked to Mr. Rivera.  My point is I have no idea what

21   Mr. Rivera said to the private investigator hired by the

22   family.  I have no idea.

23             I do know what Mr. Rivera through his counsel and what

24   Mr. Rivera said to us.  It's not Brady and it's not consistent

25   with what apparently he has told an investigator.  And that's

EA7LFERS                    Sentence

1   really all that in the government's view and our obligations,

2   of course we take this seriously.  We did turn over Brady and

3   this information --

4            THE COURT:  Mr. Ray wants me to read what those

5   interview notes were.

6            MR. BLANCHE:  Pardon me?

7            THE COURT:  Mr. Ray wants me to read what those

8   interview notes were.

9            MR. BLANCHE:  Correct.

10           THE COURT:  And to draw my own conclusion whether it

11  was Brady or not after I read it.  Do you have any objection to

12  that?

13           MR. BLANCHE:  Yes.  We don't think it's appropriate.

14  We don't think there's any basis in law for that.  And it's

15  just if the Court were required to in camera review all

16  interview notes --

17           THE COURT:  I'm not asking for all.

18           MR. BLANCHE:  -- all interview notes related to

19  Mr. Rivera --

20           THE COURT:  As a practical matter, it would resolve

21  the issue.  It would remove it from the theoretical to the

22  actual.  If I were to read it and then conclude from it that

23  there's no basis to believe what Mr. Ray surmises, then the

24  issue is over.

25           MR. BLANCHE:  That's true.  However, your Honor, it

1    doesn't -- yes, of course that's true that your Honor could

2    review the notes and reach a conclusion.  However, even if your

3    Honor said, look, government, I think you should give this to

4    Mr. Ray, it really doesn't get us anywhere because

5    Mr. Rivera --

6              THE COURT:  That may be true.  That also may be true.

7    But as a practical matter, it would moot the point Mr. Ray

8    makes.

9              MR. BLANCHE:  Judge, it would, but that's always the

10   case in a situation like this.  I'm not disagreeing with you

11   and I'm not trying to be flip about it.

12             THE COURT:  Bottom line, for whatever reason, you

13   don't want to produce it to me.

14             MR. BLANCHE:  I don't think that's a fair

15   characterization, Judge.  The government doesn't have a problem

16   giving it to you.  It's not like, your Honor, I don't trust

17   your Honor or something like that.  I'm saying the law doesn't

18   require it.

19             THE COURT:  I think you may be right.  As a practical

20   person, I'm looking for a practical resolution.

21             MR. BLANCHE:  And fair enough.  That's a fair point.

22             THE COURT:  As a lawyer for 38 years and as a judge

23   for almost 16, I've learned to search for the practical

24   solution to a problem.  That doesn't mean that the law requires

25   the path I propose.  And you could say, and I wouldn't

EA7LFERS                    Sentence

```
 1    criticize you for saying it, with respect, Judge, we're not
 2    producing it because the law doesn't require us to produce it.
 3    If that's your position, that's your position.  I just wanted
 4    to know what is your position.
 5            MR. BLANCHE:  So the government's position is your
 6    Honor is correct.  Practically, that's something that could be
 7    done.  The government's very strong position though is that
 8    it's not necessary and sentencing should proceed.  This trial
 9    happened a year and a half ago.
10            THE COURT:  Don't put it into different words,
11    Mr. Blanche.  You can say I respectfully decline to produce it.
12            MR. BLANCHE:  Fair enough.
13            THE COURT:  I'm pushing you not to use ambiguous
14    words.  Yes or no.
15            MR. BLANCHE:  No, the government does not want to
16    produce the record, the notes, to the extent they exist, of
17    either Mr. Rivera -- defense counsel has also asked for other
18    witnesses as well -- Mr. Suero, any notes we have of Mr. Suero.
19            THE COURT:  That's the two witnesses, Suero and Luis
20    Rivera.
21            MR. BLANCHE:  Correct.  And I think the request was
22    also made for your Honor to review the homicide file in camera,
23    which the government also objects to having your Honor do.
24            THE COURT:  That's a vague reference, the homicide
25    file.  They asked me to review the whole basis for the case.
```

EA7LFERS                    Sentence

1    I'm narrowing to two specifics, actually, to one specific

2    because Mr. Ray based his entire argument on Rivera.  He said

3    Suero also in his papers, but I think he would be satisfied if

4    I looked at what you have in 3500 material for Rivera.  Rivera

5    was not a witness because we understood that he would claim the

6    Fifth Amendment as a privilege and there was no point to

7    calling him by either side.

8              MR. BLANCHE:  Right.  And it's not 3500 material.

9    It's just notes from an interview.

10             THE COURT:  You made an argument before and I'm

11   frankly not sure I can use it, the fact that Mr. Fernandez had

12   the ability to say I was at the meeting or I wasn't at the

13   meeting, I made the call, I didn't make the call; and he was

14   silent about that.  He has a right to be silent.

15             MR. BLANCHE:  No, Judge.  But under Owen, the defense

16   has to show that they didn't know about the new evidence at the

17   time of trial and exercised due diligence.

18             THE COURT:  So your point is they had to know because

19   if he knows he didn't make the call and a record shows he did

20   make the call, that would have been --

21             MR. BLANCHE:  Exactly.  So he can't overcome the first

22   two points because he had to know he didn't make the call.

23             THE COURT:  What do you say to that, Mr. Ray?

24             MR. RAY:  Well, I don't know that I'm obligated to say

25   this and I think your Honor hit the right point regarding --

EA7LFERS                      Sentence

1          THE COURT:  You're not obligated to say it, but it

2    goes --

3          MR. RAY:  Let me try to be helpful, please.

4          THE COURT:  Let me rephrase it so we can focus it.  I

5    do not understand what Mr. Blanche said as urging some change

6    in the obligation of a witness to testify when he clearly has a

7    right not to testify.

8          MR. RAY:  And he did not testify, correct.

9          THE COURT:  And he did not testify.  What he's saying

10   is that this is relevant to the issue of newly discovered

11   because Mr. Fernandez and his counsel knew whether or not the

12   call was or was not a fact.  And if it wasn't a fact and

13   records were immediately available to show that, you could

14   expect the defendant to subpoena the records that would show

15   that; and the fact that he didn't goes to whether or not it is

16   newly discovered materials under Rule 33(b).

17          Do I state the point well, Mr. Blanche?

18          MR. BLANCHE:  That's correct.

19          MR. RAY:  It is relevant as to whether it's newly

20   discovered and to the question of diligence, but let me just

21   suggest to your Honor first, without any obligation to do so,

22   my client's position in that regard is somewhat difficult

23   because he's not saying he doesn't know Christian Guzman.

24          THE COURT:  They were cousins.

25          MR. RAY:  Right.  And he is also not saying he would

EA7LFERS                     Sentence

1   have had an occasion to have contacted Mr. Guzman by cell

2   phone.  So it's not like, you know, oh, let's challenge the

3   records because my client's position, he doesn't know the man

4   so there's no way there could be a cell phone record that

5   suggests that he does, right.

6          What we are saying is presuming things in the ordinary

7   course and having records produced by government subpoena as to

8   what AT&T shows carries with it I think a presumption of

9   regularity and it's not offset by any ability on a diligence

10  factor that my client's position is and would have been

11  reasonably at the time, well, that can't be, I don't even know

12  the guy and I wouldn't have ever made the phone call to this

13  guy.  So I don't know what you got to do, but those AT&T

14  records are just wrong.  Go get a subpoena and find out that

15  I'm telling the truth because I am telling you I never talked

16  to this person ever in my whole life.  Don't have his number,

17  don't know who he is, didn't talk to him.  That's not his

18  position.

19         THE COURT:  Okay.  I think we've canvassed the point.

20         Let's go back to the point of Brady and Giglio.

21  Mr. Fernandez made a motion when you were standby counsel --

22         MR. RAY:  Yes.

23         THE COURT:  -- for a new trial --

24         MR. RAY:  Yes.

25         THE COURT:  -- on the basis that the government

1    violated Brady, and I denied that motion.

2              MR. RAY:  Yes.

3              THE COURT:  Aren't you in effect covering the same

4    grounds now as were well covered by Mr. Fernandez with your

5    help as standby counsel before?

6              MR. RAY:  Well, I think it's fair to say partially to

7    your Honor's question, yes, we're covering the same ground, but

8    we're covering that territory based upon something that we

9    didn't know when he filed his motion.

10             THE COURT:  Namely, that Rivera was interviewed by

11   your private interviewer and your private interviewer told you

12   that Rivera denied being the getaway driver.

13             MR. RAY:  Correct.  My understanding, and I wasn't

14   there, but Mr. Richman had received -- it's not like we didn't

15   know Luis Rivera was out there because, obviously, he was a

16   defendant in the case.  But the information that was sought and

17   obtained was the following, that is, that Luis Rivera -- the

18   information was that Luis Rivera doesn't know Mr. Fernandez.

19   And we were aware, of course, of the fact that there were

20   negotiations leading towards a disposition.  I don't recall

21   whether that disposition took place before the trial or not.  I

22   think it did.

23             THE COURT:  That sounds a little different from what

24   you said before.

25             MR. RAY:  I'm talking about what was known by

1    Mr. Richman at the time.

2              Now, what was learned that was new is that it wasn't

3    that he doesn't know Mr. Fernandez.  What was new and what

4    Mr. Fernandez didn't know until frankly yesterday because I

5    didn't know it until yesterday is that what happened was that

6    Mr. Rivera went into the U.S. Attorney's Office and told the

7    government, which I think Mr. Blanche has confirmed at least

8    implicitly there are notes to suggest this, that he was not the

9    driver and therefore was not there, period.

10             THE COURT:  I don't know if that's true or not.

11             MR. BLANCHE:  That's not true.

12             THE COURT:  What is your representation, Mr. Blanche?

13             MR. RAY:  My representation?

14             THE COURT:  Mr. Blanche.  What's the government's

15   representation?

16             MR. BLANCHE:  The representation as to what Mr. Rivera

17   said when he met with the government?

18             THE COURT:  What's your representation to me in your

19   argument to the Court.

20             MR. BLANCHE:  The government's representation is that

21   to the extent Mr. Rivera or through his counsel communicated

22   with the government about Mr. Rivera's position towards

23   cooperation, meaning whether he wanted to be a cooperator and

24   be a witness at trial, nothing that he said either from his

25   lips or from his counsel's lips is Brady.  What he said and

1    what his counsel said to us is different than what he has

2    apparently recently told an investigator.

3              THE COURT:  But you don't know what he told the

4    investigator.  You can't say that.

5              MR. BLANCHE:  He didn't say that to the government and

6    that's why when we said we don't have any Brady, that's what we

7    mean.

8              THE COURT:  Is it your representation that you've

9    reviewed all the materials in response to Mr. Ray's renewed

10   request for all Brady material and that you feel that

11   everything you were obliged to produce you have produced and

12   there's nothing more in your files that you were obligated to

13   produce?

14             MR. BLANCHE:  Yes.

15             THE COURT:  That's your representation.

16             MR. BLANCHE:  Yes.

17             THE COURT:  Okay.  Thank you.

18             MR. RAY:  And, your Honor, that's a fair

19   representation.  But I've spent a year trying to just extract

20   whether Suero and/or Rivera made any statements whatsoever and

21   have only recently got a representation from the government

22   that while there may have been statements, they didn't say

23   anything that we believe is Brady material that we were

24   obligated to disclose.

25             THE COURT:  That's a customary response in all cases.

1          MR. RAY:  I know.  All I'm saying is I would like to

2     take your Honor up at least on the hope that your Honor would

3     arrive at a practical solution.

4          THE COURT:  Mr. Ray, I'm following through on what you

5     suggested.

6          MR. RAY:  I know you are.

7          THE COURT:  Don't put anything to me.

8          MR. RAY:  I would ask your Honor --

9          THE COURT:  You're a very good lawyer and you made a

10     suggestion and I pursued it.

11          MR. RAY:  I would like that suggestion to just be

12     pursued.  I hear the point that the request for the homicide

13     file --

14          THE COURT:  I'm not going to rule.

15          MR. RAY:  -- is too broad.  And you heard me correctly

16     that I didn't mention Suero.  I'm asking I think now for

17     something very little to just see whether there's anything --

18     look, this man's life is on the line.  It's going to be a

19     mandatory life sentence.

20          All I'm asking based upon what I've spent a year

21     trying to figure out is whether -- and I don't know.  I wasn't

22     there at the scene of the crime, and I didn't try this case.

23     I'm just asking the Court's indulgence for just a bit before a

24     life sentence is imposed that we get the phone records from the

25     respective phone companies and that your Honor review in

EA7LFERS                    Sentence

1    camera -- I'm not asking for it.  I believe that the Court will

2    do what's appropriate.  If your Honor wants a case, I'll find

3    one in the interim -- but I would like your Honor to just look

4    at the records that are apparently just these notes, so they

5    shouldn't be more than a few pages but probably in handwriting,

6    to see whether your Honor thinks there's anything in there that

7    should be turned over to the defense.  That's all I'm asking

8    for.

9          THE COURT:  I'm not going to order that because I

10   don't think the law requires the government to produce to the

11   judge for review that which is requested of the government by

12   defense counsel.  Mr. Blanche is an honest, responsible, and

13   very effective assistant U.S. attorney.  He has represented to

14   the Court that the government has produced all that was

15   required of the government to produce.  He's reviewed the files

16   again in response to this motion, and he stands by that

17   representation.  And the law does not require on the part of

18   the government to produce to me the records to see if I might

19   have the same or a different view of what the government is

20   obligated to produce.  So the request for in camera review is

21   denied.

22         With respect to the other aspects of the motion, I

23   will file an opinion -- perhaps today, perhaps in a few days, I

24   hope by tomorrow though -- stating in a more fluid way my

25   reasons.  But I deny the motion for a new trial.  I've reviewed

```
 1    this motion previously, and I've concluded that there is no
 2    merit to it in relationship to an obligation to give a new
 3    trial because of an alleged failure on the part of the
 4    government to produce Brady materials.  Nothing I've seen in
 5    the motion or heard today causes me to change the order that I
 6    issued May 21, 2014.
 7         MR. RAY:  Your Honor, if I may just ask your Honor to,
 8    on the denial, that it be without prejudice relative to the
 9    phone records since my understanding is the defendant still has
10    the right, even in the event of an appeal, to make application
11    for a new trial based upon newly discovered evidence.  I would
12    still like your Honor to rule on the question --
13         THE COURT:  I'm not going to rule without prejudice.
14    I will rule effective on everything that's before me.  If you
15    make another application, I will look at it afresh.
16         MR. RAY:  My application I think can be stated now and
17    that is I would like the authority to issue a subpoena to the
18    two phone companies to actually get the records.
19         THE COURT:  You'll have to make a motion.
20         MR. RAY:  I can do that.  Thank you.
21         I should be clear.  That was included as part of my
22    motion which is to ask the Court for the issuance of a
23    subpoena.  I can do so in more formal terms by actually
24    presenting to your Honor an actual subpoena to be so ordered,
25    but that's my application.
```

EA7LFERS                        Sentence

1          THE COURT:  I think there has to be a basis with

2    regard to opening up the trial record or on some other basis

3    that is authorized by law.  Otherwise, there's no basis to

4    issue a subpoena.  And since I rule against the opening of the

5    record under Rule 33(b), that's not the basis for issuing a new

6    subpoena.

7          MR. RAY:  But I have a good faith basis to believe

8    that the records that were introduced at trial may be false.  I

9    don't know how else I would be able.

10         THE COURT:  You'll have to pursue whatever remedies

11   you have in a different way.  As part of a Rule 33(b) motion, I

12   deny it.

13         MR. RAY:  But I don't have another way, your Honor.  I

14   have no way of getting -- I don't have subpoena power -- I have

15   no way of getting the records from the telephone companies.

16         THE COURT:  That's exactly the point.  I guess the

17   only other way is by a 2255 proceeding.  And there is an

18   opportunity for discovery in a 2255 proceeding.  It's subject

19   to court order.  So it could be made then.  But as part of a

20   Rule 33(b) motion, I deny it.

21         MR. RAY:  Thank you, your Honor.

22         THE COURT:  So where was I.  I denied the motion based

23   on an alleged failure on the part of the government to satisfy

24   its obligations under Brady.  I made that same ruling on

25   May 21, 2014.  And, as I commented, nothing in the papers now

EA7LFERS                    Sentence

presented or in the argument causes me to change my mind.  I

don't know what Mr. Rivera may have said to the investigator.

There is no affidavit from the investigator, is there,

in the record?

MR. RAY:  No, but the investigator is present in the

courtroom.

THE COURT:  We're not taking testimony.

MR. RAY:  Your Honor asked whether a record can be

made.  The information was only obtained on Monday.  Today is

Tuesday.  And the investigator is present and available to

testify.

THE COURT:  All right.  I am not taking testimony

today in connection with a motion for a new trial.

And with regard to the other branch of the motion

having to do with impeaching by an allegedly newly discovered

piece of evidence, a phone record that was entered by

stipulation before and was there only for corroborative

purposes, I deny that as well.  The new material is not

sufficiently cogent as impeaching material to cause me to

rethink the propriety of the verdict or the rationale for

granting a new trial.  So the motion is denied.  It will be

elaborated on in a written order.

And we'll now proceed to sentencing unless there's

something more to go into now.  Anything more, Mr. Blanche,

before we get into sentencing?

EA7LFERS                    Sentence

1              MR. BLANCHE:  Not from the government.

2              THE COURT:  Anything before we go into sentencing,

3    Mr. Ray?

4              MR. RAY:  No.  That completed the record on the motion

5    for a new trial.

6              THE COURT:  With regard to sentencing, I have a

7    presentence investigative report from probation dated

8    October 3, 2014, that supplants all previous presentence

9    investigative reports, specifically those of September 22 and

10   September 17.  And I have a sentencing memorandum from the

11   government.

12             Are there any other papers that I need to look at?

13             MR. BLANCHE:  Not from the government.

14             THE COURT:  Mr. Ray?

15             MR. RAY:  No other papers, but we do have some

16   objections to the presentence report.

17             THE COURT:  I will hear them.  Before we start, I want

18   to make sure we're on the same ground.

19             MR. RAY:  We are, yes.

20             THE COURT:  Okay.  So we go into sentencing.

21             Mr. Fernandez or Mr. Ray, has Mr. Fernandez read the

22   presentence investigative report dated October 3?

23             MR. RAY:  He has, your Honor.  We went over it

24   yesterday.

25             THE COURT:  Would you prefer to answer for

EA7LFERS                    Sentence

 1    Mr. Fernandez?  I'll allow it if you want it, but it's my
 2    custom to ask Mr. Fernandez directly.  But this is not a plea
 3    situation.  This is a trial situation.  And if you want to
 4    answer that question.
 5            MR. RAY:  Mr. Fernandez would prefer that I do.  So
 6    the answer is yes, that's acceptable.
 7            THE COURT:  He's read the presentence investigative
 8    report?
 9            MR. RAY:  He has.
10            THE COURT:  And he's had full communication with you
11    with regard to the report?
12            MR. RAY:  In my presence, yes.
13            THE COURT:  And you say you have some objections to
14    some of the factual information in the report?
15            MR. RAY:  Yes, we do.  And then there's also I believe
16    a legal question relative to what your Honor's sentencing
17    options are with regard to the respective counts.
18            THE COURT:  Let's do the facts first.
19            MR. RAY:  Okay.
20            THE COURT:  Tell me your objections.
21            MR. RAY:  Your Honor, I guess I have explained to my
22    client that the presentence report is not intended to be an
23    exhaustive recitation of the trial record.  So that I think
24    some of these comments are perhaps best addressed in the
25    context that there's a trial record that either supports or

EA7LFERS                          Sentence

1   doesn't support the information that is contained in the

2   presentence report, which is largely the government's version

3   of what happened.

4           THE COURT:  No, it's probation's version.

5           MR. RAY:  To be fair, that's correct.

6           THE COURT:  And I think you've had opportunity to

7   submit to probation various comments that you made.

8           MR. RAY:  And we did, yes.

9           THE COURT:  So tell me your objections and I'll rule.

10          (Pause)

11          MR. RAY:  Your Honor, in paragraphs 12 and 13, one of

12  the things that's addressed is the question of the payment

13  allegedly for the murder for hire, specifically as to how my

14  client was paid.

15          THE COURT:  Let me read it first.  Okay.

16          MR. RAY:  My understanding from the government's

17  position at trial that it was Mr. Reyes who apparently was

18  paid, and according to the trial testimony from Reyes, in turn,

19  he was the one who paid supposedly Joe Fernandez and Luis

20  Rivera.

21          THE COURT:  So Suero and Rodriguez-Mora were not paid?

22  I confess, I do not have a precise memory of the testimony at

23  trial.  And this should be based on the trial record and not

24  what anyone remembers about the trial record.

25          MR. RAY:  Right.  And, look, I don't want to belabor

1    the point because there's a trial record one way or the other.

2            THE COURT:  I'll leave it open.  I don't think it's

3    material in relationship to the sentencing --

4            MR. RAY:  Agreed.

5            THE COURT:  -- of Mr. Fernandez.  If you would submit

6    to me postsentencing, within a week, say, what you think the

7    right way of expressing this would be, pass it through

8    Mr. Blanche.

9            MR. RAY:  I will do so.

10           THE COURT:  I will correct the statement here.

11           MR. RAY:  And that's fine, your Honor.  And I

12   apologize for not having done it sooner.

13           THE COURT:  Mr. Ray.

14           MR. RAY:  I know.

15           THE COURT:  No need to apologize.  You've done a

16   terrific job for your client.  I wish every lawyer that I

17   experienced can do as good a job as you do.  Did you hear what

18   I said?

19           MR. RAY:  I did.

20           THE COURT:  So don't apologize.

21           MR. RAY:  We got the final on Friday.

22           THE COURT:  Mr. Ray.

23           MR. RAY:  And I reviewed it with him last night.

24           THE COURT:  Mr. Ray, please don't apologize.

25           MR. RAY:  I can represent to the Court, your Honor,

1   that I don't have any other objections to factual information

2   in the report that I consider to be material to the question of

3   the sentence that your Honor would impose.

4            THE COURT:  Can I give you a week then to supplement?

5            MR. RAY:  Yes.

6            THE COURT:  And pass it through Mr. Blanche.

7            MR. RAY:  Yes.

8            THE COURT:  And if you have disagreement, maybe in the

9   same letter you can highlight the agreements and disagreements

10  and I'll rule.  This way I won't have letters going back and

11  forth.  If you need a little more time, let me know it.  I'll

12  hold up the judgment until we do that.

13           MR. RAY:  Much appreciated.  Thank you.

14           THE COURT:  All right.  So let's say a week from

15  Friday, okay.  Submit it to me a week from Friday.

16           MR. RAY:  Yes, your Honor, of course.

17           THE COURT:  And this will be amending the factual

18  statements in the pretrial investigative report so that they

19  conform to the trial for the most part.  If they have to go

20  beyond the trial, it should be indicated and discussed.  All

21  right.

22           So I find the facts relevant to the sentencing of

23  Mr. Fernandez as stated in the presentence investigative report

24  correct, but subject to modification in connection with the

25  proceedings I've just identified.  And I'll make the final

1    finding after I review all the submissions.

2            Okay.  So that takes us to the issue of what the

3    guidelines say.  Is there a legal issue?

4            MR. RAY:  Even one before that, your Honor, and I

5    don't want to belabor this.

6            THE COURT:  Mr. Ray, make your points.

7            MR. RAY:  I'm not trying to make trouble.

8            THE COURT:  Serious business.

9            MR. RAY:  Yes.

10           THE COURT:  Make your points.  I'm here to listen.

11   Take as much time as you need.

12           MR. RAY:  On Count One, we agree that as the

13   consequence of the jury's verdict, the defendant is subject to

14   a mandatory life term of imprisonment.

15           On the second count, I'm confused and perplexed.  I

16   see the government's argument at various points that because of

17   the fact that a gun was used in connection with what resulted

18   in murder, meaning the death of in this case two individuals,

19   that Mr. Fernandez should otherwise be subject to a mandatory

20   life term of imprisonment.  The probation office, however, has

21   characterized the statutory penalties as from ten years to

22   life.

23           I have reviewed the statute, which we should probably

24   turn to if I may just have the Court's indulgence, but it's

25   924(j)(1), 18 U.S.C. Section 924(j)(1), and it says a person

EA7LFERS                        Sentence

1     who --

2             THE COURT:  Let me get it.

3             MR. RAY:  Sure.

4             THE COURT:  I have it.

5             MR. RAY:  The lead-in language:  A person who in the

6     course of a violation of subsection C, which is the ordinary

7     924(c) section which is use of a firearm in connection with a

8     crime of violence or a narcotics trafficking offense, causes

9     the death of a person through the use of a firearm shall, one,

10    if the killing is a murder as defined in Section 1111, be

11    punished by death or by imprisonment for any term of years or

12    for life.

13            And so when you read over all that and you try to

14    figure out what that means, I think you go to the definition of

15    1111.  And if you flip over to that, that one is basically the

16    federal homicide statute which makes a distinction between

17    first degree murder and second degree murder.  All first degree

18    murders are basically premeditated homicides, and everything

19    else that is not a first degree offense is a second degree

20    murder offense.

21            If I've read this correctly, if it's a first degree

22    murder, then that subjects one to a mandatory life term of

23    imprisonment.  And Mr. Blanche will correct me if I'm wrong,

24    but my view of this, and which is why I'm confused, I think one

25    can only do that if there are sufficient Apprendi findings to

1    support it, i.e., the jury would have to find by interrogatory

2    consistent with Apprendi that the murder was in fact a

3    premeditated murder, in addition to the findings that they made

4    that a gun was used and that death resulted.

5            So I guess I'm not sure, I couldn't tell from the

6    government's sentencing memorandum what their position is under

7    the statute relative to the penalty that applies under 924(j).

8            THE COURT:  What do you think -- one minute,

9    Mr. Blanche -- what do you think I should do?

10           MR. RAY:  I think what you should do is I don't think

11   there are Apprendi findings to support the imposition of a

12   mandatory life sentence on Count Two.

13           THE COURT:  What was the verdict on that, do you

14   remember?

15           MR. BLANCHE:  Just guilty.

16           THE COURT:  Guilty.

17           MR. BLANCHE:  There was no special -- your Honor, I

18   can deal with this very quickly.

19           THE COURT:  Mr. Ray may not be finished.

20           MR. RAY:  I'm finished.  That's fine.

21           THE COURT:  Okay, Mr. Blanche.

22           MR. BLANCHE:  There is no mandatory life for 924(j)

23   ever.

24           THE COURT:  Slow.

25           MR. BLANCHE:  There is never a 924(j) sentence of

1    mandatory life.  924(j), according to the statute, there's no

2    mandatory minimum at all, a maximum of life.  However, a recent

3    Second Circuit case, actually, Supreme Court case addressing

4    Apprendi type issues has found that even though there's not a

5    ten-year mandatory minimum -- ten year, not life -- for 924(j)

6    in the statute, there is actually a ten-year mandatory minimum

7    associated with 924(j).

8            The reasoning behind that is because under Title 18,

9    United States Code, Section 924(c), if a firearm is discharged

10   during a crime of violence, then a mandatory minimum term of

11   imprisonment of ten years with a maximum of life must be

12   imposed.  And so in order for a firearm to be used to kill

13   somebody, like here, it necessarily had to be discharged.  So

14   there's a mandatory minimum term of imprisonment of ten years

15   on Count Two, a maximum of life, and the guidelines level is

16   life in prison.

17           So the result is that, the presentence investigation

18   report has it correct when it describes the potential

19   punishments which is for Count Two, it's a mandatory minimum of

20   ten years.

21           THE COURT:  That's what the recommendation is of the

22   probation office.

23           MR. BLANCHE:  The recommendation is for a life

24   sentence, but not mandatory life on Count Two.

25           THE COURT:  But I'm looking at the discussion at the

face page under Count Two, I'm told that the statutory sentence

is mandatory ten years to life.

            MR. BLANCHE:  Mandatory ten years to life.

            THE COURT:  And that comes from subsection C,

(c)(1)(A)(iii).

            MR. BLANCHE:  Correct.

            THE COURT:  Let Mr. Ray catch up.

            MR. RAY:  That clears up the confusion.  I don't

disagree with that.

            The only remaining issue on that point though is I'm

still confused about one other thing which is that the

probation office also indicated that the sentence with regard

to Count Two under the statute should be concurrent.  And I'm

not sure that needs to be addressed because I'm not sure that's

right.  In other words, my understanding of 924(c) in general

is that it is a consecutive term, whatever that term is.  And

so I'm confused there too because I want to be sure we got that

one right.

            THE COURT:  I have to make a finding of concurrent or

consecutive, which I haven't done get.

            MR. RAY:  No, I understand.  But my argument was, your

Honor, I just need to know whether it is mandatory that it be

consecutive under the statute.

            THE COURT:  Mr. Blanche.

            MR. BLANCHE:  It is mandatory that it be consecutive.

EA7LFERS                    Sentence

So Count One carries a mandatory term of imprisonment of life.

Count Two carries a minimum of ten years in prison, a maximum

of life.  But whatever sentence your Honor imposes on Count Two

must be consecutive to Count One.

        THE COURT:  That's my understanding as well.

        MR. RAY:  And that's my understanding of the law as

well, notwithstanding what's stated in the probation office's

report.

        THE COURT:  All right.  So let me then move to finding

under the sentencing guidelines.  And basically the guideline

for both counts is 43 and they are grouped.  And because of

Section 3D1.4, two levels are added making the criminal offense

level 45.  The guideline table doesn't go beyond 43, so I in

effect eliminate the grouping and consider the criminal offense

level under the guidelines and before 3553(a) evaluation as

calling for a life imprisonment.

        Do you agree, Mr. Blanche?

        MR. BLANCHE:  Yes, your Honor.  You can't go higher

than 43 anyway, so the government agrees, yes.

        THE COURT:  Mr. Ray.

        MR. RAY:  Your Honor, the only issue -- I don't

disagree with that.  The only issue is apparently there was a

dispute, which I don't know has been resolved or maybe doesn't

need to be, between the government and the probation office

relative to whether the murders are grouped or they're not

grouped and there was some misunderstanding as to what the

count of conviction was.  And I just think that that should be

addressed and perhaps the government can clear that up.

MR. BLANCHE:  Sure.  With the final presentence report

that was issued on Friday, the government does not object.

There was some discussion.  But the way it's described from

paragraphs 20 through paragraph 41 in the final presentence

report, the government agrees with that analysis.

THE COURT:  That's my understanding as well.

MR. RAY:  So we -- yes.  I understand and accept the

calculation under the guidelines.

THE COURT:  It comes to 45.

MR. RAY:  That it calls for life imprisonment with

regard to Count One and life imprisonment with regard to Count

Two and that under the statute, those terms must run

consecutive to one another.

THE COURT:  Thank you.  What does it mean,

Mr. Blanche, to have consecutive life sentences?

MR. BLANCHE:  Well, it matters from the standpoint of

if, for example, there's a later finding of a defect for Count

One, for example, and who knows what Congress will do or what

the Second Circuit will do in this case, but there could be

something that makes Count One fatal.

THE COURT:  You would want me to, if I were to give

life under both, make them consecutive?

EA7LFERS                    Sentence

1              MR. BLANCHE:  Yes, your Honor.

2              THE COURT:  Thank you.

3              The criminal history is IV.  There are two criminal

4     history points for prior offenses, as indicated in paragraphs

5     55 and 58 of the guidelines; and another two levels under

6     Section 4A1.1(d) because at the time the instant offense was

7     committed, the defendant was on probation.  That's stated in

8     paragraph 61 of the presentence investigative report.

9              So I will find from that subject to your correction

10    that there are four criminal history points placing

11    Mr. Fernandez in category III.

12             Do you agree, Mr. Blanche?

13             MR. BLANCHE:  Yes, we do, your Honor.

14             THE COURT:  Do you agree, Mr. Ray?

15             MR. RAY:  Based upon what is presented in the

16    presentence report, yes.  I mean, look, part of this is

17    somewhat academic if he's otherwise subject to a mandatory

18    sentence under the statute.

19             THE COURT:  3553(a) can be argued that way also in

20    terms of the fines and the sentencing guidelines.

21             But I'm required to find and I find that there are

22    four criminal history points, that Mr. Fernandez is in criminal

23    history category III.  A net offense level of 45 and a criminal

24    history category of III makes him subject under the guidelines

25    to consecutive life sentences.

1          Now we're at 3553 and I need to review with counsel

2     and with Mr. Fernandez, if he wishes to address me, what would

3     be a just punishment subject to mandatory minimum.  Congress

4     gives me no discretion in terms of mandatory minimum, which is

5     life under Count One and a consecutive ten years to life under

6     Count Two.

7          Mr. Ray, I'll hear you.  I note that Mr. Fernandez has

8     been detained for a day or two short of three years.  He was

9     detained from October 8, 2011.  He's 38 years old.  He's a

10    United States citizen.

11         Mr. Ray.

12         MR. RAY:  Your Honor, I'm not in the habit of making

13    arguments that don't make any difference.  Your Honor correctly

14    indicated and I believe that there's a record to support it

15    that your Honor must impose now two consecutive life terms.

16         THE COURT:  I'm not obligated on the second one for

17    consecutive life.  I'm obligated ten years to life.

18         MR. RAY:  Well, that's right.  That's a guidelines

19    argument.  In any event.

20         THE COURT:  The idea now is that do I apply the

21    guidelines or do I apply something different.

22         MR. RAY:  Well, obviously our position is that one

23    only has one life to give and it's already a life sentence on

24    the first count, which is the murder for hire statute.

25         I think that your Honor should know, if it's not

EA7LFERS                         Sentence

1    apparently already, that my client maintains his innocence.

2    Again, I wasn't there and I don't know and he's struggled with

3    me mightily for a year to try to get me to do the sorts of

4    things that I have tried to do to find something, anything that

5    would suggest that there's something wrong with this jury's

6    verdict because they didn't receive all the information that

7    they could have received that might have established reasonable

8    doubt and his position which is that he didn't do this.

9         Now, I suppose that will be for another day now.  Your

10   Honor has to respect the verdict.  You've ruled on the new

11   trial motions that we've made.  We will now proceed after

12   judgment to an appeal and ultimately perhaps the potential for

13   post judgment relief after a direct appeal has been pursued and

14   the mandate returns to this court in the event that the

15   conviction is affirmed.

16        One of the things I have learned is that from the

17   earliest stage, the first thing I did -- and your Honor may

18   recall this and I just offer this in connection with my

19   arguments relative to Count Two -- my client encouraged me to

20   assemble all of the 3500 material in this case, which I did.

21   It raised the legitimate question, well, why didn't he review

22   the 3500 material during the course of trial.

23        Well, since your Honor is a practical person, I will

24   just tell you that the 3500 material fits into more than three

25   three-ring binders, double-spaced, that I had to bring into the

1   facility at the MCC over the course of the better part of two

2   weeks in spending more than 20 hours with my client reviewing

3   that 3500 material.  And I offer this only for your Honor's

4   consideration perhaps for the future.  The Court's ruling in

5   that regard was that at the government's request that the

6   material could not be shared with the defendant directly.  It

7   could only be shared with the defendant in the presence of

8   counsel.  It took me, I'll just tell you, it took me 20 hours

9   with Mr. Fernandez to review that material.

10          As a result of that, further investigation was pursued

11  over the course of a year.  I'm not saying I spent every waking

12  moment doing it, but I'm telling you I spent probably on

13  average doing something relative to this case at least once

14  every two weeks for the past year trying to figure out if

15  there's something somewhere where I can get an opening to

16  suggest that there was something wrong with this verdict.

17  That's my client's position.  He says that he didn't do it.

18          And to be honest with you, after having reviewed this

19  for a year, I don't know.  And in most cases, you know, you

20  don't always know anything in life for a hundred percent

21  certainty, but I actually come at this now having spent a year

22  with it and I'm not sure either.  I offer that for what it is

23  worth in mitigation relative to Count Two.

24          And, look, we'll have to do what we'll have to do on

25  appeal and elsewhere to see if there's anything that we can do

1  recognizing, and as I've explained to Mr. Fernandez, the

2  finality of judgments and just how hard it is to open up a

3  jury's verdict.  We thought we had an avenue to pursue relative

4  to Mr. Rivera.  I have looked for other things in the 3500

5  material to try to figure out if something went wrong here.

6         And I'm not accusing anybody of anything.  And just so

7  it's clear, I'm not assaulting in any way Mr. Blanche's

8  integrity or the prosecution team.  I'm just trying to find out

9  what the truth is.

10        THE COURT:  You're doing your job, Mr. Ray.  You're

11 doing it very well.

12        MR. RAY:  I'm trying to.  Anyway, I don't want to push

13 the point.  We've spent enough time.

14        THE COURT:  Tell me about Mr. Fernandez as a person.

15        MR. RAY:  Well, I've gotten to know him for this year

16 and his family.

17        THE COURT:  Tell me about him.

18        MR. RAY:  What you see is a person that has a loving

19 spouse, young children, got himself out of the neighborhood

20 into upstate New York, I think probably to avoid a lot of

21 problems.  It's kind of a strange thing that supposedly, based

22 upon the trial testimony, he was somebody brought into this

23 because nobody would suspect that it was him.  His position is

24 because it wasn't me.  But it's rather a strange thing even by

25 the government's own witnesses.

EA7LFERS                    Sentence

1          THE COURT:  Was he working?

2          MR. RAY:  The presentence report tries to put a

3    negative connotation that his employment history was,

4    quote/unquote, sporadic only because they weren't able to

5    verify it.

6          THE COURT:  I ask you these questions because --

7          MR. RAY:  But he was working.

8          THE COURT:  -- when you're in a position of wanting to

9    challenge the jury verdict, you can't really open up.  And it's

10   my job as the sentencing judge to try to understand the entire

11   person.  And so I want to ask you these questions.

12         MR. RAY:  This person comes from a loving family, a

13   wife that is perplexed, who comes to visit me in my office on

14   average about once a month or more.  Young children.  He's in

15   the community.  He's taking care of a family.  None of the rest

16   of this stuff really adds up.  So that's the person that he is.

17         And, obviously, this is a strange occurrence given the

18   fact this is a homicide that apparently occurred in 2000.  He

19   faced a trial, I'm sorry, an arrest 11 years later and a trial

20   13 years after the event.  And now here we are in the 14th year

21   after the event to face what amounts to now the rest of his

22   life.  He obviously treats this seriously.  I have been

23   impressed based upon my --

24         THE COURT:  When did he leave the Bronx?

25         MR. RAY:  Not entirely certain, but approximately

EA7LFERS                    Sentence

 1    1998.  It was clearly before 2000 is the point.

 2            THE COURT:  And he held a number of jobs in the area

 3    of Monroe, New York, where he lived?

 4            MR. RAY:  Yes.  And some, admittedly, are more

 5    difficult to verify than others, but he was employed.

 6            THE COURT:  He earned a living?

 7            MR. RAY:  He earned a living, yes.

 8            THE COURT:  He has how many children?

 9            MR. RAY:  Four, your Honor.

10            THE COURT:  And the age span?

11            Are you planning to address me, Mr. Fernandez?  You

12    don't have to.  But if you want to, I can get all this

13    information from you.

14            MR. RAY:  Four, 12, and 15, your Honor.

15            THE COURT:  Is Mr. Fernandez going to address me?

16            THE DEFENDANT:  I have a letter that I'm going to read

17    to you after he's done.

18            MR. RAY:  Yes.

19            THE COURT:  You can do it now and you can just pick it

20    up if you want.  You can sit down.  You don't have to stand.

21            THE DEFENDANT:  On October 18, 2012, my simple world

22    changed.  The system I was raised to respect is being used

23    against me and my family.  I am a tax paying, blue collar

24    worker with a wife, three daughters and one son.  I have been

25    ripped away from my family and being falsely accused for a

1   crime I did not commit.

2          I hire Murray Richman, a private attorney, who failed

3   to show the Court and the members of the jury my innocence

4   because of ineffective representation.  He did not gather

5   evidence or witness to show the Court I am innocent of this

6   accusations.  I was told lies after lies.  Murray Richman told

7   me we will hire an investigator.  He didn't.  He said we have a

8   speedy trial.  We didn't.  We all know Mr. Murray Richman,

9   Brian Packett, and his firm failed to defend me.  I witnessed

10  attorneys and the prosecutors plan vacations the summer before

11  my actual trial.

12          THE COURT:  I missed that.  Would you say that again?

13          THE DEFENDANT:  I witnessed attorneys and the

14  prosecutors plan vacations the summer before my actual trial.

15  I did not go to trial until February 23, 2013.  I surrender on

16  October 18, 2011, almost one year and a half later.  I wasn't

17  granted my rights to a speedy trial.  This allowed the

18  government more than enough time to find other cooperating

19  criminals to use against me in this case.

20          This trial was anything but fair.  They all had a lot

21  to gain by creating an untrue story to elaborate Patrick

22  Darge's lies and the government's stories.  Prosecutors not

23  only helped them fabricate these lies against me but also

24  encouraged this unjust, unlawful behavior knowing they are

25  lying by placing them fabricating these lies against me.  But

1   also encouraged them -- this is the same sentence, sorry -- to

2   stand.

3              I'm going to read it all over again, not the

4   beginning, but where I read it twice.

5              THE COURT:  I've heard it.

6              THE DEFENDANT:  The system is being manipulated to

7   help the criminals and imprison the innocent.  Patrick Darge

8   should be a familiar name to the Court.  Patrick Darge got

9   arrested in 2003.  Patrick had a safety valve agreement.  The

10  government wrote a 5K1 letter that you, Judge Alvin

11  Hellerstein, signed off on.  Patrick did not tell the truth in

12  2003 or in 2010.  He lied.

13             In 2010, Patrick Darge gets arrested for this case.

14  You were initially placed in this case.  It was not a lottery,

15  as you stated during trial.  His case came to you, Honorable

16  Judge Hellerstein.  He confessed to the government about all

17  his crimes he committed and all the crimes he knows of for the

18  second time.  He doesn't tell you about another murder he did

19  or about his brother, Alan Darge, or this crime until 2012,

20  which is a violation of the 5K1 agreement.

21             This is the same person you believe is credible and

22  find no reason to question his credibility.  To collaborate his

23  lies, he used Yubel Mendez and his brother, Alan Darge, a/k/a

24  Boozer.  Alan Darge -- Patrick and Alan Darge always worked as

25  a team doing their drug deals and helping each other conspire

1   against the law and the government to maintain their freedom by

2   setting up others.

3           Alan Darge actually arrested in October, a year after

4   my surrender.  They brought him in to testify against me and

5   released him soon after my trial.  Alan Darge admitted on the

6   stand he shot four people and beat one guy up with a baseball

7   bat.  He has been selling drugs since he was 14 years old and

8   continues to do so with the support of the government.

9           In 2012, Alan Darge got arrested.  He had three

10  handguns that were recovered.  Alan Darge also possessed 30

11  different firearms over the course of the conspiracy.  And he

12  had one firearm that was burglarized from the home of a police

13  officer.  He served less than one year time for all his crimes.

14  Alan Darge is now free on the streets capable to continue

15  selling drugs and hurting innocent people with his partner,

16  Christian Guzman.

17          Alan Darge used Christian Guzman, his right-hand man,

18  to collaborate his lies.  Do you not see a pattern here, your

19  Honor.  Alan Darge claims Christian Guzman called him and told

20  him I wanted to meet with him on October 13, 2011, the day in

21  question.  The government shows Christian Guzman's phone record

22  with my number, my phone number, on the date in question, but

23  my lawyer, Murray Richman, filed to get my phone records.

24          I have been able to obtain and it shows Christian

25  Guzman's number is not on my phone records.  How is that

EA7LFERS                         Sentence

possible.  Understand Murray Richman asked Alan Darge how did

you first hear about the murders.  Alan said from Carlos

Correa.  Alan state on the record Carlos told me who did the

murders.  Carlos Correa, who on the record states he does not

know me or has never seen me.

        The prosecutors asked Alan what did Joe Fernandez say

to you.  Alan said Joe Fernandez told me Zac, a/k/a Alberto

Reyes, was the getaway driver.  Alan said Zac drove Joe and my

brother Patrick to the place where the murders happened.  Your

Honor, Alberto Reyes, a/k/a Zac, was on the stand when Murray

asked him do you know Joe Fernandez or do you see anybody in

the courtroom you recognize.  He said no.

        Yubel Mendez is another person used and trained by the

government to lie against me.  Both Alan Darge and Mendez,

career criminals, were brought into the case later, after one

year, after my trial was postponed multiple times.  They had no

charges related to this case.  Yubel Mendez is the jail house

snitch who knew Patrick Darge before I surrendered and was

brought here to MCC.

        I, Joe Fernandez, was initially placed with Patrick

Darge and Yubel Mendez when I arrived in MCC 5 North.  Patrick

told the officer to put me in the same cell with Yubel Mendez,

which he states on the record.  Your Honor, Patrick and Mendez

had already said their plan to set me up.  Mendez states on the

record Patrick told me what Patrick did.

1          Murray Richman asked Yubel Mendez when was the first

2     time you, Mendez, went to the government and told them about

3     the bucket you had.  Yubel Mendez said, no, wait, I was not the

4     one who went to the government.  They called him and asked him

5     about the bucket he had.  They visit with Mendez more than 50

6     times to help him collaborate Patrick Darge fabricated story.

7     The government knew that Patrick was using Mendez to set me up

8     and the government did not care to honor the law they vowed to

9     protect.

10         Your Honor, if there is no Brady on the DD5 files or

11    on the statements that were made by all people involved in this

12    conspiracy, then why is the government fighting so hard not to

13    let us see it all.  Your Honor, I would like for you to have an

14    in camera review of all the DD5 files and all the statements

15    that were made that we did not have access to before or during

16    the trial, like Luis Rivera and Aladino Suero, to see if there

17    is any Brady material.

18         Luis had the same charge I had and the government used

19    him throughout trial naming him the getaway driver and the gun

20    supplier.  The government took him off the case and gave him a

21    low-level drug charge with minimal jail time.  How does this

22    happen?  Patrick Darge said on the stand he was the driver and

23    was the one that gave him the murder weapon.

24         My lawyer, Murray Richman, stated he could not

25    subpoena Luis Rivera because of legal issues.  Patrick's story

EA7LFERS                    Sentence

claims Luis Rivera was the guy who picked up Patrick and the other shooter.  Why can't we get the statements he said to the government and why couldn't we get a subpoena before trial?  I have witnessed the government used the legal system in their favor.

We also have Aladino Suero, who was the guy who called his boss, Jeffrey Minaya, and said he has the two shooters to kill the Mexicans.  Aladino told Jeffrey Minaya the two shooters are Patrick and Tilo.  The government encouraged Aladino to take a deal and plead the Fifth.  This is another person whose statements are being hidden by the government.

Your Honor, I ask if there is nothing in all of the statements, then why won't the government let us read them.

On March 7, 2013, I was convicted for a crime I did not commit and I am not a murderer.  I was framed and set up by Patrick Darge, the government, and multiple people I am supposed to call family and a person I never knew nor shared anything with.

My true family, my wife, my children, and all who truly know me know that I am innocent.  I pray every day for strength from my Lord to help me bear this pain of such an unjust system full of betrayal and corruption.  My family and I will continue to fight to clear my name and I will keep hope and faith and I will never stop fighting this wicked system.  I will overcome in God I trust.

1            Thank you for listening to me and for your time.

2            THE COURT:  Mr. Fernandez, in addition to maintaining

3    your innocence and explaining your version of what went on, is

4    there anything you want to tell me about yourself that I should

5    take into consideration in sentencing you?  You should

6    appreciate that I'm sentencing you pursuant to the jury

7    verdict.  As a judge, it's my job to carry out the law.  And

8    the law, as I believe I have this power when I sentence people,

9    I need to take into consideration who they are and what they

10   do, what's their family situation.  Anything you want to tell

11   me, I'd like to listen.

12           THE DEFENDANT:  I mean I pretty much said everything.

13   I always worked all my life.  I never had no associate with

14   none of these guys that were involved in this crime.  I am an

15   honest person, a father.  I always took care of my family.  I

16   never sold drugs, never murdered no one, never been with none

17   of these guys, as you know.  I mean I pretty much covered it.

18           THE COURT:  Thank you.

19           Anything more you want to say, Mr. Ray?

20           MR. RAY:  No, your Honor.  Thank you.

21           THE COURT:  Mr. Blanche.

22           MR. BLANCHE:  Not unless the Court has any questions.

23           THE COURT:  I don't have any questions.

24           MR. BLANCHE:  Nothing to add, your Honor.

25           THE COURT:  Mr. Ray, on the second consecutive count,

1    which authorizes me to sentence Mr. Fernandez from ten years to

2    life, do you have a recommendation?

3         MR. RAY:  Your Honor, my recommendation is that ten

4    years is more than sufficient given what is already a reality

5    which is the life count on Count One.

6         THE COURT:  Mr. Blanche, do you have a recommendation?

7         MR. BLANCHE:  Yes, your Honor.  The law requires that

8    your Honor sentence him irrespective of the mandatory minimum

9    for Count One.  And we would respectfully request the Court

10   impose a sentence of life in prison on Count Two for all the

11   reasons discussed in our sentencing memorandum and the trial in

12   this case.

13        THE COURT:  I'll come back in a moment.

14        (Recess)

15        THE COURT:  Mr. Fernandez, when a sentencing hearing

16   comes on, it's not usual to review what happened at trial.  The

17   judge takes the verdict as it was given, listens to the

18   characteristics of a person, of a defendant, in terms of who he

19   is and what his family is like, what kind of work he did, and

20   whether he had criminal history or not and to what extent, and

21   the offense as proved at trial.

22        I allowed you to read, without interrupting you, your

23   entire statement.  I have respect for you.  I believe very

24   strongly that every person is entitled to the same full

25   respect.  And so that's what you wanted to do, I let you do it.

1          In sentencing you, however, I assume that the verdict

2    was correct.  Everything you say could be true.  We don't

3    require absolute certainty for a jury to give a verdict in a

4    criminal case.  The standard is beyond a reasonable doubt.  In

5    my opinion, given the record, and that's all I know is the

6    record, the jury's verdict was beyond a reasonable doubt.  And

7    there is no reason in law, in my opinion, for me to accept the

8    jury verdict and change it.  That's why I ruled the way I ruled

9    with regard to your motion and Mr. Ray's motion.

10         No judge is infallible.  You're going to appeal, I'm

11   sure.  And it may be that the Court of Appeals will see things

12   more towards your way of looking than the way I looked at it.

13   That happens and that's part of our system.  But I have to

14   assume that what the jury found is what existed and, therefore,

15   what existed were murders of two people.  And I have to punish

16   you under the law.

17         So for the first count, the count alleging conspiracy

18   to use interstate commerce facilities in the commission of

19   murder for hire, there's a mandatory life imprisonment I'm

20   required to administer and I so sentence you.

21         In the second count, use of a firearm in furtherance

22   of a crime of violence with death resulting, the range is ten

23   years to life.  But since death resulted and to be consistent

24   with the first count and to recognize that two people's lives

25   who deserve to live were killed in what was found to be in cold

1    blood, a life sentence is also appropriate.

2              And so I sentence you to consecutive life sentences.

3              The law provides for a term of supervised release

4    beyond that.  And I don't know if this is purely academic or

5    what, but I'll sentence you to five years of supervised release

6    to follow.

7              There are various recommendations set out in page 19

8    and following of the presentence investigative report.  I order

9    the mandatory conditions at the bottom of page 19.

10             I find that you pose a low risk of substance abuse.  I

11   do not impose mandatory drug testing.

12             The 13 standard conditions of supervision are imposed.

13             The condition for search on page 20 is imposed.

14             The condition to report to the nearest probation

15   office within 72 hours of release from custody is imposed, and

16   you'll be supervised by the district your residence.

17             There's a mandatory special assessment required under

18   the law of $200 and that is imposed.

19             I am not imposing a fine.  There's no ability to pay a

20   fine.

21             Restitution is not appropriate in this case.

22             And you're in detention so you'll be remanded.

23             Before I notify you of your right to appeal, have I

24   missed anything, Mr. Blanche?

25             MR. BLANCHE:  Your Honor, the government moves to

1    dismiss.

2              THE COURT:  Not yet.

3              MR. BLANCHE:  Sorry.

4              THE COURT:  Have I missed anything so far?

5              MR. BLANCHE:  No, you did not, your Honor.

6              THE COURT:  Mr. Ray?

7              MR. RAY:  Just one thing, your Honor, for a

8    recommendation regarding designation.

9              THE COURT:  Yes.

10             MR. RAY:  As you know, with regard to his residence,

11   the most convenient facility would be Otisville.  I don't know

12   whether that will be the designated facility or not.

13             THE COURT:  I'll recommend a facility as proximate as

14   possible to what's Monroe's county?

15             MR. RAY:  Orange County.

16             THE COURT:  Proximate as possible to Orange County.

17             MR. RAY:  Thank you.  That's sufficient.

18             THE COURT:  I advise you, Mr. Fernandez, that under

19   the Constitution, you have a right to appeal.  If you can't

20   afford a lawyer, a lawyer will be provided free of charge under

21   the Criminal Justice Act.  You should discuss with Mr. Ray

22   whether or not you wish to appeal.

23             And if your client wishes you to appeal, I instruct

24   you, Mr. Ray, to do so on a timely basis.

25             MR. RAY:  I will do so following the issuance of the

EA7LFERS                          Sentence

1    judgment.  Thank you.

2              THE COURT:  I'm going to hold up the judgment until I

3    get the submission on the findings.  Since you'll appeal after

4    that, the sooner you do it, I'll act on it as promptly as I

5    can.

6              MR. RAY:  Understood.  Thank you, Judge.

7              THE COURT:  Underlying counts?

8              MR. BLANCHE:  Yes, your Honor.  The government moves

9    to dismiss the underlying counts against the defendant.

10             THE COURT:  Without objection, Mr. Ray?

11             MR. RAY:  No objection, your Honor.

12             THE COURT:  Granted.

13             I suspect that you were expecting this, Mr. Fernandez,

14   given what the situation is.  You have a difficult story to

15   deal with.  You've got a fantastic lawyer, and I'm sure you'll

16   do what you need to do.  I wish you luck.

17             Thank you.  We're in recess.

18                              o0o

19

20

21

22

23

24

25