UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
JOE FERNANDEZ,

                         Petitioner

      -against-

UNITED STATES OF AMERICA,

                       Respondent.
------------------------------------------------------------ X
UNITED STATES OF AMERICA,

      -against-

JOE FERNANDEZ,

                        Defendant.
------------------------------------------------------------ X

**OPINION & ORDER GRANTING MOTION TO VACATE SENTENCE ON COUNT TWO OF INDICTMENT**

20 Civ. 5539 (AKH)
10 Cr. 863 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Petitioner Joe Fernandez moves under 28 U.S.C. § 2255 to vacate his conviction under Count Two of the indictment, which charges him with the crime of using a firearm in furtherance of a crime of violence causing the death of a person, in violation of 18 U.S.C. § 924(j). *See* 10 Cr. 863, ECF No. 229. The crux of his claim is that, following the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), his conviction of a conspiracy to commit murder for hire no longer qualifies as a "crime of violence" under 18 U.S.C. § 924(c)(3), and thus his conviction under Count Two of the indictment must be vacated. The Government opposes the motion, arguing that Petitioner's claim is procedurally defaulted and fails on the merits. For the reasons discussed below, Petitioner's motion is granted and his life sentence on Count II is vacated.

1

## BACKGROUND

On February 6, 2013, Petitioner Joe Fernandez was charged with one count of conspiracy to use interstate commerce facilities in the commission of murder for hire resulting in death, in violation of 18 U.S.C. § 1958 (Count One), and one count of using a firearm in furtherance of a crime of violence resulting in death, in violation of 18 U.S.C. §§ 924(j)(1)–(2) (Count Two). *See* 10 Cr. 863, ECF No. 74. The charges arose from the double murders of Ildefonso Vivero Flores and Arturo Cuellar on February 22, 2000. Flores and Cuellar were couriers of a Mexican narcotics trafficking organization that had exported a 274-kilogram shipment of cocaine to Jeffrey Minaya, the leader of a New York drug ring. To avoid paying the suppliers the money owed, Minaya recruited Patrick Darge to kill Flores and Cuellar, the two narcotics couriers, in exchange for $180,000. Tr. at 98–135.[1] Darge, a cooperating witness, testified that he recruited his cousin, Petitioner Joe Fernandez, to back him up, in exchange for $40,000, and that he recruited Luis Rivera to obtain weapons, ammunition, and a car, and to act as the getaway driver, in exchange for $20,000. Tr. at 149–54, 188–89, 255–57, 266–87, 616–18.

Petitioner's trial commenced on February 19, 2013. The Government's key evidence against him was the testimony of Patrick Darge, the only witness to identify Petitioner as a member of the murder-for-hire conspiracy or to place him at the crime scene. Darge testified that he asked Petitioner to participate because Petitioner was his cousin, had a gun that could be used in the murders, and was trustworthy. Tr. at 273–74. Darge testified that he told Petitioner that he had been "hired to murder two guys," offered to pay Petitioner $40,000 to assist him in the murders, and instructed Petitioner to bring his own gun. Tr. at 276–77. Darge

---

[1] Throughout this Opinion, "Tr." refers to the transcript from Petitioner's trial. *See* ECF Nos. 90–107.

testified that he told Petitioner that the killing was necessary to protect members of the family and that Petitioner agreed to participate. Tr. at 277. The plan, according to Darge, was to commit the murders in the lobby of an apartment building in the Bronx on February 22, 2000. A member of the Minaya gang was to lure Cuellar and Flores to the building, telling them that drugs and drug money were stashed in an upstairs apartment and that they would be paid there. The plan was to kill the victims while they waited for the elevator in the lobby.

In the morning of February 22, 2000, Cuellar and Flores were brought to the Bronx apartment building. Darge testified that he and Petitioner lurked in a concealed area in the lobby, that a Minaya gang member brought the two victims to the lobby where they waited for the building's elevator, and that he (Darge) emerged behind the victims with Petitioner following. Darge testified that he shot one of the Mexican couriers in the back of his head, that his gun jammed, and that he fled from the scene to the get-away car, a block-and-a-half away. Darge testified that he heard two or three shots while he was running away. Tr. at 328.

Darge testified that Luis Rivera was parked, waiting for him, and that Petitioner arrived minutes later and said that he "had to make sure they were both dead." Tr. at 332. Rivera drove away on a pre-planned route.

Cuellar and Flores, the Mexican couriers, were found dead in the lobby of the apartment building, lying in a pool of their blood. Shell casings of spent bullets were scattered on the lobby floor. Tr. at 35. Darge testified that he was paid $180,000 for the murders later that day and gave $40,000 to Petitioner. Tr. at 335.

On cross-examination, Darge admitted that he had lied during a previous cooperation with the Government and that his lies enabled him to receive a sentence of two years instead of a minimum sentence of 12-and-a-half years. Tr. at 386–87. He also admitted that he

had failed to disclose to the Government numerous shootings in which his younger brother, Alain Darge, had participated, Tr. at 405, and that he and his brother fled to the Dominican Republic after the murders of Cuellar and Flores. Tr. at 417.  Petitioner exercised his constitutional right not to testify.  Tr. at 1031.

On March 7, 2013, after a nine-day jury trial, the Jury convicted Petitioner of both Counts One and Two, the murder-for-hire conspiracy[2] and the crime of using a firearm in furtherance of a crime of violence causing death to a person,[3] respectively.  *See* 10 Cr. 863, ECF No. 106.  On October 7, 2014, Petitioner was sentenced to two mandatory, consecutive life sentences.  As of this writing Petitioner has served approximately 120 months of his term, counting from the date of his detention on October 18, 2011.

---

[2] 18 U.S.C. § 1158 provides that:

> Whoever travels in or causes another . . . to travel in interstate or foreign commerce, or uses or causes another . . . to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so, . . . if death results, shall be punished by death or life imprisonment, or shall be fined not more than $250,000, or both.

[3] 18 U.S.C. § 924(j) provides that:

> A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall—
>> (1) if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life; and
>> (2) if the killing is manslaughter (as defined in section 1112), be punished as provided in that section.

18 U.S.C. § 924(c)(3) further provides that:

> For purposes of this subsection the term "crime of violence" means an offense that is a felony and—
>> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Luis Rivera, who, according to Patrick Darge, procured the guns and drove the getaway car, was not called as a witness. On September 7, 2012, well after Darge's sentencing, Rivera pled guilty only to conspiracy to distribute heroin and was sentenced to 24 months' imprisonment. *See* 10 Cr. 863-6, ECF No. 60. The Government dismissed the conspiracy to murder and the firearm charges against Rivera.[4]

Petitioner directly appealed his conviction and sentence claiming that: (i) the evidence adduced at trial was insufficient to prove beyond a reasonable doubt that he knowingly joined the conspiracy with the specific intent to commit murder for hire; and (ii) the Court improperly denied his motion for a new trial based on the Government's failure to disclose *Brady* material, and on newly discovered evidence concerning the credibility of Government

---

[4] Petitioner requested a charge on inferences that can be drawn from an uncalled witness. I gave the Jury the following instruction:

> So if there is a witness who[m] you think might have had useful and relevant information but did not appear in the case, you need to decide: Is that really so? Did the witness really have that information? If the witness came, would it have just been a waste of time? Would the witness have said things that you already knew from other people? And is that an explanation? And there are many other explanations why some people don't appear. What you need to do is to decide, and I repeat this many times because it is key to your function. Look at all of the evidence and look at what is missing and decide: Did the government satisfy its burden to prove the case on each and all of the elements of the crimes charged beyond a reasonable doubt.

Tr. at 1031. Had I known then that Luis Rivera would not be charged at the level Petitioner had been charged, but for a much less serious and unconnected narcotics conspiracy that led to a sentence of two years rather than to a mandatory life sentence, I probably would not have given this charge. Patrick Darge's testimony inculpates Rivera, just as it inculpated Petitioner. The Government probably would not have given Rivera a lesser charge to which to plead guilty without having known something from briefing Rivera that was inconsistent with trying Rivera for conspiracy to murder and use a firearm in furtherance of a crime of violence. If Rivera could not be charged with the crimes of which Petitioner was found guilty, perhaps there is something to Petitioner's argument, that not he, but Patrick Darge's brother, Alain Darge, was the second shooter, and that Patrick Darge testified to cover that up.

Rivera, if called, probably would have claimed his Fifth Amendment right and not testified. To that extent, he would not have added information to the trial. But the wording of my charge suggested to the Jury that the uncalled witness, the get-away driver, had "information" and "may have said things" that would have been redundant of Patrick Darge's testimony and, therefore, that the testimony of the uncalled witness would have been a waste of trial time. Rivera's plea casts doubt as to the reliability of Patrick Darge's testimony and, therefore, the fairness of my charge.

This issue is not part of this motion and has not been briefed. It is not part of this decision.

witnesses. By Summary Order dated May 2, 2016, the Second Circuit affirmed Petitioner's convictions. *See United States v. Fernandez*, 648 Fed. App'x. 56 (2d Cir. 2016), *cert. denied*, 138 S. Ct. 337 (2017).

On June 27, 2017, Petitioner sought a writ of habeas corpus under 28 U.S.C. § 2255, challenging my jury instructions regarding aiding and abetting liability and the term "use" of a firearm under 18 U.S.C. § 924(c). Petitioner claimed also that his trial and appellate lawyers were constitutionally inadequate for not having raised these issues. I denied the petition but granted a certificate of appealability. *See* 17 Civ. 4806, ECF No. 6. By Summary Order on December 4, 2018, the Second Circuit denied Petitioner's appeal. *See Fernandez v. United States*, 757 Fed. App'x. 52 (2d Cir. 2018), *cert. denied*, 140 S. Ct. 337 (2019).

On June 22, 2020, the Second Circuit granted Petitioner leave to file the instant motion under 28 U.S.C. § 2255. *See* 20 Civ. 1130, ECF No. 9. Here, Petitioner argues that his Count Two firearm conviction is no longer valid after *Davis*, 139 S. Ct. 2319, because conspiracy is not a crime of violence. *See* 20 Civ. 1130, ECF No. 19. I grant Petitioner's motion.

## DISCUSSION

The Supreme Court in *Davis* held that Section 924(c)(3)'s "residual" clause, clause (B), which defines a "crime of violence" as a crime that, "by its nature, involves a substantial risk that physical force against the person or property of another may be used," was unconstitutionally vague as a basis of enhanced punishment for a firearms offense. *See Davis*, 139 S. Ct. at 2336 (quoting 18 U.S.C. § 924(c)(3)(B)). After *Davis*, an offense may serve as a predicate crime of violence only if the elements of the crime categorically involved "the use, attempted use, or threatened use of physical force against the person or property of another." 18

U.S.C. § 924(c)(3)(A). Petitioner argues that the crime of conspiracy, even a conspiracy to commit murder for hire when death occurs, of which he was found guilty in Count One, is not a crime of violence under Section 924(c)(3)(A). The Government argues in opposition that Petitioner's claim was procedurally defaulted, fails on the merits, and is not cognizable under 28 U.S.C. § 2255.

### I.  Procedural Default.

The Government argues that Petitioner's claim is procedurally defaulted because he failed to raise his challenge on direct appeal. Petitioner responds that there is "cause" and "actual prejudice" for not then raising the issue. I hold that Petitioner's procedural default is excused.

#### A.  Legal Standard.

A procedurally defaulted claim cannot be entertained unless the movant "can first demonstrate either [1] 'cause' and 'actual prejudice,' or [2] that he is 'actually innocent.'" *See Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986)).

To show "cause" for failure to raise a challenge on direct appeal, a defendant must demonstrate that "some objective factor external to the defense" prevented him from raising his claim, *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (quoting *Carrier*, 477 U.S. at 488)—a "claim 'so novel that its legal basis [was] not reasonably available to counsel.'" *Whitman v. United States*, 754 F. App'x 40, 42 (2d Cir. 2018) (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). "The futility test to excuse a default is strict; 'the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the

7

claim was 'available' at all."' *United States v. Thorn*, 659 F.3d 277, 233 (2d Cir. 2011) (quoting *Smith v. Murray*, 477 U.S. 527, 537 (1986)).

To establish "prejudice," a defendant must establish "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting [the defendant's] entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 179 (1982) (emphasis in original). A "claim of actual prejudice has validity only if an error . . . amounts to prejudice *per se*, regardless of the particular circumstances of the individual case." *Id*.

### B. Application.

i. <u>Cause</u>.

Petitioner argues that cause exists because his claim was not available to him at the time of default. The Supreme Court struck down Section 924(c)(3)'s residual clause as "constitutionally vague" in June 2019, two years after Petitioner exhausted his direct appeal. *Davis*, 139 S. Ct. at 2336. The Government argues in response that a vagueness challenge to Section 924(c)(3)'s residual clause was available in light of the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015), which was decided during the pendency of Petitioner's appeal.

The Supreme Court in *Johnson* upheld a challenge to the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), finding that ACCA's definition of "violent felony" was constitutionally vague. *See* Johnson, 576 U.S. at 594, 606.[5] However, the law in the Second Circuit after *Johnson* and before *Davis* was clear that conspiracy

---

[5] ACCA defines a "violent felony" as any felony that "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

8

to commit a crime of violence was itself a crime of violence. In *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019), the Second Circuit stated:

> It has long been the law in this circuit that a conspiracy to commit a crime of violence is itself a crime of violence under 18 U.S.C. § 924(c)(3). *See United States v. Desena*, 287 F.3d 170, 181 (2d Cir. 2002) (reaching conclusion with respect to conspiracy to commit assault in aid of racketeering); *accord United States v. Acosta*, 470 F.3d 132, 136 37 (2d Cir. 2006) (reaching conclusion with respect to conspiracy to injure, threaten, or intimidate person in exercise of civil rights). Indeed, we have so held with particular reference to Hobbs Act robbery conspiracy, *see United States v. Elder*, 88 F.3d 127, 129 (2d Cir. 1996), among other crimes, *see, e.g.*, *United States v. Patino*, 962 F.2d at 267 (reaching conclusion with respect to kidnapping conspiracy).

*Id.* at 175.

At the time of his direct appeal, the argument that Petitioner now makes would have been "patently futile" under the pre-*Davis* Second Circuit cases. *Davis* changed the law. When that occurs, a procedural default may be excused. *Ingber v. Enzor*, 841 F.2d 450, 455 (2d Cir. 1988). In *Ingber*, as here, the defendant also sought to collaterally attack his conviction after the Supreme Court had interpreted the statute at issue in a way favorable to him. The Supreme Court issued *Ingber* "after the defendant had exhausted his direct appeals" and "follow[ing] a decade of consistent precedent to the contrary . . .." *Napoli v. United States*, 32 F.3d 31, 37 ((2d Cir. 1994)), *on reh'g,* 45 F.3d 680 (2d Cir. 1995). The Second Circuit held that there was cause; any attempt to raise the issue on direct appeal would have been "patently futile." *Ingber*, 841 F.2d at 455. I hold that Petitioner had "cause." And, clearly, he was prejudiced, for he was convicted on an unlawful charge.[6]

---

[6] Because I hold that there was "cause" and "prejudice," I need not consider the alternative ground of "actual innocence" for excusing a procedural default. *But see* note 4, *supra*, discussing my second thoughts about the fairness of an element of my jury charge.

9

## II. <u>Crime of Violence</u>.

Petitioner contends that his conviction of conspiring to use a firearm in furtherance of a crime of violence where death results is not "a crime of violence," because, under *Davis*, the crime does not categorically contain as an element the "use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A); *see Davis*, 139 S. Ct. at 2239. Petitioner argues that his conviction of Count Two of the indictment therefore should be vacated. *See* 18 U.S.C. § 924(j).[7] The Government argues that this conspiracy is different, because it is a conspiracy to murder for hire where death actually resulted. Such a conspiracy, the Government argues, necessarily involves physical force. I hold that the statute favors Petitioner's argument.

### A. Categorical and Modified Categorical

Count One of the indictment, the conspiracy to murder for hire, is the predicate offense of Count Two, the conspiracy to use a firearm where death results. I must focus not on "how the defendant actually committed his crime," but on the categorical elements of the crime. *Davis*, 139 S. Ct. at 2326. This categorical approach "look[s] only to the statutory definitions—*i.e*, the elements—of a defendant's [] offense, and not to the particular facts underlying [the offense]," to determine if the offense qualifies as a "crime of violence." *Descamps v. United States*, 570 U.S. 254, 260–61 (2013).

---

[7] I gave the Jury the following instruction regarding the "crime of violence:"

> You must find from the government's proof beyond a reasonable doubt that the defendant participated in the crime of violence described in the indictment. If you find that the government proved the crime of violence beyond a reasonable doubt, here the crime of violence is to kill Flores or Cuellar, either of them, that constitutes a murder for hire as I've instructed you.

Tr. at 1015.

10

However, if an offense includes alternative elements for conviction, as does 18 U.S.C. § 1958(a), the murder-for-hire conspiracy statute, a "modified categorical approach" is to be used to determine "which element played a part in the defendant's conviction." *Id.* at 260. Under this approach, a limited set of documents are to be reviewed, including the indictment, plea agreement, and plea colloquy "to determine, what crime, with what elements, the defendant was convicted of." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). I must "consider the minimum conduct necessary for a conviction of the predicate offense . . . , and then consider[] whether such conduct amounts to a crime of violence" under section 924 (c). *United States v. Hill*, 890 F.3d 51, 56 (2d Cir. 2018). I focus "on the intrinsic nature of the offense rather than on the circumstances of the particular crime." *United States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006). If the "most innocent" or "minimum criminal" conduct does not constitute a "crime of violence," then the offense categorically fails to qualify as a "crime of violence." *Id.; cf. United States v. Scott,* 990 F.3d 94 (2d Cir. 2021) (en banc) (holding that first degree manslaughter in New York law is a crime of violence).

### B. Application.

In this case, the predicate conviction was the conspiracy to commit murder for hire in violation of 18 U.S.C. § 1958. Section 1958(a) provides that:

> (a) Whoever *travels* in or *causes* another (including the intended victim) to *travel* in interstate or foreign commerce, or *uses* or *causes* another (including the intended victim) to *use* the mail or any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who *conspires* to do so, shall be fined under this title or imprisoned for not more than ten years, or both; and if personal injury results, shall be fined under this title or imprisoned for not more than twenty years, or both; and if death results, shall

11

>be punished by death or life imprisonment, or shall be fined not more than $250,000, or both.

18 U.S.C. § 1958(a) (emphasis added to highlight the forms of conduct that are the bases of the statutory violations). Applying the modified categorical approach, I have to determine if "the minimum conduct necessary for a conviction" of a murder-for-hire conspiracy constitutes a crime of violence under Section 924(c)(3)(A)'s element clause. *Hill*, 890 F.3d at 56. I must consider if the most "innocent" or "minimum" form of a murder-for-hire conspiracy, *Acosta*, 470 F.3d at 135, has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another, 18 U.S.C. § 924(c)(3)(A).

Section 1958(a) does not have, "as an element[,] the use, attempted use, or threatened use" of physical force. *Id.*; *see also Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017) ("[W]e begin, as we must, with a careful examination of the statutory text."). The statute defines the crime as involving five forms of conduct: (i) traveling in interstate or foreign commerce; (ii) causing another to travel in interstate or foreign commerce; (iii) using the mail or any facility of interstate or foreign commerce; (iv) causing another to use the mail or any facility of foreign commerce; or (v) conspiring to do any of the foregoing (plus the requisite intent). *See* 18 U.S.C. § 1958(a). None of these five forms of conduct involves the use or attempted use or threatened use of physical force. *See Qadar v United States*, 00 Cr. 603, 16 Civ. 3593 (ARR), 2020 WL 3451658, at *2 (E.D.N.Y. June 24, 2020); *see also United States v. Boman*, 873 F.3d 1035, 1042 (8th Cir. 2017) ("[M]urder-for-hire can only constitute a crime of violence under the residual clause of § 924(c)(3)(B), and not under the force clause of § 924(c)(3)(A), because it does not have 'as an element the use, attempted use, or threatened use of physical force against the person or property of another.'"). "With death resulting" is not an element of the crime; it is the consequence of the crime.

The Government argues that because Petitioner was convicted of a murder-for-hire conspiracy *resulting in death*, the crime is a "crime of violence" under Section 923(c)(3)(A). But, as Judge Ross wrote in *Qadar*, also a case charging conspiracy to murder for hire, the requirement that "death results" does not elevate the act of traveling, using the mail, or conspiring to do the foregoing to an act involving physical force. *See Qadar*, 2020 WL 3451658, at *2. The criminalizing conduct in Section 1958 "is very different from a murder statute such as [Section] 1959, which applies when a person 'murders, kidnaps, maims, assaults with dangerous weapon, commits assault.'" *Id*. (quoting 18 U.S.C. § 1959). Other district court cases in this circuit hold as does *Qadar*. *See Qadar*, 2020 WL 3451658 (finding that conspiracy to commit murder for hire and murder for hire itself do not constitute a crime of violence for purposes of Section 924); *Americo Massa v. United States*, 00 Civ. 1118 (JSR) (S.D.N.Y. Apr. 15, 2020), ECF No. 809 (granting petitioner's Section 2255 motion to vacate his Section 924(c) conviction predicated on conspiracy to commit murder in aid of racketeering, because, following *Davis*, this offense was not a "crime of violence" under 18 U.S.C. § 924(c)); *Bonilla v. United States*, 07 Cr. 0097 (SJ), 2020 WL 489573, at *3 (E.D.N.Y. Jan. 29, 2020) (finding "conspiracy to commit murder in-aid-of racketeering in violation of 18 U.S.C. § 1959(a)(5) is not categorically a crime of violence following *Davis* and therefore cannot support a conviction under § 924(c)"); *see also United States v. Rodriguez*, 94 Cr. 313 (CSH) 2020 WL 1878112 at *7 (S.D.N.Y. Apr. 15, 2020) (noting that the Government conceded that defendants' convictions for conspiring to murder with death resulted were no longer valid predicates for their Section 924(c) convictions following *Davis*).

The post-*Davis* authorities the Government cites are distinguishable; they dealt with statutes that explicitly include the use, attempted use, or threatened use of physical force.

13

*See, e.g.*, *United States v. Tsarnaev*, 968 F.3d 24, 104 (1st Cir. 2020) (examining 18 U.S.C. § 2332a, which implicates a "person who, without lawful authority, *uses, threatens, or attempts or conspires to use*, a weapon of mass destruction," and 18 U.S.C. § 2232f, which implicates "[w]hoever unlawfully *delivers, places, discharges, or detonates an explosive or other lethal device* in, into, or against a place of public use") (emphasis added); *United States v. Ross*, 969 F.3d 829, 837 (8th Cir. 2020) (discussing the statute at issue, 18 U.S.C. § 1202, which penalizes "[w]hoever unlawfully *seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward* or otherwise any person . . . .") (emphasis added). As for *United States v. Runyon*, 983 F.3d 716 (4th Cir. 2020), a recent case holding that a conspiracy to murder for hire is a crime of violence, I respectfully decline to follow its reasoning.

I hold, after *Davis*, that the conviction of Petitioner of Count One—conspiracy to commit murder for hire—is not a "crime of violence" under Section 924(c) and, consequently, that the judgment of conviction and sentence of Petitioner under Count Two is not lawful.

**III.    Right to Be Released.**

Petitioner filed this proceeding pursuant to 28 U.S.C. § 2255(a), seeking release from custody of a second life term. The Government opposes, arguing that, since Petitioner already is, and must remain, in custody for life because of his conviction of Count One, his petition should be dismissed. By the same logic that allowed Petitioner to be sentenced to a second and consecutive life term when he already was sentenced to life, I hold that he has a right under the statute to gain release from his unlawful consecutive life term. *United States v. Kaminsky*, 339 F.3d 84 (2d Cir. 2003), cited by the Government, is not on point, for it deals with an appeal of a restitution order, and not a release from an unlawful sentence of custody.

Section 2255 (a) of Title 18, provides:

14

> A prisoner *in custody* under sentence of a court established by Act of Congress *claiming the right to be released* upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a) (emphasis added).

Petitioner asks me "to correct" his sentence, "to vacate [and] set aside" the unlawful aspect of his sentence. *See* Pet'r Mot. (ECF No. 230), at 1, 14; *see also* Pet'r Reply (ECF No. 236). In essence, he argues that his sentence to a second life term "was in excess of the maximum authorized by law," *see* 28 U.S.C. § 2255(a), and seeks to be released from the unlawful portion of his custody. Vacatur of that consecutive life sentence would reduce his two life sentences to one, and he would remain in custody pursuant to his conviction of Count One.

No one can foretell the future. If Petitioner's first life term were to be commuted, or held unlawful, Petitioner would be released immediately and not still be serving an unlawful consecutive term of life. Petitioner has a cognizable claim for relief under Section 2255.

## CONCLUSION

Petitioner's motion to vacate, set aside, or correct his sentence is granted. The Judgment is amended to strike the consecutive life sentence imposed under Count Two and, specifically, on page two, the phrase "and life on count 2 to run consecutive." ECF No. 166, at 2. The Clerk of Court shall terminate ECF No. 230.

SO ORDERED.

Dated: November 3, 2021
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

15