IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO.: S2 10-cr-863-05(AKH) |
|     Plaintiff-Respondent(s), ) | CIVIL NO.: 20-cv-5539(AKH) |
| ) | |
| vs. ) | MOTION TO REDUCE SENTENCE |
| ) | |
| ) | PURSUANT TO 18 U.S.C. § 3582(c)(1) |
| JOE FERNANDEZ, ) | (A)(i) |
| ) | |
|     Defendant-Petitioner. ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REDUCE SENTENCE
## PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

Petitioner, Joe Fernandez, through amicus curiae, respectfully moves this Court for an order reducing his sentence based on the "Extraordinary and Compelling Reasons" discussed below, under the newly-amended Compassionate Release statute 18 U.S.C.§ 3582(c)(1)(A)(i). Oral argument is requested on this motion.

### INTRODUCTION

Fernandez was sentenced in 2013 to two consecutive terms of life imprisonment based on an allegation that he not only "Conspired to Commit Murder for Hire" but actually aided and abetted a co-conspirator in the commission of such crime.

Fernandez has and continues to maintain his innocence, and hopefully this Court can now bring a belated measure of justice to Fernandez's sentence. Due to the changes made to § 3582(c)(1)(A)(i) by the First Step Act ("FSA"), see P.L.115-139, 132 Stat. 5194, at

-1-

§ 603, the Court may reduce a sentence for Extraordinary and Compelling reasons like those present in this case, and it is asked of the Court to reduce Fernandez's sentence to time served or for a significant reduction for the reasons set forth below.

## RELEVANT BACKGROUND

The charges against Fernandez derive from the double homicide of two Mexican narcotics couriers that happened on February 22, 2000. The Mexican narcotics trafficking organization supplied Jeffrey Minaya with a 274 Kilogram shipment of cocaine, worth approximately $6.5 million. Minaya, the leader of a New York drug ring sought to avoid paying the suppliers by murdering the couriers. Minaya recruited Patrick Darge to kill the couriers in exchange for $180,000. Darge alleged he recruited two people to aid him: (1) Fernandez, to act as backup, in exchange for $40,000; and (2) Luis Rivera, who was to obtain the weapons, ammunition, got away car, and be the getaway driver, in exchange for $20,000.

Fernandez exercised his constitutional right to trial which commenced on February 19, 2013, nearly thirteen years the murders. The Government's key evidence came from Patrick Darge-the sole witness who placed Fernandez at the scene of the crime and as a member of the murder-for-hire-conspiracy. On March 7, 2013, after a nine day jury trial, Fernandez was convicted on both counts of his indictment.

After the jury's guilty verdict and prior to sentencing, Fernandez filed post-trial motions attacking Darge's credibility while also arguing that there was insufficient evidence to support the jury's verdict. Fernandez went on to file a motion for a new trial under Fed. R.Crim.P. 33(b), based upon alleged Brady violations as well as newly

discovered evidence that seriously undermined and called into question the credibility of three Government's witnesses, including Darge.

Notably, Luis Rivera, who according to Darge, obtained the guns and car and acted as getaway driver did not testify. However, on September 7, 2012, Rivera pled guilty only to conspiracy to distribute heroin, and was sentenced to 24 months imprisonment. Pursuant to his plea agreement, the Government dismissed the murder and firearm charges against him.

Fernandez has already served 11 years in prison. On September 13, 2021, Ferandez submitted a written request to Warden E. Bradley asking that he moves this Court for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i). On September 13, 2021 same day, Warden informed Fernandez in writing that he was declining to file such a motion.

## ARGUMENT

Previously, the Bureau of Prisons ("BOP") had sole discretion to invoke a § 3582(c) action after it determined whether the circumstances warranted a shortened sentence. Because this was seldom done by the BOP since its 1984 enactment, Compassionate Release nearly went unpracticed. The BOP acting as gatekeeper to this motion effectively eliminated the safety valve. Therefore, courts were powerless to reduce a previously imposed sentence of imprisonment, even when extraordinary and compelling reasons warranted a reduction in a prisoner's sentence. To address this reality, Congress through the FSA eliminated the old regime, and placed the authority to determine when extraordinary and compelling reasons warrant a sentence reduction.

The newly-amended § 3582(c)(1)(A)(i) statute now allows not only a BOP to request such relief, but also "upon motion of the

defendant," if the defendant fully exhausts the administrative remedies , or if 30 days elapse "from the receipt of such a request) to the Warden of the defendant's facility. As noted above, Fernandez submitted his request to the Warden on September 13, 2021 which was denied on September 13, 2021 same day. See P.L.98-473 (H.J.Res. 648), P.L.98-473, 98 Stat. 1837 (Oct.12, 1984); see also P.L. 115-391, 132 Stat. 5194, at § 603 (Dec.21, 2018).

### A. JURISDICTION

This Court now has the authority to reduce Fernandez's sentence based on the extraordinary and compelling circumstances presented here. First, it has jurisdiction to hear this motion because the Warden has declined to file such motion to the Court on Fernandez's behalf. Second, the changes made to 18 U.S.C. § 3582(c)(1)(A) made by the FSA have finally vested the Court with the final authority to decide when extraordinary and compelling circumstances warrant a sentence reduction. Such circumstances clearly exist in this case. Third, the factors a court must consider in determining an appropriate sentence weigh strongly in favor of a substantially lower sentence for Fernandez.

As evidenced the Warden formally informed Fernandez that he would not file such a motion. Accordingly, Fernandez is entitled to bring his motion directly to the Court pursuant to § 3582(c)(1)(A), and this Court is vested with the jurisdiction to rule on the requested relief.

### B. THE REMEDY REQUESTED HERE IS CONSISTENT WITH THE TEXT OF THE STATUTE AND THE SENTENCING COMMISSION'S POLICY STATEMENT

Recently courts have battled over what the wording of the FSA's "Extraordinary and Compelling" means in the context of reducing sentences. This determination is made simple as Congress delegated the U.S Sentencing Commission to expound upon what constitutes "Extraordinary and Compelling reasons". See 28 U.S.C. §994(t); see also 28 U.S.C. §992(a)(2). The resulting policy statement by the Commission sets forth three factual considerations; the fourth consideration or "other reasons," specifically includes "an extraordinary and compelling reason other than, or in combination with, the first three." See U.S.S.G. § 1B1.13, Application Note 1(A).

Additionally, the commentary makes clear that the extraordinary and compelling reasons "need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." See U.S.S.G. § 1B1.13, Application Note 2. In other words, even if an "extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court, [that fact] does not prevent consideration for a sentence reduction.

Therefore, the commentary's language is unambiguous that extraordinary and compelling reasons for a sentence reduction may exist even where an inmate is not elderly, ill, or facing complicating family circumstances. And though the policy statement has not been amended since the passage of the FSA, the prior commentary is not binding on the courts for two reasons: (1) the Guidelines are advisory only, see United States v. Booker, 543 U.S. 220 (2005); and (2) it is inconsistent with the text and the undisputed purpose of the FSA, which, "like other sentencing statutes...trumps the Guidelines." Dorsey v. United States, 567 U.S. 260,266 (2012).

See also <u>United States v. Da Cai Chen</u>, 127 F.3d 286,291 (2nd Cir. 1997)(Commentary that relates to a statute, or to a guideline that mirrors a statute (as law), is not entitled to deference); <u>United States v. Pierninanzi</u>, 23 F.3d 670, 683 (2nd Cir. 1994) "Because the current version of the Guideline policy statement conflicts with the FSA, the newly-enacted statutory provisions must be given effect" "Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the Congressional mandate that the policy statement must provide guidance on the appropriate use of the sentence-modification provisions under § 3582." <u>Cantu-Rivera</u>, 2019 WL 2578272 at *2 n.1.

Circuits usually give deference to a district court's determination, yet recently the 6th Circuit held that a judge went too far by reducing a prisoner's life sentence to "time served". But, the court's authority to reduce a prisoner's sentence is not only consistent with the statute, but also with the language in the policy statement, which makes clear that "the court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction)" and encourages the filing of a motion for compassionate release where a defendant "meets any of the circumstances set forth in the Application Note."

As mentioned, in amending the language of 18 U.S.C.§ 3582(c)(1)(A), Congress finally empowered sentencing courts to make this critical determination, even in the face of a BOP determination that a defendant's case is not extraordinary or compelling.

## EXTRAORDINARY AND COMPELLING CIRCUMSTANCES WARRANT A REDUCTION IN FERNANDEZ'S SENTENCE

From the time of his self surrender to authorities and through the present, Fernandez has adamantly asserted his factual and actual innocence. His whole hearted denial of committing the offenses for which he was accused and convicted, coupled with his decision to go to trial cost him his freedom forever. As previously noted, Patrick Darge, a two time cooperating witness was the only alleged witness to the murders for which Fernandez was convicted. Neither Jeffrey Minaya nor Alberto Reyes, two cooperating witnesses in the Murder-for-hire conspiracy testified to knowing or seeing Fernandez at the impending crime scene. Though Darge alleged Fernandez was with him at the crime scene, he did not witness Fernandez shoot either victim.

### DARGE CRIDIBILITY

Darge admitted that he previously lied to the Government to protect his younger brother, Alaine Darge, by failing to disclose numerous shootings in which the younger brother had participated. This prior perjured testimony was supplied to this very Court, had the jury known this it could have determined that Darge's current testimony was false, and that he was once again trying to protect his real conconspirators. Even Minaya testified that he assume the younger brother was the second shooter. Darge also admitted to not telling the Government about three other murders-for-hire conspirary that he committed (none of them with Fernandez's assistance).

It is relatively clear that Darge feels that he can make a mockery of not only the law but the integrity and jurisprudence of the Court and its proceedings through manipulation.

Respectfully, the Court should be incredulous towards the testimony suppled by Darge in regards to Fernandez, as Darge is a self proclaimed hired hitman who went as far as to admit his involvement in a 1998 murder-for-hire with his cousin.

Yet here, Darge incriminates Fernandez who had no prior record beyond a traffic citation as having not only a propensity for violence but, to commit murder as well. This is more incredible to believe than Darge's incredible testimony.

## THE FORENSIC EVIDENCE DID NOT SUPPORT DARGE'S TESTIMONY

Forensic evidence showed that the shooter used a .380 on both victims. Patrick Darge admitted he used a .380. Darge went on to testify that Fernandez had a larger gun, at least two and a half feet or three foot long. No forensic evidence was recovered to support that a gun of this nature was used, as only .380 bullets and/or casings were found. In light of this a reasonable jurist "more likely than not" would not have convicted Fernandez. Had Fernandez sought or had a bench trial in which this Jurist alone had to determine innocence or guilt based on the evidence, would it have decided the case in the same manner as the jury, or with its thorough knowledge of the law not have convicted Fernandez. These facts surely provide sufficient doubt about Fernandez's guilt in which "to undermine confidence" in the jury's verdict, and warrants strong consideration by this Court as to the current relief sought of a significant modification of the sentence of imprisonment.

## LUIS RIVERA'S STATEMENT CASTS CONSIDERABLE DOUBT AS TO FERNANDEZ'S GUILT AND DARGE'S CREDIBILITY

Lastly, Luis Rivera an alleged accomplice according to Patrick Darge, contradicted the testimony provided by the Government's Star Witness. Specifically Rivera told the government that he was not the

driver of the getaway vehicle nor participated in any other way with the crime. Although the Government had notes of the proffer made by Rivera these notes which were not only intrinsic, but highly exculpatory in nature to Fernandez's alleged guilt, were not supplied to the defense nor presented to the jury.

Also, Rivera's statement to private investigator Robert L. Dickerson "that he was not the getaway driver," as Darge claimed holds weight as an affidavit. (the "Dickerson Affidavit.") But, the most hauntinig statement during Dickerson's upfront interview of Rivera, was that when Dickerson stated that an innocent man may have been wrongfully convicted Rivera stated: "I know, I was in the same predicament." Rivera's story has remained consistent, and he had nothing to gain by speaking with the private investigator, yet he agreed to be interviewed. Based on the foregoing Fernandez respectfully asserts that these facts encompassing his case not only provide "extraordinary and compelling circumstances", but fulfills the Schlup standard of "probable innocence "which weighs heavily in favor of a sentence reduction."

This Court previously expressed that it was troubled by the exercise of prosecutorial discretion in allowing Rivera to plead to a[significantly] lesser narcotics offense and in dismissing the murder and gun charges against him. As it was the Government's theory of the case, that Rivera was responsible for procuring the guns used for the killings, and acquiring the getaway vehicle and driving.

This credible and compelling evidence, coupled with the Court's jurisprudential discerning, should act as a compelling guide to relief, as a motion for compassionate release is civil in nature and relates to matters other than those characterizied as criminal; and is therefore peaceable in nature.

## THE RESURGENCE OF THE CORONAVIRUS PANDEMIC WARRANT RELIEF FOR FERNANDEZ

The Court's familiarity with the ongoing COVID-19 pandemic, and its more deadly Delta variant which is purportedly 1000x more transmissable; especially between those who are in close contact with one another. Fernandez was fortunate to recover from his previous bout with the Covid last year. Multiple prisoners suffered but no reports were given to prisoners concerning those who succumbed to the Virus.

Recently, the BOP received an "F", based upon its measures of mitigating the coronavirus through Compassionate Release and because its infection rate was three times the national average. The BOP was in the bottom 15 prison systems for vaccinating inmates, as COVID is present in 115 of 122 institutions. Also, gueationable real time statistics as to inmate deaths and sick staff and prisoners are currently under review.

The Second Cuicuit described the discretion of district courts to consider a wide range of factors in assessing a compassionate release motion, including a defendand's "age at the time of the crime...the injustice of a lengthy sentence," and "the present Coronavirus pandemic" Therefore, the Court is not limited to the specific reasons in Application Note 1 of §1B1.13, nor the directives of the Attorney General, to primarily consider those with acute health problems, but to consider a motion on all the issues raised that warrant relief.

This Court and the Government are aware that from the inception of criminal charges, Fernandez has adamantly maintained his innocence. He has judiciously sought to regain his life and liberty which he asserts were deprived through false incrimination. The reason this assertion is pertinent is that the uncertainty of the ongoing pandemic has caused another vital issue; his mortality in the pursuit of his freedom. For

here you have an innocent man racing not only against time, but also an impending virulent force. This fear of the uncertainty should respectfully spur the Court's integrity to take action and weigh consistently this issues herein and provide just relief. Not only is this Court vested with authority under legal principles, but it is also vested with the capability to display its "compassion." A down-to-earth sensibility of empathy ingrained in this Honorable Court which lets it embrace more than a modicum of sympathy for Fernandez's plight. If law is pliable, then how can one who was chosen to judge it not be?

Respectfully Fernandez asserts that his concerns resulting from the pandemic likely constitute the "Extraordinary and Compelling" reasons required for compassionate release.

## THE RELEVANT 3553(a) FACTORS WEIGH STRONGLY IN FAVOR OF A SENTENCE REDUCTION

In deciding Fernandez's request for Compassionate Release the Court is required to consider the factors set forth in 18 U.S.C.§ 3553(a) which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed-

(A)  to reflect the seriousness of the offense, [ ] and to provide just punishment for the offense...

(C) to protect the public from further crimes of the defendant; [and]...(b) the need to avoid unwarranted sentencing disparities among defendants with similar record who have been found guilty of similar conduct.

18 U.S.C. § 3553(a)

## NATURE AND CIRCUMSTANCES OF OFFENSE AND CHARACTERISTICS
## OF THE DEFENDANT

As discussed, the incriminating testimony of Patrick Darge subsequently led to Fernandez's two consecutive life sentences. It is undisputed that had he actually committed the crimes, that cold-blooded murder is a most serious crime. But, the characteristics of Fernandez's past and present, contains no violent nature, and his non-existent criminal history is contradictory to the offense of conviction. Usually there is a pattern of prior violent acts yet Fernandez has none, even in prison. During his years of imprisonment Fernandez has only one incident report. He has been housed in a level-seven United States Penitentiary since his imprisonment began; his decade long imprisonment in this type of prison is in conjunction with the seriousness of the crime and length of sentence.

Fernandez has maintained his morals, principles, and values in the face of his adversities. He remains upbeat and positive despite the fact that he was sentenced to two life sentences, for he not only has high hopes but faith that the day will come when he'll be reunited with his loved-ones. Until then Fernandez will continue to dedicate himself to being the best husband, father, and now grand father he can be. Fernandez has completed more than 15 program courses, in which he has logged numerous hours. He has been a USP Lieutenant Orderly working in close quarters with the top staff of the institution. He has developed up-to-date skill sets in hopes of employment if granted release.

Prior to incarceration Fernandez worked construction and was certified by the New York State licensing department as an asbestos handling technician; he worked as a security guard (with "Stars Security Service Inc."), then another Security firm, thereafter, he worked at

Weather Seal, B.J.'s Wholesale, then went back to School and obtained his electronician's certification. At the time of his self-surrender to authorities he was working at All Point Limousine, a private company, in which he was a driver, Chauffeurring clients.

Fernandez has held a form of employement since 16 years of age and dreams of continuing his pursuit of happiness. He has four children, and a steadfast loving wife who has remained the light of his life throughout his pre and post incarceration. Fernandez has maintained strong family ties, as he talks with them daily. They have suffered dramatically from his absence, past, and presently. He cherishes being a big part of his children's lives as they were growing up. Fernandez relishes the memories of cooking their meals before taking them to school, helping them with homework, or going to school functions. He had to be there more with the children because his wife was going to school to become an RN.

Lately, they have been depressed especially when Fernandez got sick with COVID-19. Their worst fear was him passing away and being innocent. His youngest daughter has suffered the most with the loss of her father not being there. She's had to go to a therapist.

## FERNANDEZ IS DESERVING OF MERCY

Several district courts have recently granted compassionate release to prisoners that had life imprisonment terms. U.S.A v. Laderzma-Rodriguez, 2020 WL 3971517, at *8 (S.D.Iowa July 14,2020); U.S.A v. Barron, 2020 WL 4196194, at & (C.D.Cal. July 9, 2020); U.S.A v. Torres 2020 WL 2815003, at *8, *12 (S.D Ny June 1, 2020); and lastly U.S.A v. Kubinski, 2020 WL 2475859, at * 1 (E.D.N.C. May 13, 2020).

Fernandez asserts that if released he's viable able to remain gainfully employed in various job fields, He has a home to go to and a

community that still remembers him well. He has much family support and is not a danger to the community. According to the Overview of Federal Criminal cases published by the Sentencing Commission, the average sentence imposed for murder is 255 months. However, no evidence besides the incredible testimony of Darge suggests that Fernandez was involved.

The disparity with Rivera is also paramount, as he was allowed to plead to substantially lesser charges that didn't involve murder after also being implicated by Darge. Rivera served less than 24 months! A crime such as this does not fit with Fernandez's past nor present characteristics and warrants relief.

## CONCLUSION

For the foregoing reason stated herein Fernandez requests for compassionate release should be granted, for his life, liberty, and pursuit of happiness has been derailed upon a baseless incrimination which has cost him his life. Fernandez is a respector of life and sympathizes with any life that is lost, but he avers that he would never commit such an offence. Therefore, he pleads for the compassion of the court to grant him relief.

October 29, 2021

Respectfully;

*Joe Fernandez* 11-23-21
Joe Fernandez
Reg.No.: 91773-054
United States Penitentiary Canaan
P.O.Box 300
Waymart, PA 18472.

FROM: JOE Fernandez
REG # 91773-054
United State Penitentiary
Canaan P.O. Box 300
Waymart, PA. 18472

TO: Clerk's office
United State District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St RM 120
New York, NY. 10007-1312

Crim. JR

RECEIVED NOV 29 2021 CLERK'S OFFICE S.D.N.Y.

USMS SDNY

7020 3160 0000 2134 4669

U.S. POSTAGE PAID
WAYMART, PA
18472
NOV 24, 21
AMOUNT $0.00
R2305K138948-05