UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

UNITED STATES OF AMERICA,                :

                         v.                            :      No. 10 Cr. 863-5 (AKH)

JOE FERNANDEZ,                            :

                  Defendant.     :

----------------------------------------------------------x

**REPLY BRIEF IN SUPPORT OF MOTION FOR COMPASSIONATE RELEASE**

                                                 Benjamin Gruenstein
                                                 Eric Pilch
                                                 Alexandra Mahler-Haug
                                                 CRAVATH, SWAINE & MOORE LLP
                                                     Worldwide Plaza
                                                        825 Eighth Avenue
                                                          New York, NY 10019
                                                             (212) 474-1000

                                                 *Counsel for Defendant Joe Fernandez*

April 28, 2022

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii
INTRODUCTION .....................................................................................................................1
DISCUSSION ............................................................................................................................2

I. The government has no valid response to Mr. Fernandez's argument that this Court should grant compassionate release based on the significant question as to whether he committed the crime for which he was convicted. .................................................................................................................2

II. By arguing that sentencing disparities should not be considered, the government seeks to restrict the Court's authority to determine what constitutes an extraordinary and compelling reason. ...............................................6

III. The government misconstrues Mr. Fernandez's argument about the COVID-19 pandemic. ..................................................................................................8

IV. The government baselessly seeks to minimize Mr. Fernandez's rehabilitation on the basis that he maintains his innocence. ..................................9

V. The § 3553(a) factors support reducing Mr. Fernandez's sentence to time served. ............................................................................................................9

CONCLUSION .......................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bordenkircher v. Hayes*,
    434 U.S. 357 (1978) ............................................................................................................ 5

*United States v. Boscarino*,
    437 F.3d 634 (7th Cir. 2006) .............................................................................................. 7

*United States v. Brooker*
    976 F.3d 228 (2d Cir. 2020) ....................................................................................... 3, 4, 8

*United States v. Cabot*,
    755 F. App'x 75 (2d Cir. 2018) ......................................................................................... 7

*United States v. Cain*,
    487 F.3d 1108 (8th Cir. 2007) ........................................................................................... 7

*United States v. Hunter*,
    12 F.4th 555 (6th Cir. 2021) .............................................................................................. 4

*United States v. Keitt*,
    21 F.4th 67 (2d Cir. 2021) ............................................................................................. 3, 8

*United States v. Robles*,
    553 F. Supp. 3d 172 (S.D.N.Y. 2021) ............................................................................... 8

*United States v. Wills*,
    476 F.3d 103 (2d Cir. 2007) .............................................................................................. 7

**Statutes & Rules**

18 U.S.C. § 3553(a) ............................................................................................................ 7, 9, 10

18 U.S.C. § 3582(c) .................................................................................................................. 3, 7

28 U.S.C. § 994(t) ..................................................................................................................... 4, 8

First Step Act ........................................................................................................................ passim

**Other Authorities**

United States Attorney's Manual § 9-27-400(B) (captured Jan. 15, 2013),
    available at http://web.archive.org/web/20130115073451/
    http:/www.justice.gov/usao/eousa/ foia_reading_room/usam/title9/
    27mcrm.htm#9-27.400 (last visited April 28, 2022) ....................................................... 5

# INTRODUCTION

The First Step Act gives this Court the discretion to reduce a sentence when there are extraordinary and compelling reasons to do so. Joe Fernandez demonstrated in his opening brief that there are such reasons to reduce his life sentence, including the fact that he may be actually innocent and that the sentencing disparities between him and his alleged co-conspirators are so great that he, alone among all of them, is the only one who remains in jail with no prospect of release. The government cannot credibly argue that this Court lacks the discretion to reduce Mr. Fernandez's sentence. Instead, the government mischaracterizes Mr. Fernandez's arguments and relies on cases that have no bearing on the scope of this Court's authority to argue that the Court should not exercise that discretion. Notably, one of the government's arguments is that this Court should not be troubled by the fact that one of Mr. Fernandez's alleged co-conspirators and participants in the double murder, Luis Rivera, received a lenient two-year plea deal, because the government has the discretion to plead out criminal defendants as it sees fit. But the government alone does not mete out justice. Although at sentencing this Court had no discretion to impose a sentence less than life imprisonment based on the charges the government pursued, it cannot be disputed that it does now. The government presents boilerplate reasons not to exercise that discretion, but Congress instilled in this Court the authority at this stage to do so. The facts of this unusual case present extraordinary and compelling reasons to grant Mr. Fernandez compassionate release.

## DISCUSSION

I.  **The government's arguments that this Court should not grant compassionate release despite significant concerns that Mr. Fernandez is actually innocent are entirely unpersuasive.**

In his opening brief, Mr. Fernandez established that the jury may have convicted an innocent man, and the Court has the power to consider this as an extraordinary and compelling reason under the First Step Act ("FSA") to grant compassionate release. In its opposition, the government urges the Court not to exercise the discretion that it clearly has to remedy this injustice, as it repeatedly contends that Mr. Fernandez has done nothing more than "question the jury's verdict". (Opp. at 14.) This contention misconstrues, and in turn ignores, Mr. Fernandez's actual argument. Mr. Fernandez made abundantly clear in his opening brief that he is not arguing that no reasonable juror could have voted to convict or that there was insufficient evidence to convict Mr. Fernandez of conspiracy to commit murder-for-hire. (Supp. Motion at 40.) He recognizes, as the government goes to great length needlessly to point out, that both this Court and the Second Circuit have found that there was sufficient evidence to support the jury's verdict.

What Mr. Fernandez has argued—and the government has largely ignored—is that there is a significant question as to whether Mr. Fernandez actually committed the crime for which he was convicted. This question derives from the facts laid out in Mr. Fernandez's opening brief, including (1) that the government's key witness, Patrick Darge, is contradicted—not supported, as the government baselessly argues, *see infra* at 4-5—by the physical evidence in this case, and (2) the exceptionally lenient plea agreement offered to Luis Rivera, one of Mr. Fernandez's alleged co-conspirators. The government cannot seriously dispute that the Court has the authority to

2

reduce a defendant's life sentence where the evidence raises a significant concern that the defendant is innocent.

The government also argues that Mr. Fernandez's petition "fails to cite any case where a Court has reduced a sentence under Section 3582(c) based on second-guessing the jury's assessment of the credibility of the witnesses at trial". (Opp. at 17.) Once again, Mr. Fernandez is not second-guessing the jury's verdict or its credibility assessments, or seeking to reverse his conviction; rather, he is appealing to *this Court's* assessment of the credibility of the trial witnesses, the inconsistency of that testimony with the physical evidence and the leniency that was extended to Mr. Rivera (about which the jury was never told) to conclude that even if the jury verdict was lawful, Mr. Fernandez may spend the rest of his life in jail for a crime he did not commit. The government's argument that Mr. Fernandez has not cited a case where under similar circumstances a court reduced a sentence under the FSA does not bear on the strength of his argument. The FSA is a new law, having been signed into law on December 21, 2018. The Second Circuit did not even clarify the scope of this Court's authority under the FSA until *United States v. Brooker* was decided on September 25, 2020. 976 F.3d 228 (2d Cir. 2020). While the government faults Mr. Fernandez for not identifying an analogous case, it is also true that *the government* cannot point to a case standing for the proposition that this court cannot grant relief under the FSA if it has serious concerns that a defendant serving a life sentence may be factually innocent. The government cites *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021), for the proposition that compassionate release should not be the result of merely "second-guessing" the prior sentence (Opp. at 14), but that is an obvious corollary of the requirement that there must

3

actually be extraordinary and compelling circumstances justifying a sentence reduction. And there is no doubt that the Court has the authority to grant compassionate release whenever such circumstances exist, as the Second Circuit has taken a broad view of the extraordinary and compelling circumstances that justify compassionate release. *See Brooker*, 976 F.3d at 230 (the Court may "consider *any* extraordinary and compelling reason for release that a defendant might raise"). The government has no basis to prevent Mr. Fernandez from relying on facts that were known at the time of his original sentencing in support of this motion, especially as this Court was not then lawfully permitted to consider those facts because it had no choice but to impose a mandatory life sentence.[1]

The government also offers no response to Mr. Fernandez's argument that the physical evidence contradicts Darge's testimony, which it clearly does. Darge testified that he used a .380 caliber gun at the murder scene, and his gun jammed after one shot, which cannot be reconciled with the fact that 14 .380 caliber casings were found at the scene. The government ignores the argument, and simply says that it

---

[1] The case that the government cites to impose this limitation, *United States v. Hunter*, 12 F.4th 555 (6th Cir. 2021) (Opp. at 15), is from the Sixth Circuit, which has taken a more restrictive view of a district court's authority to grant compassionate release than the Second Circuit. While the Sixth Circuit has stated that "identifying 'extraordinary and compelling reasons' is a task that focuses on post-sentencing factual developments", *Hunter*, 12 F.4th at 569, the Second Circuit has imposed no such limitation. *See Brooker*, 976 F.3d at 237-38 ("the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release" and "[t]he only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t)).

"presented ballistics evidence corroborating Darge's testimony that there were two shooters". (Opp. at 18.) Mr. Fernandez does not dispute how many shooters there were, only that *he* was not one of them; that there were two guns used at the scene does nothing to corroborate Darge's testimony on this critical point. While the government spins the physical evidence as supporting its main cooperating witness, it does nothing to counter the argument that the physical evidence actually undercuts that witness's testimony.

      With respect to Mr. Fernandez's argument that the government must have harbored some doubt about Darge's credibility and thus extended a lenient, two-year plea deal to Rivera, the government argues principally that prosecutors have broad discretion, and "[p]lea bargaining flows from the mutuality of advantage to defendants and prosecutors, each with his own reasons for wanting to avoid trial". (Opp. at 19 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978).) This has never been disputed by the defense, and once again the government ignores entirely Mr. Fernandez's argument about how unusual this particular plea bargain was given the DOJ's policy about pleading out criminal defendants to the most serious, readily provable offense. The U.S. Attorneys' Manual—which the government does not even discuss—instructs that once a grand jury has indicted a defendant, as the grand jury indicted Rivera, prosecutors should not "bargain[] about charges which they have determined are readily provable" and should "seek a plea to the most serious readily provable offense charged".[2] While the government argues that its case against Rivera would have been weaker than that against Mr. Fernandez, at no point does the government say that it would not have been "readily

---

[2] United States Attorneys' Manual § 9-27-400(B) (captured Jan. 15, 2013), available at http://web.archive.org/web/20130115073451/http:/www.justice.gov/usao/eousa/foia_reading_room/usam/title9/27mcrm.htm#9-27.400 (last visited April 28, 2022).

5

provable"—but that is the inference to be drawn from the U.S. Attorneys' Manual, which the government ignores. While the government makes clear that it "is not seeking to make representations about what was in the mind of the relevant AUSAs at the time" of the prosecution, it provides no justification for Rivera serving two years and Mr. Fernandez serving life. (Opp. at 19 n.2.) The government cannot claim that it was justified in exercising its discretion to have Rivera plead to a crime for which he received a two-year sentence, while urging the Court to refuse to exercise its discretion to provide *any time* off of Mr. Fernandez's life sentence.

**II.     By arguing that sentencing disparities should not be considered, the government seeks to restrict the Court's authority to determine what constitutes an extraordinary and compelling reason.**

Mr. Fernandez also demonstrated that the disparity between Mr. Fernandez's life sentence and the sentences of four participants in the murder conspiracy constitutes an extraordinary and compelling reason for compassionate release. (Supp. Mot. at 28-32.) The government responds by arguing that he "ignores the elephant in the room", namely that the other men were cooperating witnesses. (Opp. at 21.) Mr. Fernandez has never ignored this fact, but rather has argued that the disparity between his sentence and the sentences those others received was extraordinary *despite* their cooperation. Cooperation is only one factor among many that courts consider when imposing a sentence, and contrary to the government's suggestion, there is no reason that a significant sentencing disparity should not warrant compassionate release just because one defendant cooperated and another did not. At the end of the day, the real elephant in the room is that, of all the men who are alleged to have participated in this murder conspiracy—from the getaway driver, to the decoy, to the trigger man, to the mastermind—Mr. Fernandez is the only one who will serve the rest of his life in prison.

6

That Jeffrey Minaya, the drug kingpin who trafficked hundreds of kilograms of heroin and cocaine and who ordered the murders of the two cartel members, is already a free man and Mr. Fernandez will never be is not justice. This disparity cannot be defended on the basis that Minaya cooperated with the government and Mr. Fernandez did not.

The only cases the government cites to support sentencing disparities between cooperators and non-cooperators pre-date the FSA and do not involve motions for compassionate release. Rather, they all involved challenges to sentences as substantively or procedurally unreasonable. (Opp. at 21-22 (citing *United States v. Wills*, 476 F.3d 103, 109 (2d Cir. 2007), *abrogated on other grounds by Kimbrough v. United States*, 552 U.S. 85 (2007); *United States v. Cabot*, 755 F. App'x 75, 81 (2d Cir. 2018); *United States v. Cain*, 487 F.3d 1108 (8th Cir. 2007); *United States v. Boscarino*, 437 F.3d 634, 637 (7th Cir. 2006)). And none of those cases involved a disparity as large as the disparity in this case, between life imprisonment and 24 months.

Next, the government argues that this Court should not consider the disparity between Mr. Fernandez's life sentence and Rivera's 24-month sentence because their crimes of conviction were not identical (Opp. 23-24), even though Darge testified that Rivera supplied one of the murder weapons, drove the getaway car with a hiding compartment to conceal contraband and disposed of the murder weapon. But this argument is based on the government's citation to the wrong statutory provision. The government relies on § 3553(a)(6), which it contends "counsels against sentencing disparities among defendants with similar records who have been found guilty of similar conduct". (Opp. at 21.) However, that provision does not limit the bases for which the Court can grant compassionate release, as that is governed by § 3582(c)(1)(A), as

7

amended by the FSA. And the very cases cited by the government make plain that "[a] court deciding a compassionate release motion can consider 'the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it].'" *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021) (quoting *Brooker*, 976 F.3d at 237). Indeed, as the Second Circuit has made clear, "[t]he only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" *Brooker*, 976 F.3d at 237-38 (quoting 28 U.S.C. § 994(t)).

### III. The government misconstrues Mr. Fernandez's argument about the COVID-19 pandemic.

The government next argues that the COVID-19 pandemic does not provide a basis to reduce Mr. Fernandez's sentence because he has received the COVID-19 vaccine and does not have any comorbidities putting him at heightened risk for complications. (Opp. at 24.) Once again, the government misconstrues Mr. Fernandez's argument. Mr. Fernandez did not argue that he is at increased risk for the disease. Rather, he argued that the COVID-19 pandemic has made his conditions of confinement substantially harsher. (Supp. Motion at 32-35.)

While the government asserts that courts consistently deny compassionate release where a defendant is vaccinated and does not have increased risk factors, it fails to address any of the cases cited by Mr. Fernandez in which courts have found that the impact of the COVID-19 pandemic on a prisoner's conditions of confinement can weigh in favor of release. *See, e.g.*, *United States v. Robles*, 553 F. Supp. 3d 172, 182 (S.D.N.Y. 2021) ("As courts have widely recognized in granting compassionate release motions since March 2020, the unexpected rigors of incarceration during the pandemic

8

present 'extraordinary and compelling' reasons that can justify a sentence reduction under § 3582(c)(1)(A)."). In assessing whether there are extraordinary and compelling reasons for the compassionate release of Mr. Fernandez, the Court can and should consider the fact that the COVID-19 pandemic has required the Bureau of Prisons to substantially change its operations, resulting in far more punitive conditions of confinement.

**IV.   The government baselessly seeks to minimize Mr. Fernandez's rehabilitation on the basis that he maintains his innocence.**

Mr. Fernandez's record of rehabilitation is an extraordinary and compelling reason to reduce his sentence. The government concedes that Mr. Fernandez's rehabilitation has been "commendable" and that his "few disciplinary infractions do not . . . vitiate the positive steps Fernandez has taken while in custody". (Opp. at 25-26.) Yet, the government emphasizes the fact that Mr. Fernandez has not accepted responsibility for his offense, essentially seeking to punish him for passionately maintaining his innocence even when serious and valid questions exist as to whether he committed the crime. The government cites no case for the proposition that a defendant's rehabilitation should be discounted by his failure to admit to a crime for which he maintains his innocence.

**V.   The § 3553(a) factors support reducing Mr. Fernandez's sentence to time served.**

Finally, the government argues that the § 3553(a) factors weigh against granting relief because over 10 years of imprisonment is not commensurate with the gravity of the offense, and because reducing Mr. Fernandez's sentence would run contrary to the need to deter violent crime and protect the public. (Opp. at 26-28.) However, the government entirely ignores the central point of Mr. Fernandez's motion—

9

that there are serious questions about whether Mr. Fernandez even committed the crime, and thus is a violent offender.  Nor does he have a prior history of violent crime.  In fact, until the instant case, he was a father of four living peacefully with his family and gainfully employed.  And despite having served 10 years in prison for a crime that he maintains he did not commit, Mr. Fernandez has continued to be a contributing and productive inmate as evidenced by his record of rehabilitation, work as an orderly in the warden's office and completion of numerous BOP courses.  Mr. Fernandez maintains the full support of his tight-knit family, who will assist in his successful reentry to society, and he has secured a reference to join a reputable HVAC company if he is released.[3]  The unique facts and circumstances presented here should override the government's boilerplate argument that individuals convicted of serious offenses should not be afforded any leniency.

## CONCLUSION

Due to the extraordinary and compelling circumstances presented, the Court should grant Mr. Fernandez's motion for compassionate release and reduce his sentence to time served.

---

[3] *See* Exhibit A, Release Plan; Exhibit B, Letter from David Woods, Jr. to Hon. Alvin Hellerstein (April 14, 2022).

Dated:  April 28, 2022 		Respectfully submitted,

/s/ Benjamin Gruenstein
Benjamin Gruenstein

Benjamin Gruenstein (3897758)
Eric Pilch (5652979)
Alexandra Mahler-Haug (5769849)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
   825 Eighth Avenue
      New York, NY 10019
         Telephone:  (212) 474-1000
            Facsimile:  (212) 474-3700
               bgruenstein@cravath.com
                  epilch@cravath.com
                     amahlerhaug@cravath.com

*Attorneys for Defendant*

11

**CERTIFICATE OF SERVICE**

      I certify that on April 28, 2022, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

      /s/ Benjamin Gruenstein
      Benjamin Gruenstein