UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                                             :
UNITED STATES OF AMERICA,                                    :  **ORDER AND OPINION
                                                             :  GRANTING MOTION FOR
        -against-                                            :  REDUCTION OF SENTENCE**
                                                             :
JOE FERNANDEZ,                                               :  10 Cr. 863 (AKH)
                                                             :
                                Defendant.                   :
                                                             :
------------------------------------------------------------ x

ALVIN K. HELLERSTEIN, U.S.D.J.:

  Defendant Joe Fernandez citing "extraordinary and compelling" circumstances because of his current health conditions and the COVID-19 pandemic, moves to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). *See* ECF No. 248. The Government opposes, arguing Fernandez has not demonstrated that "extraordinary and compelling" circumstances exist, and that the 18 U.S.C. § 3553(a) sentencing factors weigh against a reduction in sentence. For the reasons discussed below, Fernandez's motion is granted.

## BACKGROUND

  On February 6, 2013, Petitioner Joe Fernandez was charged with one count of conspiracy to use interstate commerce facilities in the commission of murder for hire resulting in death in violation of 18 U.S.C. § 1958 (Count One), and one count of using a firearm in furtherance of a crime of violence resulting in death in violation of 18 U.S.C. §§ 924(j)(1)–(2) (Count Two). *See* ECF No. 74. The charges arose from the murders of Ildefonso Vivero Flores and Arturo Cuellar on February 22, 2000. Flores and Cuellar were couriers of a Mexican narcotics trafficking organization that had exported a 274-kilogram shipment of cocaine to Jeffrey Minaya, the leader of a New York drug ring. To avoid paying the suppliers the money

owed, Minaya recruited Patrick Darge to kill Flores and Cuellar, the two narcotics couriers, in exchange for $180,000. Trial Tr. at 98–135. Darge, a cooperating witness, testified that he recruited his cousin, Petitioner Joe Fernandez, to back him up, in exchange for $40,000, and that he recruited Luis Rivera to obtain weapons, ammunition, and a car, and to act as the getaway driver, in exchange for $20,000.

Petitioner's trial commenced on February 19, 2013. The Government's key witness was Patrick Darge, the person hired to kill the Mexican couriers. Darge testified that he recruited Petitioner to back him up because Petitioner was his cousin, had a gun that could be used in the murders, and was trustworthy. Darge testified that he told Fernandez, in order to persuade him, that the Mexican gang had threatened members of their family and that it was necessary to kill the Mexican couriers. Darge testified that he told Petitioner that he had been hired to murder the "two guys," and that he had a get-away driver. Darge testified that he offered Fernandez $20,000, agreed to Fernandez' counter-offer of $40,000, and instructed Petitioner to bring his gun. Trial Tr. at 276–77. The plan, according to Darge, was to have a member of the Minaya gang lure Cuellar and Flores to a Bronx apartment building where they stashed drugs and money and where they would be paid. Meanwhile, Darge and Fernandez would lurk behind a dark stairway, commit the murders, and run to a waiting get-away car a block-and-a-half away. A run-through was conducted February 21, 2000, and the murders and get-aways followed the day after.

Darge testified that, as planned, a Minayan gang member brought Cuellar and Flores to the lobby of the Bronx apartment building, where they waited for the elevator. Darge testified that he emerged behind the victims with Petitioner following. Darge testified that he shot one bullet into the back of the head of one of the Mexican couriers, that his gun jammed,

2

and that he fled from the scene to the get-away car, a block-and-a-half away. Darge testified that he heard two or three shots while he ran.

Darge testified that the get-away driver, Luis Rivera, was parked in the designated spot, waiting for them. Darge entered the car, and Petitioner arrived minutes later saying, he "had to make sure they were both dead." *Id.* at 332. Rivera drove away on a pre-planned route. Cuellar and Flores, the Mexican couriers, were found dead in the lobby of the apartment building, lying in a pool of their blood. Shell casings of spent bullets were scattered on the lobby floor. However, and inconsistent with Darge's testimony that he shot but one bullet, all but one of the fourteen casings found at the crime scene came from a .380 gun, the gun that Darge used. Darge testified that he was paid $180,000 for the murders later that day and gave $40,000 to Fernandez and $20,000 to Rivera.

On cross-examination, Darge admitted that he had lied during a previous cooperation with the Government and that his lies enabled him to receive a sentence of two years instead of a guideline sentence, the minimum of which would have been 12-and-a-half years. He also admitted that he had failed to disclose to the Government numerous shootings in which his younger brother, Alain Darge, had participated and that he and his brother (but not Fernandez) fled to the Dominican Republic after the murders of Cuellar and Flores.

Fernandez did not testify. On March 7, 2013, after a nine-day jury trial, Petitioner was convicted of both Counts One and Two, the murder-for-hire conspiracy and the crime of using a firearm in furtherance of a crime of violence causing death to a person. On October 7, 2014, Petitioner was sentenced to two mandatory, consecutive life sentences.

As of this writing Petitioner has served approximately 132 months since his detention. He had been arrested in his home on October 18, 2011, based on statements by Darge.

Luis Rivera, who, according to Patrick Darge, procured the guns and drove the getaway car, was not called as a witness. On September 7, 2012, Rivera pleaded guilty, but only to conspiracy to distribute heroin. The Government dismissed the conspiracy to murder and the firearm charges against Rivera. Rivera was sentenced to 24 months' imprisonment. *See* ECF No. 60.

**Prior Proceedings**

Fernandez directly appealed his conviction and sentence claiming that: (i) the evidence adduced at trial was insufficient to prove beyond a reasonable doubt that he knowingly joined the conspiracy with the specific intent to commit murder for hire; and (ii) the Court improperly denied his motion for a new trial based on the Government's failure to disclose *Brady* material, and on newly discovered evidence concerning the credibility of Government witnesses. By Summary Order dated May 2, 2016, the Second Circuit affirmed Petitioner's convictions. *See United States v. Fernandez*, 648 Fed. App'x. 56 (2d Cir. 2016), *cert. denied*, 138 S. Ct. 337 (2017).

On June 27, 2017, Petitioner sought a writ of habeas corpus under 28 U.S.C. § 2255, challenging my jury instructions regarding aiding and abetting liability and the term "use" of a firearm under 18 U.S.C. § 924(c). Petitioner claimed also that his trial and appellate lawyers were constitutionally inadequate for not having raised these issues. I denied the petition but granted a certificate of appealability. *See* 17 Civ. 4806, ECF No. 6. By Summary Order on December 4, 2018, the Second Circuit denied Petitioner's appeal. *See Fernandez v. United States*, 757 Fed. App'x. 52 (2d Cir. 2018), *cert. denied*, 140 S. Ct. 337 (2019).

On June 22, 2020, the Second Circuit granted Petitioner leave to file a successive habeas petition under 28 U.S.C. § 2255. *See* 20 Civ. 1130, ECF No. 9. Petitioner argued that his

4

Count Two firearm conviction was no longer valid after *United States v. Davis* 139 S. Ct. 2319 (2019) because conspiracy is not a crime of violence. *See* 20 Civ. 1130, ECF No. 19. I granted that motion on November 3, 2021, and vacated Fernandez' life sentence on Count Two. *See* 10 Cr. 863, ECF No. 245.

Now, on the basis, *inter alia*, of his health and fear of contracting Covid in jail, Fernandez seeks a compassionate release. Having fully considered the briefs and argument of the parties, and for the reasons that follow, Fernandez' motion is granted. His life sentence is reduced to a term of time served followed by three years of supervised release.

## DISCUSSION

### I. Legal Standard

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F.Supp.3d 613, 614 (S.D.N.Y. 2020); *see also United States v. Brooker*, 976 F.3d 228, 237–38 (2d Cir. 2020). Section 3582 of Title 18 of the U.S. Code provides one such exception by permitting a court to modify a term of imprisonment "upon motion of the defendant" if the defendant has exhausted certain administrative requirements. 18 U.S.C. § 3582(c)(1)(A). Under these circumstances, a court may reduce the defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i); *see also Concepcion v. United States*, 142 S.Ct. 2389, 2404 (2022) (holding that district courts have wide discretion to consider intervening changes of law or fact in reducing sentences under the First Step Act). In so doing, the Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). "Application of the § 3553(a) factors requires an

assessment of whether the relevant factors 'outweigh the "extraordinary and compelling reasons" warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence.'" *United States v. Daugerdas*, --- F. Supp. 3d ---, 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020) (alterations in original) (quoting *United States v. Ebbers*, 432 F. Supp. 3d 421, 430–31 (S.D.N.Y. 2020)).

In the Second Circuit, the policy statement issued by the U.S. Sentencing Commission pertaining to compassionate release, section 1B1.13 of the Sentencing Guidelines, "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." *Brooker*, 976 F.3d at 236. "However, courts remain free—even after *Brooker*—to look to § 1B1.13 for guidance in the exercise of their discretion." *United States v. Burman*, 2021 WL 681401, at *5 (S.D.N.Y. Feb. 21, 2021) (internal quotation marks omitted); *see also Concepcion,* 142 S.Ct. at 2404.

The relevant policy statement provides that a reduction is permitted if "[e]xtraordinary and compelling reasons warrant the reduction" and "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13. In assessing whether extraordinary and compelling circumstances are present, district courts may consider a broad range of factors to determine whether a defendant carries the applicable burden. *See United States v. Piggott*, 2022 WL 118632, at *2 (S.D.N.Y. Jan. 12, 2022). Most recently, the Supreme Court has emphasized the broad discretion district courts possess under the First Step Act. As the Supreme Court noted, "[b]y its terms" the First Step Act "does not prohibit district courts from considering any arguments in favor of, or against, sentence modification." *Concepcion*, 142 S.Ct. at 2403. "In exercising its discretion, the court is free to agree or disagree with any of the policy arguments raised before it." *Id.* at

2404. Moreover, I "need not find a single dispositive circumstance to determine that 'extraordinary and compelling reasons' exist;" instead "'the totality of the circumstances' justify such a finding." *Piggott*, 2022 WL 118632, at *2.

## II. A Sentence Reduction is Warranted for Fernandez

Fernandez' arguments that the difficulty of obtaining health care while in custody, and the possibility of contracting COVID are "extenuating circumstances" are not persuasive. The prison system is well-equipped to give proper medical care to Fernandez, and concerns about COVID, in society generally, and in the federal prison system are much abated.

However, the conditions that can be "extraordinary and compelling" are not limited to concerns about health. They can arise from a broad range of factors: the circumstances of the case, questions about the adequacy of proofs and representation, and inequity and disparity of sentences.

### A. There is Reason to Question the Verdict

Although there is factual support for the jury's verdict and the verdict has been affirmed, *United States v. Fernandez*, 648 Fed. App'x 56 (2d Cir. 2016), a certain disquiet remains. Did Patrick Darge sacrifice his cousin, Petitioner Fernandez, to save his brother, Alain Darge? Patrick and Alain ran to the Dominican Republic directly after the murders of Cuellar and Flores. Joe Fernandez did not. Fernandez was arrested 11 years after the murder, in his home, with his family. He was earning a living and had no record of violence. Patrick Darge had considerable motive to lie and had lied before to the Government in order to obtain more favorable treatment for himself and his brother. Additionally, the physical evidence indicated that all but one bullet fired at the scene of the crime came from a .380 caliber gun, which was the gun Darge used, despite the fact that Darge claimed Fernandez fired nearly all the shots. A more

7

effective cross-examination of Patrick Darge, focused on motive to protect Alain Darge, might have changed the verdict.

The government's treatment of Luis Rivera, the get-away driver, also raises strong concerns. Rivera was as much a conspirator as allegedly Fernandez was. Yet, the government lacked the confidence in Patrick Darge's testimony to prosecute Rivera for joining a conspiracy to murder for hire, and Rivera was allowed to testify to a much more minor offense, conspiracy to distribute narcotics, producing a much lower sentence. Although I acknowledge the Government's position that it is not always possible to obtain a conviction against all participants in a crime, the disparate treatment of Rivera leads me to doubt that the jury's verdict was correct.

The sum of all this causes me to be unsure that Fernandez was Darge's back-up, or that he was a member of the conspiracy to kill Cuellar and Flores, or that he shot either or both of the two. The jury verdict is not being vacated or declared an improper verdict. But jury verdicts, despite being legal, also may be unjust. And this is the disquiet I feel, and the basis of my finding that Petitioner Joe Fernandez has shown extraordinary and compelling circumstances for his release.

Additionally, the disparity between Fernandez' life sentence and the sentences of the co-defendants weighs in favor of granting a reduction. While Fernandez co-defendants elected to enter plea agreements or cooperate with the Government, Fernandez maintained his innocence and proceeded to trial. Because the charges against Fernandez carried a mandatory minimum sentence of life imprisonment, I was bound to impose that sentence, which was far greater than the sentences Fernandez' co-defendants received. However, the enactment of the First Step Act enables me to consider this disparity as part of the extraordinary and compelling

circumstances that justify a lower sentence for Fernandez. *See also Brooker*, 976 F.3d at 235. Having considered the record, a sentence of time served, recognizing the approximately 132 months Fernandez has served, would reduce the disparity between Fernandez and his co-defendants and would be sufficient, but not greater than necessary to achieve the sentencing objectives set forth in 18 U.S.C. 3553(a).

Fernandez has served 132 months, or 11 years. He is 46 years old. He has been in custody for long enough. It is time for him to return to his family, and to become a productive member of society. His life before he was arrested shows that he does not present a danger to society. Mr Fernandez's disciplinary history involves no accusations of violence and does not undercut the significant steps towards rehabilitation Mr. Fernandez has taken or militate against compassionate release. Society will not lose its respect for the law because of this outcome after Fernandez' long term of custody. Nor is there an issue about deterrence. The factors of 18 U.S.C. 3553(a) are satisfied.

## CONCLUSION

In sum, Fernandez's motion to reduce his sentence and be released from custody is granted. After release from custody, Fernandez will be subject to three years of supervised release. The Judgment shall be amended accordingly. *See* ECF Nos. 166 and 245. The Clerk shall terminate ECF No. 248 and mail a copy of this order to Defendant.

SO ORDERED.

Dated: November 17, 2022
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge