UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v-<br><br>JOE FERNANDEZ,<br><br>        Defendant. | 10 Cr. 863 (AKH) |
| JOE FERNANDEZ,<br><br>        Plaintiff<br><br>-v-<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | 20 Civ. 5539 (AKH) |

**GOVERNMENT'S MEMORANDUM OF LAW IN
OPPOSITION TO JOE FERNANDEZ'S MOTION TO VACATE
PURSUANT TO 28 U.S.C. § 2255**


DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
26 Federal Plaza, 37th Floor
New York, New York 10007


Dana R. McCann
Assistant United States Attorney
   *Of Counsel*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

    I. The Indictment ............................................................................................................... 2

    II. The Trial ........................................................................................................................ 2

    III. The Direct Appeal and Post-Conviction Motions ....................................................... 4

    IV. The Instant Section 2255 Motion ................................................................................ 8

ARGUMENT .......................................................................................................................... 9

    I. Fernandez's *Brady* Claims Are Procedurally Barred and Meritless ............................. 9

    II. Fernandez's Ineffective Assistance of Counsel Claims Are Meritless ....................... 11

        A. Legal Standard ....................................................................................................... 11

        B. Trial Counsel Was Not Constitutionally Ineffective in Deciding Not to Interview Rivera ................................................................................................................................ 13

        C. Trial Counsel's Performance Was Not Constitutionally Ineffective in Requesting a Jury Instruction on Inferences about Non-Testifying Witnesses ........................................... 15

    III. Fernandez's Actual Innocence Claims Are Meritless ................................................ 17

    IV. An Evidentiary Hearing is Not Necessary ................................................................. 19

CONCLUSION ...................................................................................................................... 20

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to defendant Joe Fernandez's ("Fernandez") motion to vacate his sentence pursuant to Title 28, United States Code, Section 2255, filed on September 7, 2024 (the "Petition"). In February 2013, Fernandez was charged in a two-count superseding indictment S5 10 Cr. 863 (the "Indictment"). Count One charged Fernandez with conspiracy to commit murder-for-hire, in violation of Title 18, United States Code, Section 1958, and Count Two charged Fernandez with using a firearm to commit murder during and in relation to the murder-for-hire conspiracy, in violation of Title 18, United States Code, Sections 924(j)(1) and 2. Following a nine-day trial, the jury returned a verdict finding Fernandez guilty on both counts, and the Court sentenced Fernandez principally to two consecutive terms of life imprisonment. The conviction and sentence were affirmed on appeal. Thereafter, in light of the Supreme Court's holding in *United States v. Davis*, 139 S. Ct. 2319 (2019), this Court vacated the defendant's conviction on Count Two.

In support of his Petition, Fernandez argues that his conviction under Count One should be vacated for several reasons. *First*, Fernandez argues that the Government's failure to disclose the notes of a proffer meeting with a co-conspirator and non-testifying witness, Luis Rivera, violated *Brady v. Maryland*, 373 U.S. 83 (1963). Fernandez contends that, in the proffer meeting, Rivera denied his role and any involvement in the murder-for-hire conspiracy and, thus, Rivera's statements could have been used to impeach a trial witness whose testimony implicated both Rivera and Fernandez in the conspiracy. *Second*, Fernandez argues that his trial attorney was ineffective in failing to investigate Rivera's involvement in the murder-for-hire conspiracy. *Third*, Fernandez claims that his trial attorney was ineffective in failing to object to a jury instruction regarding uncalled witness. *Finally*, Fernandez argues that he is actually innocent, which he attempts to demonstrate principally by alleging that the evidence at trial was insufficient to

conclude that Fernandez was one of the shooters of the murder-for-hire conspiracy. For the reasons explained below, Fernandez's *Brady* claims are procedurally defaulted, and the Petition is meritless and should be denied in its entirety without a hearing.

## BACKGROUND

### I.    The Indictment

On February 6, 2013, Fernandez was charged in two counts in a superseding indictment, S5 10 Cr. 863 (the "Indictment"). Count One charged Fernandez with conspiracy to commit murder-for-hire, in violation of Title 18, United States Code, Section 1958. Count Two charged Fernandez with using a firearm to commit murder during and in relation to the murder-for-hire conspiracy, in violation of Title 18, United States Code, Sections 924(j)(1) and 2.

### II.    The Trial

Fernandez's trial commenced on February 19, 2013. (Dkt. 90.)[1] The evidence at trial established that Fernandez, along with his co-defendants Alberto Reyes and Patrick Darge, participated in a murder-for-hire conspiracy that resulted in the deaths of two men, Arturo Cuellar and Ildefonso Vivero Flores, on or about February 22, 2000, in an apartment building in the Bronx. Specifically, the trial evidence showed that, in an attempt to avoid paying off a multi-million-dollar drug debt, a New York-based drug trafficking organization ("DTO") devised a plan to murder Flores and Cuellar, who were members of the DTO's Mexico-based supplier. Reyes and other

---

[1] Unless otherwise specified, "Dkt." refers to the docket entry in 10 Cr. 863. "Tr." refers to the trial transcript in this case. "Def.'s Br." refers to the defendant's memorandum of law in support of the defendant's September 7, 2024 motion to vacate (Dkt. 308).

members of the DTO hired Patrick Darge to carry out the murders in exchange for $180,000.  (Tr. 268.)  In turn, Darge hired his cousin, Joe Fernandez, and Luis Rivera to assist with the murders. (Tr. 255-56, 271.)

At trial, the Government called 13 witnesses—including cooperating witnesses, current and former members of law enforcement, and a forensic ballistics expert.  Rivera was charged in this case but subsequently pled guilty, pursuant to a plea agreement with the Government, to conspiracy to distribute heroin, in violation of Title 21, United States Code, Section 846.  Neither the Government nor Fernandez called Rivera to testify at trial.  Reyes and Darge pled guilty, pursuant to cooperation agreements with the Government, to multiple charges related to the February 2000 murders, and both Reyes and Darge testified at Fernandez's trial.

At trial, Darge testified that, upon agreeing to commit the murders of Cuellar and Flores on behalf of the DTO, Darge assembled a team.  (Tr. 255-56, 271, 282-83.)  Darge recruited his cousin, Joe Fernandez, as the backup shooter and Luis Rivera as the getaway driver.  (Tr. 255-56, 271, 282-83).  Darge agreed to pay Fernandez and Rivera $40,000 and $20,000, respectively, for their assistance.   (Tr. 276-77, 280, 286-87.)  Prior to the murders, Darge reviewed the plan with Fernandez and Rivera: Fernandez was to back up Darge during the shootings and Rivera would wait in the car around the block, ready to drive Darge and Fernandez away from the area. (Tr. 309). On the morning of February 22, 2000, Rivera picked up Darge and Fernandez as planned, and drove them to the apartment building in the Bronx. (Tr. 305)  Reyes brought Cuellar and Flores to the apartment building, purportedly for the two men to receive payment for the cocaine supplied to the DTO.  (Tr. 623, 629-30.)  When Reyes entered the apartment building with Cuellar and

3

Flores, Darge and Fernandez emerged from a hidden area, and Darge shot Cuellar in the head behind his ear. (Tr. 321-22, 630-31.)  When Darge turned to shoot Flores, his gun jammed, and Darge ran out of the apartment building. (Tr. 322, 326-28.)  Fernandez remained in the apartment building and fired fourteen shots, with nine entering the bodies of Cuellar and Flores, leaving them dead. (Tr. 45-49, 328.)  When Fernandez arrived at the getaway car, he explained that he had been delayed because he was making sure that the two victims were dead before leaving the lobby. (Tr. 331-32.)  Following the murders, Reyes paid Darge $180,000, and Darge, in turn, paid $40,000 to Fernandez and $20,000 to Rivera. (Tr. 335.)

Alongside Patrick Darge's testimony, the Government offered additional evidence of Fernandez's guilt, including testimony from two individuals—Alain Darge and Yubel Mendez— to whom Fernandez made incriminating statements revealing his guilt.  (Tr. 705-06, 800-01, 817-19.)

On March 7, 2013, the jury returned a verdict convicting Fernandez on both counts in the Indictment.  On October 7, 2014, the Court sentenced Fernandez principally to two consecutive terms of life imprisonment. (Dkt. 170 at 57-58.)

## III.    The Direct Appeal and Post-Conviction Motions

On April 25, 2013, Fernandez filed a motion pursuant to Federal Rules of Criminal Procedure 29 and 33 seeking an entry of a judgment of acquittal or, in the alternative, a new trial, arguing that the trial evidence was insufficient to support the jury verdict and attacking the credibility of Darge's testimony.  (Dkt. 109.)  In an Order dated July 1, 2013, the Court denied the motion, particularly Fernandez's challenges to the strength of the Government's trial evidence. (Dkt. 115.)  On November 21, 2013, Fernandez filed a *pro se* motion to vacate the jury verdict

4

with renewed challenges to Darge's trial testimony and additional claims of prosecutorial misconduct, suppression of *Brady* material, judicial misconduct, and ineffective assistance of counsel. (Dkt. 127.) Specifically, Fernandez claimed that his trial counsel was ineffective based on his failure to conduct certain factual investigations, his handling of Jencks material, and his failure to object to alleged prosecutorial misconduct. (*See* Dkt. 145 at 5.) On April 18, 2014, this Court denied the motion in its entirety. (Dkt. 145.)

On April 28, 2014, Fernandez informed the Court that, on January 10, 2014, he had submitted a "targeted request to the Government for possible *Brady* material" and was awaiting the Government's response. (Dkt. 146.) On May 8, 2014, after the Court directed the Government to respond and after the Government reviewed its files for responsive material, the Government confirmed that it did not possess any exculpatory or *Brady* material as it relates to this case that had not previously been provided to trial counsel. (*See* Dkt. 151.) Accordingly, on May 21, 2014, the Court denied Fernandez's April 28, 2014 letter, which it deemed a renewed motion to vacate the jury verdict. (Dkt. 151.)

On October 3, 2014, four days before sentencing, Fernandez filed a motion for a new trial based on newly discovered evidence requesting the Court to conduct an *in camera* review of the notes from the Government's proffer meeting with Luis Rivera. (Dkt. 160.) On October 7, 2014, when the parties appeared for Fernandez's sentencing, the Court heard arguments from both parties, including a proffer from Fernandez's counsel that Rivera told the Government he denied being present for the murders. (Dkt. 170 at 22-27.) The Court denied Fernandez's motion,

proceeded to sentencing, and, the following day, issued an Order outlining its reasoning.  (Dkt. 170 at 28.)

On October 17, 2014, Fernandez filed a letter motion for reconsideration objecting to factual assertions in his Presentence Investigation Report and attaching an affidavit from a private investigator whom Fernandez hired to interview Rivera.  (Dkt. 164.)  On November 25, 2014, the Court denied Fernandez's motion, explaining that he had reviewed *in camera* the Government's notes from its proffer meeting with Rivera and determined the notes "do not contain any relevant information to the issues presented."  (Dkt. 175 at 2.)

On April 7, 2015, Fernandez timely appealed his conviction, arguing, among other points, that (1) the evidence at trial was insufficient to support the jury's guilty verdict, and (2) the Government's failure to disclose Rivera's proffer notes was a *Brady* violation.  *United States v. Fernandez*, No. 14-4158, Dkt. 48 (2d Cir. 2015).  On May 2, 2016, the Second Circuit issued a summary order, rejecting the defendant's arguments and affirming Fernandez's conviction and sentence.  *United States v. Fernandez*, 648 F. App'x 56 (2d Cir. May 2, 2016) (summary order).

Subsequently, Fernandez filed motions to vacate his conviction pursuant to Title 28, United States Code, Section 2255, on June 23, 2017 (the "2017 Motion") and July 17, 2020 (the "2020 Motion").  On November 3, 2021, in light of the Supreme Court's holding in *United States v. Davis*, 139 S. Ct. 2319 (2019), the Court concluded that the predicate offense for Count Two—conspiracy to commit murder-for-hire—is not a "crime of violence" and vacated the defendant's conviction on Count Two.  (Dkt. 245.)

On November 30, 2021, Fernandez moved for a reduction in sentence pursuant to Title 18, United States Code, Section 3582. (Dkt. 261.) On November 3, 2022, prior to the District Court's ruling on Fernandez's Section 3582 motion, Fernandez moved for leave to file a successive motion pursuant to Section 2255 to vacate Count One—Fernandez's remaining count of conviction. On November 30, 2022, the Second Circuit concluded that, because Fernandez's 2017 and 2020 Motions challenged Fernandez's 2014 conviction and the 2020 Motion resulted in a partial vacatur of his judgment of conviction, a future Section 2255 motion "would not be successive because it is his first § 2255 motion challenging the amended judgment of conviction." (Dkt. 271.)  The Second Circuit deemed the District Court's November 3, 2021 decision an amended judgment for the purposes of its Order. (Dkt. 271, 278.) [2]

On November 17, 2022, the Court granted Fernandez's Section 3582 motion for a sentence reduction and ordered Fernandez's release from custody. (Dkt. 268.) On November 17, 2022, the Government filed a motion to stay Fernandez's release and, on December 12, 2022, the Government appealed the District Court's decision to grant Fernandez's section 3582 motion. (Dkt. 269, 272.)  On June 11, 2024, the Second Circuit reversed the Court's decision granting Fernandez's Section 3582 motion for a sentence reduction. (Dkt. 297.)

---

[2] Accordingly, while Fernandez postures the Petition as an "amended motion" pursuant to Section 2255, the Government understands the Petition to be the defendant's first Section 2255 motion challenging the 2021 amended judgment, not supplementing or amending the claims set forth in the 2017 and 2020 Motions.

## IV.    The Instant Section 2255 Motion

On September 7, 2024, Fernandez filed the instant motion pursuant to Title 28, United States Code, Section 2255 requesting vacatur of Count One.  In support of the Petition, Fernandez claims alleged violations of *Brady*, ineffective assistance of counsel, and actual innocence. Specifically, Fernandez argues that the Government failed to disclose the notes of a proffer meeting with Luis Rivera, who did not testify at trial, in violation of *Brady*.  (Def.'s Br. at 13-18.) Fernandez contends that, in the proffer session, Rivera denied involvement in the murder-for-hire conspiracy and, accordingly, Rivera's statements could have been used to impeach a trial witness, Patrick Darge, who testified that both Rivera and Fernandez were involved in the murder-for-hire conspiracy.  (Def.'s Br. at 18.)  Fernandez also argues that his trial attorney was ineffective in failing to investigate Rivera's involvement (or claimed lack thereof) in the murder-for-hire conspiracy and in failing to object to a jury charge that included an instruction regarding non-testifying witnesses.  (Def.'s Br. at 19-23.)  Finally, Fernandez argues that he is actually innocent, which he attempts to demonstrate principally by alleging that the evidence at trial was insufficient to conclude that Fernandez was one of the shooters of the murder-for-hire conspiracy.  (Def.'s Br. at 24-28.)

Fernandez previously alleged the same violations of *Brady* on direct appeal.  Similarly, Fernandez raised analogous claims of ineffective assistance in his *pro se* motion to vacate the jury verdict.  Fernandez did not raise the claims of actual innocence.  For the reasons set forth below, Fernandez's motion should be denied.

## ARGUMENT

### I.  Fernandez's *Brady* Claims Are Procedurally Barred and Meritless

The crux of Fernandez's *Brady* claims is that the Government failed to disclose the notes from its proffer meeting with Rivera, which, according to Fernandez, reflected Rivera's denial of his role as the getaway driver and any involvement in the murder-for-hire conspiracy.  (Def.'s Br. at 13-18.)  Fernandez claims that he would have used Rivera's proffer statements to impeach Darge at trial or, at least, conduct a more probative cross examination of Darge, including by asking Darge if Darge was aware that Rivera denied involvement in the conspiracy.  These claims were squarely raised and rejected on direct appeal and, thus, are procedurally barred. (*See* Dkt. 160, 162); *United States v. Fernandez*, No. 14-4158, Dkt. 48; *United States v. Fernandez*, 648 F. App'x 56.  It is well-established that a Section 2255 petition "cannot be used to relitigate questions which were raised and considered on direct appeal." *United States v. Pitcher*, 559 F.3d 120, 123 (2d Cir. 2009) (per curiam) (internal quotation marks omitted). This rule prevents re-litigation of matters "expressly decided by the appellate court" and includes "[i]ssues which have been explicitly or implicitly decided on appeal." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010).  "A habeas petitioner may not avoid this bar merely by offering a slightly altered rearticulation of a claim that was rejected on his direct appeal." *United States v. Keith*, No. 15-CR-827 (AJN), 2022 WL 2657188, at *6 (S.D.N.Y. July 8, 2022), *appeal dismissed*, No. 22-1643, 2023 WL 9380715 (2d Cir. Aug. 3, 2023).  A habeas petitioner also cannot raise a claim that could have been raised on direct appeal, unless he can "show cause for failing to raise the claim at the appropriate time and prejudice from the alleged error." *Campino v. United States*, 968 F.2d 187, 190 (2d Cir. 1992).

9

Thus, Fernandez is barred from attempting to relitigate these already adjudicated issues in this Petition.

Not only is Fernandez's claim procedurally barred, but it is also without merit for the reasons already articulated by this Court in response to at least four post-conviction motions—the November 21, 2013 motion to vacate the jury verdict; the April 28, 2014 renewed motion to vacate the jury verdict; the October 3, 2014 motion for a new trial; and the October 17, 2014 motion for reconsideration—and by the Second Circuit in response to the Fernandez's direct appeal. *See supra* Background Section III. At each stage, the Court made clear that Rivera's proffer notes hold little relevance and cannot serve the basis for a *Brady* violation. In its October 8, 2014 Order, the Court concluded that "what Rivera may or may not have said to Fernandez's private investigator . . . has little or no relevance to what Rivera did in February 2000 or what he said when he was a co-defendant in or around 2012." (Dkt. 162 at 2.) In its Order denying the defendant's motion for reconsideration, this Court maintained its assessment even after it conducted an *in camera* review of the Rivera proffer notes, finding once again, that the notes did not contain "any relevant information to the issue presented by th[e] motion," and concluding that Fernandez "failed to show that the Government violated the requirements of *Brady*." (Dkt. 175 at 2, 6.)

With all the facts and arguments before it, the Second Circuit held that this Court had not abused its discretion in denying the defendant's alleged *Brady* violations. *Fernandez*, 648 F. App'x at 65. In rejecting the very same argument Fernandez seeks to relitigate here, the Second Circuit concluded that Rivera's proffer notes did not reflect an unequivocal denial of his role in

the murder-for-hire conspiracy. *Id.* At best, Rivera's proffer notes reflect Rivera's inability to remember his participation in events that occurred more than 10 years before the proffer meeting. In addition, because proffer statements of non-testifying witnesses are inadmissible hearsay, any line of cross-examination regarding Rivera's proffer statements would have been improper. *Id.* at 61. Fernandez has again failed to show how Rivera's proffer notes could have been useful for impeachment and, for the same reasons, cannot satisfy the prejudice prong needed to sustain a *Brady* claim. *Id.*

## II. Fernandez's Ineffective Assistance of Counsel Claims Are Meritless

### A. Legal Standard

A defendant seeking to attack his conviction based on ineffective assistance of counsel must overcome a heavy burden under the *Strickland* test. *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004). To prevail, a defendant must (1) demonstrate that his "counsel's representation fell below an objective standard of reasonableness" under "prevailing professional norms"; and (2) "affirmatively prove prejudice" from counsel's allegedly defective performance. *Strickland v. Washington*, 466 U.S. 688, 693 (1984); *see also Hernandez v. United States*, 202 F.3d 486, 488 (2d Cir. 2000).

### 1. Deficient Performance

Under the first prong of the *Strickland* analysis, the reviewing court "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*,

11

466 U.S. at 689).  The defendant's burden is to show "'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).  A defendant cannot prevail on a claim of ineffective assistance merely because he believes that his counsel's strategy was inadequate.  *United States v. Sanchez*, 790 F.2d 245, 253 (2d Cir. 1986).  Indeed, "[a]ctions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective counsel." *Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009) (denying defendant's ineffective assistance of counsel claim where defendant failed to show that "his counsel's decisions were anything other than strategic" or that "different choices would have had any likelihood of altering the outcome of the trial").

### 2.  Prejudice

To establish prejudice under the second prong of *Strickland*, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.  Thus, a defendant cannot establish prejudice by showing merely that counsel's errors had "some conceivable effect" on the result, for "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id*. at 693.  "[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).  Thus, "the prejudice component of the *Strickland* test . . . focuses on the question whether counsel's

deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Id*. at 372 (internal quotations omitted).

Only where both prongs of the *Strickland* test are satisfied can it be concluded that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. When considering these two prongs, the Supreme Court has provided commonsense instructions, explaining that "[t]he object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland,* 466 U.S. at 697. Accordingly, the Second Circuit has often rejected ineffective assistance of counsel claims by determining that, in view of the strength of the prosecution's case, the defendant is unable to establish prejudice. *See, e.g.*, *Dupont v. United States*, 224 F. App'x 80, 82 (2d Cir. 2007) (explaining that the decision not to pursue a defense does not constitute deficient performance if, the lawyer has a reasonable justification for the decision); *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) ("Counsel's election to forgo an unsupported argument plainly falls into th[e] category" of "[a]ctions or omissions by counsel that might be considered sound trial strategy"— not ineffective assistance.).

## B. Trial Counsel Was Not Constitutionally Ineffective in Deciding Not to Interview Rivera

Fernandez argues that his trial counsel's performance was deficient because counsel failed to interview Rivera before trial or otherwise investigate whether Rivera, and therefore Fernandez, was present at the scene of the murders. (Def.'s Br. at 21.) Fernandez's claim again relies on a misinterpretation of Rivera's proffer notes. Relying on that faulty premise, Fernandez primarily

13

argues that trial counsel should have inquired about Rivera's recollection, or the very proffer statements Fernandez acknowledges were not available to him at that time.  This claim falls short of the high bar that Fernandez must meet in order to establish ineffective assistance under *Strickland*.

As Fernandez has plainly acknowledged, Rivera's proffer statements were not available to Fernandez at trial, and, in any event, do not reflect that Rivera's denied involvement in the conspiracy. Thus, Rivera's purported denial first arose when Fernandez sent a private investigator to speak to Rivera in advance of his sentencing in October 2014.  (Def.'s Br. at 21-22.); *see Murden v. Artuz*, 497 F.3d 178, 198 (2d Cir. 2007) ("Counsel's performance is examined from counsel's perspective at the time of and under the circumstances of trial."). Accordingly, Fernandez fails to otherwise demonstrate why not interviewing Rivera prior to trial amounts to an error so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. *See Richter*, 562 U.S. at 106 (noting that *Strickland* permits counsel to "make a reasonable decision that makes particular investigations unnecessary").

Fernandez misguidedly relies on *Espinal v. Bennett*, 588 F.Supp.2d 388 (E.D.N.Y. 2008), in which the Court found deficient performance in failing to investigate a police report, which substantiated the defendant's alibi and proved that the defendant—who was convicted on two counts of second-degree murder—was not at the scene of the crime.  Fernandez, having been convicted of conspiracy to commit murder-for-hire based on a wide array of evidence, can hardly point to such exonerating evidence.  Even if trial counsel had knowledge of Rivera's proffer statements, Rivera's statements were not exculpatory like the police report in *Espinal*.  Again, as

14

the Second Circuit found, Rivera did not unequivocally deny involvement in the charged crimes. *Fernandez*, 648 F. App'x at 61.  Rather, Rivera's denial was coupled with his lack of recollection of his role in the murders and his acknowledgement that he could have served as the getaway driver.  Further, even if Rivera could not attest to Fernandez's presence at the scene of the murders, Rivera's recollection was not critical to the jury's determination on whether Fernandez was part of the murder-for-hire conspiracy.  *See Richter*, 562 U.S. at 108 (explaining "[a]n attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense").  As set forth above, Rivera was not a testifying witness at trial.  Instead, the Government's evidence at trial consisted of evidence from other co-conspirators who participated in the murder, witnesses to whom Fernandez made admissions of guilt, and ballistics evidence recovered from the crime scene and the victim's bodies, among other things, which established Fernandez's guilt.  Thus, this argument fails.

### C. Trial Counsel's Performance Was Not Constitutionally Ineffective in Requesting a Jury Instruction on Inferences about Non-Testifying Witnesses

Fernandez also contends that his trial counsel's failure to object to a jury instruction on uncalled witnesses constituted ineffective assistance of counsel.  (Def.'s Br. at 22-23.)  To the contrary, Fernandez's trial counsel raised concerns about the proposed jury charge on uncalled witnesses, particularly with respect to inferences involving Luis Rivera.  (*See* Tr. 898-899.)  In any event, Fernandez cannot demonstrate constitutionally ineffective assistance on this basis.  A reviewing court must examine a jury charge as a whole, *see Cupp v. Naughten*, 414 U.S. 141, 146– 47 (1973), and assess "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof sufficient to meet" the standard of proof beyond a

reasonable doubt, *Vargas v. Keane*, 86 F.3d 1273, 1277 (2d Cir. 1996) (citing *Victor v. Nebraska*, 511 U.S. 1 (1994)).  Moreover, a defendant is not entitled to have the exact language he may want read to the jury, so long as the charge actually given properly addresses the necessary legal issues. *See, e.g.*, *United States v. Russo*, 74 F.3d 1383, 1393 (2d Cir.1996).  The Court ultimately gave the following instruction with respect to non-testifying witness:

> And there is another aspect of impeachment, the uncalled witness; the witness who has potentially some useful information to give, but who has not been called. The defendant is not under a burden to call any witnesses. That's part of his presumption of innocence, that is part of the rule that requires the government to bear the sole burden of proving the case beyond a reasonable doubt. But if there is a particular witness, and the witness has particular information, either the government or the defendant has the right to subpoena that witness and to bring the witness before you. So if there is a witness who you think might have had useful and relevant information but did not appear in the case, you need to decide: Is that really so? Did the witness really have that information? If the witness came, would it have just been a waste of time? Would the witness have said things that you already knew from other people? And is that an explanation? And there are many other explanations why some people don't appear. What you need to do is to decide, and I repeat this many times because it is key to your function. Look at all of the evidence and look at what is missing and decide: Did the government satisfy its burden to prove the case on each and all of the elements of the crimes charged beyond a reasonable doubt.

(Tr. 1030-31.)  The Court's instruction did not, as Fernandez suggests, instruct the jury to infer that the testimony of an absent witness would be a waste of time. (*See* Def.'s Br. at 6, 22.)  In fact, the Court clearly instructs the jury to look at the evidence and decide, in light of what is in evidence and what, if anything, is missing, whether the Government has satisfied its burden of proof.  Trial counsel's ultimate acceptance of this charge hardly rose to the level of deficient performance, and for all of the reasons previously discussed, the strength of the evidence was such that the defendant cannot demonstrate the prejudice required under *Strickland*.

16

### III.  Fernandez's Actual Innocence Claims Are Meritless

The defendant argues that the evidence presented at trial was insufficient to support his conviction.  (Def.'s Br. 24-28.)  To that end, he highlights Darge's testimony—arguing that Darge lacked credibility and did not witness Fernandez shoot either victim—and the testimony of two other witnesses who drove the victims to the apartment building and did not know Fernandez. Fernandez also points to another witness's testimony, during which the witness suggested that another individual, not Fernandez, might have been the second shooter.  (Def.'s Br. 26-27.)

A "threshold showing" of actual innocence requires a petitioner to demonstrate that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Dhinsa v. Krueger*, 917 F.3d 70, 81 (2d Cir. 2019) (quoting *Bousley*, 523 U.S. at 623). Actual innocence requires "not legal innocence but factual innocence."  *Artuz*, 497 F.3d at 194 (quoting *Doe v. Menefee*, 391 F.3d 147 (2d Cir. 2004).  The petitioner must "state a colorable . . . claim," in other words, that the trial evidence was insufficient to support his conviction on a correct understanding of the law.  *Cephas V. Nash*, 328 F.3d 98, 108 (2d Cir. 2003).  Only after examining all evidence is the court able to determine whether new evidence truly throws the petitioner's conviction into doubt, or whether it is so overwhelmed by the weight of other evidence that it is insufficient to raise a question as to a petitioner's factual innocence.  *Menefee*, 391 F.3d at 162. The court must thus determine whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Coleman v. Johnson*, 566 U.S. 650, 654 (2012) (per curiam).

Fernandez points to no evidence that absolves Fernandez from his role in conspiring to commit a murder-for-hire.   Rather, Fernandez's argument relies primarily on an erroneous

17

interpretation of Rivera's proffer statements to support his claim that the evidence placing Fernandez at the scene of the murders is insufficient. As discussed above, the Government's proof at trial that Fernandez was part of the murder-for-hire conspiracy extended well beyond Fernandez's presence at the scene of the murders. As discussed above, the Government's proof at trial that Fernandez was part of the murder-for-hire conspiracy extended well beyond Fernandez's presence at the scene of the murders. And given that Fernandez was charged with conspiracy to commit a murder for hire, the jury was only required to find that Fernandez had *agreed* with others that some member of the conspiracy would commit a murder for hire. As described above, the evidence at trial included testimony from several individuals regarding Fernandez's involvement in the conspiracy.

Fernandez's thinly supported claims of innocence completely ignore the overwhelming record at trial evidencing Fernandez's guilt. The suggestion that Fernandez's participation in the conspiracy relied entirely on a single, unreliable witness is flawed because several aspects of Darge's testimony, including Darge's outline of the murder plot was corroborated by other evidence, including by Reyes' testimony. (Tr. 36-41, 264-69, 320-22, 620-22, 631-34.) Darge's testimony was further corroborated by physical evidence recovered at the scene, such as fifteen shell casings, and the ballistic expert's analysis, which supported the inference that Darge fired a single shot and Fernandez fired the remaining fourteen shots. (Tr. 771-72). In addition, two other witnesses—Alain Darge and Yubel Mendez—testified that Fernandez admitted to participating in the murder plot with Darge. (Tr. 705-06, 817-19.) In denying the defendant's direct appeal, this Court already addressed Fernandez's argument that Darge's testimony was insufficient to sustain

18

his conviction because "lack of corroboration 'goes merely to the weight of the evidence, not to its sufficiency.'" *Fernandez*, 648 F. App'x at 60. And, here, the trial record corroborated Darge's testimony, and the jury's assessment of credibility should be afforded deference. *See Id.* Accordingly, the defendant does not—and cannot—show actual innocence.

## IV.   An Evidentiary Hearing is Not Necessary

The filing of a Section 2255 petition does not, by itself, obligate the district court to conduct an evidentiary proceeding. *Newfield v. United States*, 565 F.2d 203, 207 (2d Cir. 1977) (filing of motion "does not entitle petitioner automatically to a hearing"). Rather, the Court may summarily dismiss a Section 2255 petition where the defendant fails to raise "detailed and controverted issues of fact." *Id.* Similarly, where the existing record "conclusively show[s] that the petitioner is entitled to no relief," summary dismissal may be appropriate. *Id.* Fernandez's claims are procedurally barred and meritless for the reasons described above. In addition, Fernandez's claims lack factual support and accordingly do not warrant an evidentiary hearing to develop the factual record. *See e.g.*, *Lopez v. United States*, No. 16 Cr. 643, 20 Civ. 2410 (NRB), 2021 WL 5494658, at *3 (S.D.N.Y. Nov. 23, 2021); *Celaj v. United States*, 516 F. Supp. 3d 351, 361 (S.D.N.Y. 2021) ("[W]here a petitioner makes only vague, conclusory, or palpably incredible allegations, a hearing is not required," particularly when the motion does not "set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief."). Thus, the Petition should be denied without a hearing.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Fernandez's motion.

Dated:  New York, New York
        October 28, 2024

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York


By:    /s/ Dana R. McCann
       Dana R. McCann
       Assistant United States Attorney
       Tel.: (212) 637-2308