UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

UNITED STATES OF AMERICA,

-against-

JOE FERNANDEZ,

Defendant.

---------------------------------------------------------------- x

**ORDER AND OPINION GRANTING MOTION FOR COMPASSIONATE RELEASE**

10 Cr. 863 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

Defendant Joe Fernandez filed this second motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) on January 9, 2025. Following decision from the Supreme Court on May 28, 2026, I asked the parties for additional briefing to account for any changes in circumstances since the motion was first filed. Mr. Fernandez contends that extraordinary and compelling circumstances exist to warrant compassionate relief, namely his wife's health and other family circumstances, his demonstrable rehabilitation, and harsh treatment in confinement. *See* ECF Nos. 324, 360. For the reasons discussed below, Mr. Fernandez's motion is granted.

## FACTUAL BACKGROUND

On February 6, 2013, Fernandez was charged with one count of conspiracy to use interstate commerce facilities in the commission of murder for hire resulting in death, in violation of 18 U.S.C. § 1958 (Count One), and one count of using a firearm in furtherance of a crime of violence resulting in death, in violation of 18 U.S.C. §§ 924(j)(1) and 2 (Count Two). ECF No. 74. The charges arose from the murders of Ildefonso Vivero Flores and Arturo Cuellar on February 22, 2000. Flores and Cuellar were couriers of a Mexican narcotics trafficking organization that had exported a 274-kilogram shipment of cocaine to Jeffrey Minaya, the leader of a New York drug ring. To avoid paying the suppliers the money owed, Minaya recruited Patrick Darge to kill

Flores and Cuellar, the two narcotics couriers, in exchange for $180,000. Darge recruited his cousin, Fernandez, as backup, in exchange for $40,000, and recruited Luis Rivera to obtain weapons, ammunition, and a car, as well as to act as the getaway driver, for $20,000.[1]

On February 22, 2000, Darge and Fernandez, armed with guns, awaited Cuellar and Flores in the concealed area of a lobby in a Bronx apartment house. Alberto Reyes, another participant in the scheme, led Cuellar and Flores to the building, gave a signal to Darge and Fernandez and left. Darge fired a single shot into the back of Cuellar's head. He attempted to do the same to Flores but his gun jammed, and he ran out of the building. Fernandez emerged and shot both Flores and Cuellar. Darge and Fernandez both ran to Rivera's waiting getaway car. The crime was not solved for a number of years.

Fernandez surrendered to police on October 18, 2011. His trial commenced on February 19, 2013. On March 7, 2013, after a nine-day jury trial, he was convicted of both Counts One and Two. On October 7, 2014, I sentenced Fernandez to two consecutive life sentences. ECF No. 166.

## PRIOR PROCEEDINGS

Mr. Fernandez directly appealed his conviction and sentence claiming that: (1) the evidence adduced at trial was insufficient to support his conspiracy conviction and (2) the Court improperly denied his motion for a new trial based on the Government's failure to disclose *Brady* material, and on newly discovered evidence concerning the credibility of Government witnesses. By summary order dated May 2, 2016, the Second Circuit affirmed Mr. Fernandez's conviction. *United States v. Fernandez*, 648 F. App'x 56 (2d Cir. 2016).

[1] This narrative about Fernandez was taken from the testimony of Patrick Darge.

In June 2017, Mr. Fernandez filed a writ of habeas corpus under 28 U.S.C. § 2255, challenging his conviction for conspiracy to commit murder for hire and using a firearm to commit murder, claiming my jury instructions were defective and that his counsel was constitutionally deficient. I denied the petition but granted a certificate of appealability. 17 Civ. 4806, ECF No. 6. By summary order dated December 4, 2018, the Second Circuit denied Mr. Fernandez's appeal. *Fernandez v. United States*, 757 F. App'x 52 (2d Cir. 2018). On June 22, 2020, the Second Circuit granted Mr. Fernandez leave to file a successive habeas petition under 28 U.S.C. § 2255(h). ECF Nos. 226, 227. Mr. Fernandez argued that his Count Two firearms conviction was no longer valid after *United States v. Davis*, 588 U.S. 445 (2019), which held that conspiracy to commit murder for hire is not a crime of violence. ECF No. 230. I granted Mr. Fernandez's motion on November 3, 2021 and vacated his life sentence as to Count Two. ECF No. 245.

On November 30, 2021, Mr. Fernandez filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) principally on the bases of his actual innocence, the disparities in sentences his co-defendants received, and the harsh conditions of confinement he endured. ECF No. 248. On November 17, 2022, I granted his motion due to my disquiet with the jury's verdict, because of concern about contradictions in the evidence, the credibility of the single witness, Patrick Darge, the Government's cooperator and only witness inculpating Mr. Fernandez, and the disparity between Mr. Fernandez's life sentence and the shorter terms of imprisonment his co-defendants received. ECF No. 268. Pursuant to that order, Mr. Fernandez was released from custody. On June 11, 2024, the Second Circuit reversed my decision holding that "[c]hallenges to the validity of a conviction—including potential-innocence claims—cannot qualify as 'extraordinary and compelling reasons' under section 3582(c)(1)(A)." *United States v. Fernandez*, 104 F.4th 420, 433 (2d Cir. 2024), *cert. granted in part*, 145 S. Ct. 2731 (2025), *and aff'd*, 146 S. Ct. 1292 (2026). The Second Circuit held that "[u]nder the circumstances of this case, Fernandez's

sentencing disparity is not an 'extraordinary and compelling reason[ ]' to reduce his sentence under the plain meaning of the statute." *Id.* at 428. Mr. Fernandez again was reincarcerated first at the Metropolitan Detention Center ("MDC") in Brooklyn then at USP Canaan. He had prior served 11 years in custody and was out of jail for 18 months.

On January 9, 2025, Mr. Fernandez filed the present second motion for compassionate release. ECF No. 324. Thereafter, on May 28, 2026, the United States Supreme Court affirmed the Second Circuit's reversal of my decision granting Mr. Fernandez compassionate release, holding that "the supposed invalidity of a conviction is not among the 'extraordinary and compelling reasons' that justify compassionate release." *Fernandez v. United States*, 146 S. Ct. 1292, 1302 (2026). On June 2, 2026, I ordered the parties to submit supplemental briefing to address changes in circumstances since the motion was first filed. ECF No. 346.

## LEGAL STANDARD

A district court may "reduce the term of imprisonment ... after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that ... extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). A motion for compassionate release is a "two-step process: the district judge first determines whether extraordinary and compelling reasons exist to modify the sentence, and if such reasons exist, the court then considers the Section 3553(a) factors in evaluating what reduction, if any, is appropriate." *United States v. Griffin*, No. 22-CR-408 (EK), 2024 WL 2891686, at *1 (E.D.N.Y. June 10, 2024). Additionally, before bringing a motion for compassionate release, a defendant must satisfy Section 3582(c)(1)(A)'s administrative-exhaustion requirement.[2] 18 U.S.C. § 3582(c)(1)(A).

---

[2] The Government does not dispute that Fernandez satisfied the administrative-exhaustion requirement, and that his motion is ripe for consideration. I agree that the motion is procedurally proper.

"[D]istrict courts have the discretion 'to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.'" *Fernandez*, 104 F.4th at 431 (quoting *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020)). "The name for § 3582(c)(1)(A)—'Compassionate Release'—highlights its focus on granting mercy rather than righting legal wrongs." *Fernandez*, 146 S. Ct. at 1303. The statute "focus[es] on a defendant's personal circumstances—his advanced age, safety risk, illness, rehabilitation, and the like." *Id.* "The heartland 'extraordinary and compelling reasons' that might warrant an early release from prison—age, illness, a child left with no guardian—bear no resemblance to the grounds for relief under § 2255." *Id.* at 1304. "[T]he supposed invalidity of a conviction is not among the 'extraordinary and compelling reasons' that justify compassionate release." *Id.* at 1302.

Under U.S.S.G. § 1B1.13(b)(3)(A) and (B), both "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner" and "[t]he death or incapacitation of the caregiver of the defendant's minor child" may constitute an extraordinary and compelling reason for a sentence reduction. U.S.S.G. § 1B1.13(b)(3)(A) and (B). In addition, "any other circumstance or combination of circumstances" that is "similar in gravity to" the enumerated rationales of U.S.S.G. § 1B1.13(b) can constitute an extraordinary and compelling reason for a sentence reduction. U.S.S.G. § 1B1.13(b)(5).

**DISCUSSION**

In light of the Supreme Court and Second Circuit decisions, I address this renewed motion independent from my past doubts and treat Mr. Fernandez's conviction as fully valid. I find, for independent reasons, that Mr. Fernandez presents extraordinary and compelling

circumstances meriting a reduction of his sentence to time served, and that the 18 U.S.C. § 3553(a) factors support granting him such compassionate release.

## I. Mr. Fernandez's need to serve as a caregiver in combination with other circumstances amounts to extraordinary and compelling reasons for release.

Mr. Fernandez argues that the combination of three primary factors creates extraordinary and compelling reasons to grant compassionate release: (1) his need to serve as a caregiver for his ill spouse, (2) his rehabilitation and lack of danger to society, and (3) the harsh conditions of his confinement. I address each in turn and hold that these factors amount to extraordinary and compelling circumstances that warrant release. *United States v. Rengifo*, 569 F. Supp. 3d 180, 192-93 (S.D.N.Y. 2021) ("[A]s the law permits and common sense dictates, the finding of extraordinary and compelling circumstances warranting release can be based on a combination of circumstances taken together.").

### A. Mr. Fernandez's need to serve as a caregiver for his spouse and child is an extraordinary and compelling reason for release.

Mr. Fernandez contends that compassionate release should be granted because he is the sole caregiver available for his ailing spouse. Mr. Fernandez's wife, Dalila Perez, was diagnosed with lupus in 2022, shortly prior to Mr. Fernandez's release. Lupus is a chronic autoimmune condition that causes the immune system to attack the body's own tissues and organs. Ms. Perez's illness, while not constantly debilitating, has left her "bedridden for a few months" and has at times rendered her "unable to move or even walk." ECF No. 363-2 at 2-3. In addition, Ms. Perez suffers from ovarian and pituitary masses that require treatment, and rheumatoid arthritis and osteoarthritis of the spine, which affect her ability to work. *Id.* In addition to her physical health, Ms. Perez's mental health has been severely affected due to the circumstances of Mr. Fernandez's incarceration and her stress over her own physical health. She has experienced severe

anxiety and panic attacks due to her "constant fear, uncertainty, and worry over" Mr. Fernandez's well-being. ECF No. 363-23 at 1.

Despite her illness, Ms. Perez has worked as a travel nurse to provide for her family—a physically demanding job that requires her to be on her feet for long periods of time. Ms. Perez is the sole provider for three of their four children, including one minor child. ECF No. 324 at 22. Two of their adult children are students and unable to serve as caregivers, and the third lives out of state and has two children of her own to care for and support. Ms. Perez's diagnosis has caused her to suffer a wide range of severe and debilitating conditions, wherein she often feels "crippl[ed]" and "barely [able to] find energy to get out of bed." ECF No. 324 at 9. Ms. Perez's illness has symptoms that often wax and wane, which could "worsen at any moment and make it impossible for her to work and financially support herself and her minor son." *Id.* at 21. Ms. Perez and Mr. Fernandez's minor son has "started working at a grocery store to help his mother financially, giving her a portion of his paycheck." *Id.* at 12. The financial strain has placed the family's home at risk. ECF No. 362 at 12.

Mr. Fernandez's release coincided with a serious period of Ms. Perez's illness during which she was bedridden. During this period, Mr. Fernandez served as the caregiver for his wife and minor child and financial provider for his family after quickly gaining employment. Ms. Perez described his arrival as "a blessing, a miracle [she] needed," because Mr. Fernandez "jumped into his role immediately caring for [Ms. Perez] and [their] family's needs while [she] was bedridden for a few months." ECF No. 363-2 at 3. Ms. Perez's physical and mental health has deteriorated since Mr. Fernandez's return to prison, and she has been forced to defer medical care because of lack of funds and inability to work steadily. ECF No. 362 at 11.

The U.S. Sentencing Guidelines recognize that "[t]he incapacitation of the defendant's spouse ... when the defendant would be the only available caregiver" may be a

circumstance under which "[e]xtraordinary and compelling reasons exist," U.S.S.G. § 1B1.13(b)(3)(B), and courts in this circuit have recognized the same. *See, e.g.*, *United States v. Miao*, No. 15 CR. 628 (AT), 2023 WL 4637320, at *3 (S.D.N.Y. July 20, 2023) ("Courts in this District have granted modified sentences in light of familial circumstances, including the need to act as a caregiver, as they can constitute extraordinary circumstances.") (collecting cases); *United States v. Dones*, No. 19 CR 169 (VM), 2022 WL 354679, at *3 (S.D.N.Y. Feb. 7, 2022) (granting compassionate release where the defendant was needed as a caregiver).

The U.S. Sentencing Commission has not defined the term "incapacitation" because "with statutory language, the plain and unambiguous language of the Sentencing Guidelines affords the best recourse for their proper interpretation." *United States v. Millar*, 79 F.3d 338, 346 (2d Cir. 1996) (citation omitted). Black's Law Dictionary defines "incapacitate" as "[t]o make (someone) too weak or too ill to work or function normally." *Incapacitate*, Black's Law Dictionary (12th ed. 2024).

Courts can also look to the BOP Program Statement for guidance on the meaning of incapacitation. *See United States v. Shea*, No. 20 CR. 412-4 (AT), 2025 WL 2821369, at *2 (S.D.N.Y. Oct. 3, 2025). The BOP Program Statement defines incapacitation for purposes of Section 1B1.13(b)(3)(B) to mean the defendant's spouse has "[s]uffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse ... is completely disabled," or has a "severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse's ... mental capacity or function)." BOP Program Statement § 5050.50(6). And for Section 1B1.13(b)(3)(A), the BOP Program Statement defines incapacitation differently to mean the minor child's "caregiver suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child." BOP Program Statement § 5050.50(5). The BOP's interpretations are not

binding because "[a]llowing the agency's terminology to control [the] interpretation of the [law] would be an abdication of [the] duty to interpret the [law] independently." *Avon Nursing & Rehab. v. Becerra*, 119 F.4th 286, 292 (2d Cir. 2024) (citation omitted).

Here, I find that Ms. Perez is incapacitated and that she and her minor son require caregiving and financial support that only Mr. Fernandez can provide. Ms. Perez can work but not steadily and not sufficiently to avoid financial strain and at the risk of further deterioration of her health. Ms. Perez has been bedridden due to her illness, and I will not require that Ms. Perez wait until she is confined to her bed and unable to work to provide her and her son with a caregiver that is needed on this record. The record establishes that Mr. Fernandez is the sole available caregiver for his wife and child because of the unavailability of their adult children. It would be cruel to require them to sacrifice their own education should they have to care for their mother. Thus, Mr. Fernandez's need to serve as a caregiver for his wife and minor child, combined with the other factors outlined below, presents extraordinary and compelling reasons to justify release.

**B. Mr. Fernandez has demonstrated remarkable rehabilitation.**

Mr. Fernandez contends that his demonstration of rehabilitation supports his motion for compassionate release. I agree. While "[r]ehabilitation ... *alone* shall not be considered an extraordinary and compelling reason[,]" it may be one among others. *See Brooker*, 976 F.3d at 238 (quoting 28 U.S.C. § 994(t)) (emphasis in original). Courts may consider defendants' demonstrable rehabilitative efforts when not otherwise incarcerated. *See, e.g.*, *United States v. Donato*, No. 03-CR-929, 2024 WL 665939, at *7 (E.D.N.Y. Feb. 16, 2024) (because the defendant had "worked outside of the facility during the week and has resided in his sister's home without incident[, the Defendant had essentially] demonstrated that upon his release, [he would] be a productive member of the community.").

The facts of this case are unusual, as Mr. Fernandez was given the opportunity to re-enter society and demonstrate extraordinary rehabilitative efforts, showing his ability to be not just a productive member of society but an essential member of his family and community. Within two weeks of his release, Mr. Fernandez was employed as a truck driver/delivery person. ECF No. 363-14. In a letter to the Court, Mr. Fernandez's manager described him as "very responsible" and an active employee who "[l]ook[ed] to better himself." *Id.* Mr. Fernandez was in the process of obtaining a commercial driver's license when he was reincarcerated and had wanted to move up at the company. The letter described Mr. Fernandez as "a hard worker, [and a] reliable, honest, law abiding, likable individual that got along with his peers and customers alike[,]" and stated that "Mr. Fernandez's job is still open and waiting for his return" and that he would "rehire him right away." ECF No. 363-14.

Additionally, during his 18 months of release, Mr. Fernandez maintained a responsible relationship with his probation supervisor and probation officer who trusted him to travel out of state. ECF No. 363-1 at 6. Mr. Fernandez also actively gave back to his community, volunteering at the food pantry at Sacred Heart, St. Patrick's Parish, aiding in food distribution and renovation of the building. A letter from the Director of Parish Outreach described Mr. Fernandez as a "man who has volunteered many hours with us, helping our various ministries serve the vulnerable and food-insecure in our community." ECF No. 363-16.

Even after reincarceration, Mr. Fernandez has demonstrated continued commitment to rehabilitation, as demonstrated by the numerous letters in support of his compassionate release motion filed by various prison employees. Mr. Fernandez completed a 10-week Faith Based Conflict Management Course that provides "a spiritual pathway for improving how you manage conflict and the intense feelings that come with it." ECF No. 363-18. Mr. Fernandez volunteered to provide translation services for non-English speakers and helped the Religious Services

Department with handy work and repairs. *Id.* Mr. Fernandez also works as a library clerk in the Education Department. ECF No. 363-17. An education technician assigned to MDC Brooklyn wrote that Mr. Fernandez "is a true exemplar of hard work, good conduct" who "demonstrates an unyielding zeal in promoting a healthy learning environment for his fellow adults in custody." ECF No. 363-19. Mr. Fernandez has also obtained many certificates for coursework achievements and has worked to help other inmates obtain their GEDs. ECF No. 363-20; ECF No. 363-1 at 4.

This record demonstrates remarkable rehabilitation for Mr. Fernandez. Both when he was briefly free from incarceration and after he returned to custody, Mr. Fernandez showed a constant pursuit of bettering himself and serving his family and community. The numerous letters from unbiased persons submitted in support of Mr. Fernandez's release are significant evidence of his rehabilitation. *See United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020) (finding evidence of rehabilitation was "nothing short of remarkable," as evidenced by "numerous letters from family, friends, and prison staff that make clear that Defendants' years in prison were not just used to better himself but also his community" and therefore found the Defendant "wholly rehabilitated"). It is clear that if released Mr. Fernandez would successfully reintegrate into society to the benefit of his family and community. This extraordinary rehabilitative effort, alongside the other circumstances outlined above, provides significant support for a reduction in sentence. *See* U.S.S.G. § 1B1.13(b)(5).

**C. Mr. Fernandez's harsh treatment in confinement supports compassionate release.**

Mr. Fernandez also contends that the harsh conditions of confinement he has suffered at MDC and USP Canaan provide support for his request for a sentence reduction. ECF No. 363-1. I consider these harsh conditions of confinement that he has endured, and while not sufficient standing alone, they support the remedy Mr. Fernandez seeks.

Mr. Fernandez describes USP Canaan as a notoriously dangerous facility plagued by violence and extended lockdowns. ECF No. 363-1 at 4. Mr. Fernandez stated in his submission to the Court that he "faced a graphic world of violence" at the Canaan federal penitentiary, replete with "murders and stabbings," causing him to "fear for [his] safety and ... life." ECF No. 363-1 at 4. Those fears are not unfounded. On April 22, 2026, while housed at USP Canaan, Mr. Fernandez was the victim of an assault by several inmates. Mr. Fernandez was struck over the head, stabbed with knives, and had his right hand stomped on. ECF No. 344 at 1; *see also* ECF Nos. 354, 355. The attack left Fernandez with severe injuries, including a laceration of his skull requiring 13 staples, a laceration on his forehead requiring nine stitches, and a knife wound through the middle finger of his right hand requiring three stitches, alongside a severely swollen right hand. *Id.* BOP medical staff documented that Mr. Fernandez was found "lying on floor with CO applying pressure with a scarf to head wounds" and was in "wrist restraints, awake and alert, oriented" after which he was transported to the health services unit. ECF No. 344-1 at 10. Mr. Fernandez continues to report residual pain in his forehead, skull, and finger, which he can no longer fully bend. *See id.* at 2.

Courts have granted compassionate release based, in part, on the harsh conditions of confinement that defendants have endured at the MDC and other Bureau of Prisons facilities. *See, e.g.*, *United States v. Nunez*, No. 23-CR.-517 (AT), 2024 WL 4504493, at *6 (S.D.N.Y. Oct. 16, 2024) (granting compassionate release where court was unaware at sentencing that defendant would return to MDC to serve out remainder of sentence); *United States v. Herbert*, No. 03-CR-211 (SHS), 2024 WL 1931962, at *2 (S.D.N.Y. May 2, 2024) (granting compassionate release where defendant "endured difficult conditions of confinement that were not contemplated at the time that the Court imposed ... [the] sentence"); *United States v. Parish*, No. 13-CR.-829 (AT), 2024 WL 3904626, at *6 (S.D.N.Y. Aug. 22, 2024) (same). Serious inmate violence may also

form part of the cumulative circumstances considered under Section 1B1.13(b)(5). *United States v. Cheng*, No. 21-CR-261 (RA), 2025 WL 573767, at *3-4 (S.D.N.Y. Feb. 21, 2025). While these harsh conditions, standing alone, are not sufficient to warrant compassionate release, I consider them persuasive as part of the cumulative circumstances before me. *See* U.S.S.G. § 1B1.13(b)(5).

Taking all of the circumstances of Mr. Fernandez's case together, I hold that Mr. Fernandez has established "extraordinary and compelling" reasons within the meaning of 18 U.S.C. § 3582(c)(1)(A)(i) under U.S.S.G. § 1B1.13(b)(3)(A) and (B) and § 1B1.13(b)(5).

## II. The Section 3553(a) factors support reduction of sentence to time served.

Having found that "extraordinary and compelling" reasons exist to modify Mr. Fernandez's sentence, I now consider the Section 3553(a) factors in evaluating what reduction, if any, is appropriate. *See* 18 U.S.C. § 3582(c)(1)(A)(i); *Griffin*, 2024 WL 2891686, at *1. Section 3553(a) directs the court to impose a sentence that is "sufficient, but not greater than necessary" and to consider a number of factors. 18 U.S.C. § 3553(a).

Mr. Fernandez was found guilty of a serious crime. However, even where life sentences are warranted at the time of sentencing, compassionate release motions have been granted. *See, e.g.*, *United States v. Torres*, 464 F. Supp. 3d 651, 665 (S.D.N.Y. 2020) (holding that the totality of the circumstances, including defendant's "thorough and long-term rehabilitation, exemplary community service, and the high risk presented by the COVID-19 pandemic" warranted life sentences to be reduced to time served). Even serious crimes like Mr. Fernandez's can, under the right circumstances, warrant release. *See Rodriguez*, 492 F. Supp. 3d at 317 (reducing a life sentence of a defendant who participated in a brutal murder of a government informant to 30 years' imprisonment and a lifetime of supervised release in light of COVID-19 and the defendant's "remarkable" rehabilitative efforts, demonstrated in part by letters from inmates, family, friends, and prison staff); *United States v. Nunley*, 792 F. Supp. 3d 327, 340 (D.

Conn. 2025) (reducing life sentence to time served, for defendant who spent more than two decades incarcerated and was convicted of numerous offenses including RICO, drug trafficking, violent crimes in aid of racketeering (VCAR) murder, and VCAR attempted murder, based in part on his extensive rehabilitation).

First, outside of the underlying crimes, Mr. Fernandez's history and characteristics do not counsel against his early release. 18 U.S.C. § 3553(a)(1). At sentencing, in October 2014, I assessed two criminal-history points based on nonviolent vehicular offenses. Mr. Fernandez has likewise incurred relatively few disciplinary infractions in prison, all of which are non-violent, and the most recent of which occurred over seven years ago. ECF No. 363-13. Letters from loved ones and others who know him paint a picture of Mr. Fernandez as a dedicated father and husband and an individual committed to self-improvement and to aiding others through volunteering and service.

Second, a sentence must "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). Mr. Fernandez's 18 months in the community provides significant evidence that continued imprisonment is not necessary to protect the public. During that period, he was a law-abiding citizen, maintained employment, supported his family, and complied with supervision. This evidence, combined with Mr. Fernandez's continued rehabilitation and commitment to the public good while reincarcerated, demonstrates strongly that Mr. Fernandez would pose no danger to the safety of any other person or the community. U.S.S.G. § 1B1.13(a)(2).

Third, in addressing the "need for the sentence imposed" the sentence should work to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). The sentence should be "sufficient, but not greater than necessary." *Id.* Although the gravity of Mr. Fernandez's adjudged crimes weighs heavily, Mr. Fernandez has served over 13 years in federal prison for a crime committed in 2000.

He is now 50 years old. Mr. Fernandez has demonstrated admirable rehabilitative efforts both while incarcerated and while briefly released, even under the particularly trying circumstances of his reincarceration. The 13 years served, combined with the stress and uncertainty of his reincarceration and harsh conditions of confinement, is a sufficient punishment despite the seriousness of the offense. Thus, the term of incarceration, combined with continued supervised release, is sufficient to reflect the crime committed.

Finally, a sentence must "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). Mr. Fernandez was initially sentenced to two life terms, one of which was vacated. He has served substantial time. Given the unusual circumstances of this case, I find that the sentence as reduced provides adequate deterrence. Mr. Fernandez's case, as it has evolved on this record, is unlikely to be replicated by other defendants, such that it does not serve as a good reference case for deterrence. Mr. Fernandez has had the unique benefit of exiting prison and demonstrating remarkable rehabilitation and the unique trauma of reincarceration and an appeal taken and denied by the Supreme Court. He is needed at home to overcome his wife's incapacity and to avoid the breakdown of his family. No one can say that he has been treated leniently. The interest of reasonable deterrence is not compromised.

Therefore, I find that the Section 3553(a) factors warrant a reduction in sentence to time served followed by supervised release. I grant Mr. Fernandez's motion for compassionate release and reduce his sentence of incarceration to time served. Mr. Fernandez shall serve five years of supervised release, as set out in my original judgment in this case. ECF No. 166. I have confidence that Mr. Fernandez will become again a productive member of society, a caring father and husband, and an upstanding member of his community, as he demonstrated when I released him from prison in 2022.

**CONCLUSION**

For the foregoing reasons, I grant Mr. Fernandez's motion for compassionate release, reduce his sentence to time served, and order that he be released from custody. After his release from imprisonment, Mr. Fernandez shall serve five years of supervised release. The Clerk of Court shall terminate ECF Nos. 324, 329, 356, 360, and 366. This order shall be effective two weeks from this day, by October 7, 2026, at or before 2:00 p.m. The Bureau of Prisons shall immediately transfer him to a less secure confinement consistent with an imminent release.

SO ORDERED.

Dated: September 23, 2026
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge